IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA



ROGER VANDERKLOK

  *Plaintiff*

  *v.*         Docket No.: 15-cv-00370

UNITED STATES OF AMERICA,

TRANSPORTATION SAFETY ADMINISTRATION (TSA),

CHARLES KIESER (TSA),

CITY OF PHILADELPHIA,

RAYMOND PINKNEY (PHILADELPHIA POLICE),

DETECTIVE M. WOJCIECHOWSKI (PHILADELPHIA POLICE),

KENNETH FLAVILLE (PHILADELPHIA POLICE),

JEH JOHNSON (DEPARTMENT OF HOMELAND SECURITY),

JOHN S. PISTOLE (TSA)

  *Defendants.*

**FILED**

MAY 27 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

          :

### AMENDED COMPLAINT

(Violation of First, Fourth and Fourteenth Amendment Rights; Federal Tort Claims Act)

  Plaintiff ROGER VANDERKLOK makes the following representations to this Court against the named Defendants as follows:

1

1.     Plaintiff Roger Vanderklok, a 56-year old Architect at the time of the events described in this Complaint, was detained, handcuffed, and jailed for over 23 hours because a TSA Supervisor did not like something Mr. Vanderklok said to him and because Philadelphia Police personnel failed to perform their duties and arrested him without probable cause. In short - TSA Supervisor made up a story that involved Mr. Vanderklok becoming irate, pointing in his face and saying something insulting that included the word "bomb." And the Philadelphia Police failed to realize that, even if the TSA Supervisor's claims were accurate, there was no probable cause to arrest Mr. Vanderklok.

2.     Mr. Vanderklok, a married father of three children, was attempting to travel from Philadelphia to Miami in order to run in a Marathon the following day. In the carry-on bag he packed were, amongst other things, a heart-monitoring watch and Power Bars. He had no weapons, prohibited liquids, sharp items (and no Arabic flash-cards). He had not visited countries known to sponsor terrorism and was not reading a book critical of the U.S. Government. He said good-bye to his wife and told her he would call her when he landed at his destination – which was his custom when he travelled by air.

3.     At Philadelphia International's Security Screening checkpoint, he was stopped and detained by TSA screeners and repeatedly questioned about the contents of his bag. He politely answered all their questions and invited the TSA personnel to inspect his bag and its contents. After a thorough check of his bag, and after TSA personnel were sure that there was nothing improper, dangerous, or illegal in his bag, the TSA supervisor gave Mr. Vanderklok his bag back.

4.     Mr. Vanderklok did not appreciate the way he was spoken to by the

2

supervisor, Mr. Kieser, and told him he wanted to file a complaint and asked for a complaint form.

5.      It was after this request that Mr. Kieser had an Agent "watch" Mr. Vanderklok while he called Philadelphia Police to have Mr. Vanderklok arrested. Mr. Vanderklok was detained and paraded through the Airport by a Philadelphia Police Officer to the Airport Police Station where he was jailed for countless hours without probable cause. Handcuffed behind his back, he was then put into a vehicle and transported to a Philadelphia Police station outside of the Airport where he was jailed again.

6.      While Mr. Vanderklok languished in jail cells, without access to a telephone, his wife started to worry. His flight had landed in Miami and she had not heard from her husband. After several attempts to reach him on his cell phone over the course of many hours, Elanor, fearing the worst, started to make calls to file a "Missing Person Report." With Mrs. Vanderklok panicking and Mr. Vanderklok toiling in a jail cell, the TSA supervisor was telling Philadelphia Police different versions of the same event – but trying to make sure that Mr. Vanderklok's ordeal would continue.

7.      The TSA Supervisor told the first Police Officer, Officer Pinkney, that Mr. Vanderklok had angrily said to him that "anybody can bring a bomb and you wouldn't even know it." Later, he told the Detective that the words were: "I could bring a bomb through here any day of the week and you would never find it." (See Documents from Police attached hereto as Exhibit "A").

8.      After Officers/Detectives purposefully harassed and scared him, Mr. Vanderklok was charged with crimes he did not commit, including "Threatening the

3

Placement of a Bomb", "Terroristic Threats" and "Disorderly Conduct".   Bail was set at

$40,000.00.  He was forced to post bail and inform his employer of the criminal charges

pending against him.  And he was subsequently under the restrictions of all defendants on

bail in Philadelphia (which include travel restrictions).

9.     At the criminal trial[1], the TSA Supervisor made up a third version of what

Mr. Vanderklok said and did at the Screening Area.  Under oath in Municipal Court, the

TSA supervisor testified that his attention was directed to Mr. Vanderklok when Mr.

Vanderklok became "irate" and started angrily waving his arms and hands in the air. The

TSA supervisor demonstrated this for the Court. The TSA supervisor testified that he

approached Mr. Vanderklok, who eventually stated: "Let me tell you something – I'll

bring a bomb through here any day that I want … you'll never find it."

10.     The TSA supervisor also made up additional facts at the criminal trial. The

TSA Supervisor testified that "the passenger [Mr. Vanderklok] put his finger in my face."

He went on to demonstrate for the court. He testified that Mr. Vanderklok's finger came

within six to eight inches of his face.  He testified that Mr. Vanderklok moved his finger

towards and away from his face approximately six times. This statement was the first

time that the TSA Supervisor, Kieser, ever mentioned a finger pointing. It was never

mentioned on any of the police documents.

11.     Philadelphia International Airport has security cameras placed throughout

the Security checkpoints and screening areas. Those cameras were functional and

recording on January 26, 2013. The video footage acquired by counsel before the

criminal trial clearly shows the actions and movements of  Mr. Vanderklok at the

Security Checkpoint. (See Video attached as Dropbox link Exhibit "B"

---

[1] Since the charges against Mr. Vanderklok were misdemeanors there was no preliminary hearing.

https://www.dropbox.com/sh/x0h0mkniuzstkvz/AAB4Ub6GcsMtaQtxpxG0iO5Pa?dl=0)

[2]. According to his testimony, the TSA Supervisor did not watch the video footage before testifying against Mr. Vanderklok in Municipal Court. The video captures the entire interaction between the TSA Supervisor and Mr. Vanderklok. Mr. Vanderklok does not wave his arms or hands. He does not point his finger in anyone's face (or anywhere else). He does not once appear irate. The video depicts a calm man engaged in quiet conversation with TSA personnel who have "alerted" to his bag.

12.      The District Attorney's Office had two witnesses present at the trial – TSA Supervisor Charles Kieser and Philadelphia Police Officer Raymond Pinckney. They called only Kieser in their case-in-chief. No other evidence was submitted. After hearing the testimony of Kieser, the Honorable Judge Stack granted a Defense Motion for Judgment of Acquittal. The Court concluded that, viewing the State's evidence in its entirety, direct and/or circumstantial, in the light most favorable to the Commonwealth, Mr. Vanderklok could not be found guilty of any of the charges.  Mr. Vanderklok denies doing and saying that to which Kieser testified, and the surveillance footage supports Mr. Vanderklok's account.

## PARTIES

13.      Plaintiff Roger Vanderklok  is an adult individual who, at all times Relevant hereto, resided at 834 Chestnut St., Philadelphia, PA 19107

---

[2] Since the videotape cannot be added as a pdf, Plaintiff's counsel will have a copy delivered to the Court and counsel. By way of assistance, in clip B1 checkpoint 3075, Plaintiff can be found at 8:17-8:22. Plaintiff is wearing a bright blue jacket and an orange cap. (See Exhibit "C"). In clip B1A-checkpoint 3084, Plaintiff can be seen from 8:11-8:17. He is wearing a red checkered shirt and jeans.  At 8:11 he starts going through the metal detector/body scanner. (See Exhibit "D"). In clip B2- checkpoint 3077, lane 2, Plaintiff can be seen at approximately 8:11-8:17 first wearing a red checkered shirt then putting on the blue jacket and orange cap.  In clip, B2A checkpoint 3078, plaintiff can be seen starting at 9:09-8:11 with his jacket off, in line, approaching the screening. In clip B3, lane 3, checkpoint, 3079, plaintiff can be seen from 8:09-8:11. In clip B5 overview 3086, Plaintiff can be seen from 3:12-3:23.

14.     Defendant, City of Philadelphia, ("City") is a municipal corporation
within the Commonwealth of Pennsylvania, with administrative offices located at One
Parkway Building, 17th Floor, 1515 Arch Street, Philadelphia, PA 19102-1595

15.     Defendant, Raymond Pinkney, is an individual who holds the position of
Police Officer with the Philadelphia Police Department. During the time in question, he
was expected to know and understand the Pennsylvania Crimes Code so that he could
make proper decisions on whether to detain and/or arrest citizens for offenses including
but not limited to Disorderly Conduct, Terroristic Threats, and Threatening the Placement
of a Bomb. This action is brought against the named individual in his individual and in
his official capacity as a police officer of the City of Philadelphia. Defendant Pinckney
was acting under color of state law during the events described in this Complaint.

16.     Defendant, M. Wojciechowski, is an individual who was a Detective at the
time of this incident. In such capacity as Detective, he was charged with knowing and
understanding the Pennsylvania Crimes Code so that he could make proper decisions on
whether to detain and/or arrest citizens for offenses including but not limited to
Disorderly Conduct, Terroristic Threats, and Threatening the Placement of a Bomb.
Additionally, as the "assigned" investigator on a given matter, he was charged with
knowing how to conduct, and conducting a proper investigation to make sure innocent
people are not detained/charged for crimes for which there is no evidence. This action is
brought against the named individual in his individual and in his official capacity as a
police officer of the City of Philadelphia. Defendant Wojciechowski was acting under
color of state law during the events described in this Complaint.

17.     Defendant Kenneth Flaville, at all times relevant hereto, is an individual

6

who is employed as a police officer/detective by the City of Philadelphia. This action is brought against the named individual in his individual and in his official capacity as a police officer of the City of Philadelphia.  In such capacity as police officer/detective, he was charged with knowing and understanding the Pennsylvania Crimes Code so that he could make proper decisions on whether to detain and/or arrest citizens for offenses including but not limited to Disorderly Conduct, Terroristic Threats, and Threatening the Placement of a Bomb.  Additionally,-as the "assigned" investigator or "approving supervisor" on a given matter, he was charged with knowing how to conduct, and conducting proper investigations to make sure innocent people are not detained/charged for crimes for which there is no evidence. This action is brought against the named individual in his individual and in his official capacity as a police officer of the City of Philadelphia.  Defendant Flaville was acting under color of state law during the events described in this Complaint.

18.     Defendant Charles Kieser, at all times material hereto, is an individual who is employed as a TSA Agent/Supervisor by the Transportation Security Administration (hereafter "TSA"). This action is brought against the named individual in his individual and in his official capacity as a TSA Agent/Supervisor.

19.     Defendant, Transportation Safety Administration, ("TSA") and Defendant John S. Pistole (TSA Administrator), employed/continue to employ Defendant Kieser, partner with local law enforcement agencies (like the Philadelphia Police Department) for the safety of Airports and citizens, comes under the auspices of Defendant Jeh Johnson (Secretary - Department of Homeland Security), and have administrative offices located at 601 12th Street South, Arlington, VA  20598.  United States of America is the

7

appropriate defendant under the Federal Tort Claims Act. This action is brought against the named individuals in their individual and in their official capacity. They were acting under color of state law during the events described in this Complaint.

## JURISDICTION AND VENUE

20. This cause of action arises under the United States Constitution, particularly under the provisions of the First, Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983 and the laws of the state of Pennsylvania. Jurisdiction is conferred upon this court under the provisions of Title 28 of the United States Code, Sections 1331, 1334, 1343, 1346 and 1367 (a). The allegations in the Causes of Action below are examined under the First Amendment, the Fourth Amendment's prohibition on unreasonable seizures applicable to the States and individuals acting in their official and individual capacity by the Fourteenth Amendment of the United States Constitution, the Fourteenth Amendments guarantee of Due Process.

21. This complaint is for money damages and punitive damages based upon civil rights violations committed by Federal and State officials contrary to the First, Fourth and Fourteenth Amendments to the United States Constitution. This action is authorized and instituted pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and 42 U.S.C. § 1983. This Court has authority to award costs and attorney's fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412. Venue is proper pursuant to 28 USC Section 1391.

22. The Plaintiff filed the appropriate Administrative Tort Claim under FTCA

8

to the TSA and the claim being denied.

23.     It is also submitted that the pendant jurisdiction of this Court is invoked over all State court claims in view of the common nucleus of operative facts as to all claims.

## FACTS COMMON TO ALL COUNTS

24.     Roger Vanderklok alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-23  of the within Complaint as if more fully set forth herein.

25.     Mr. Vanderklok arrived at Philadelphia International Airport at around 8:00AM on January 26, 2013 for a flight to Miami, where he was scheduled to run a Marathon.  He waited in line, presented his identification and proceeded to the screening area of the Security Checkpoint. His one bag contained running gear, his laptop, a heart-monitoring watch and some Power Bars.  He took his shoes and his jacket off, took his laptop out of his bag, and put his things on the rollers and his items in the plastic containers for processing through the x-ray screening device.

26.     He proceeded through the screening device/metal detector without incident. The detector made no sound.

27.     A TSA official asked him to step to the side.  Apparently, they saw the heart-monitoring watch and the Power Bars and thought they looked like the components of an explosive device.  The TSA officials viewing the screen and handling his bag were talking about the watch and the case it was in.  Mr. Vanderklok volunteered that it was just his heart-monitoring watch and they were welcome to look in the bag and at the watch.

9

28. Mr. Vanderklok waited patiently. The TSA officials indicated that they had to do "further testing" on the bag. Mr. Vanderklok acquiesced. Later, the TSA officials started to ask Mr. Vanderklok about "organic material." Mr. Vanderklok stated that they were free to look into his bag that contained "just [his] running stuff." They continued to talk about "organic material" and swabbed something from the bag.

29. Mr. Vanderklok had plenty of time before his flight departed and was not overly concerned about the delay. He felt unsure of what the TSA officials were talking about when they spoke of "organic materials." When Defendant Kieser walked up to him, Mr. Vanderklok noticed that Kieser was agitated. Kieser was confrontational and impolite; and he asked more questions about the "organic material." Contemplating plants, fresh fruits, or fresh vegetables, Mr. Vanderklok did not think he had any "organic material" in his bag. During this discussion, Mr. Vanderklok communicated that he understood the TSOs had to do their jobs but assured Defendant Kieser that he was not a threat.

30. Eventually, the TSA officials located the Power Bars (wrapped in "Power Bar" packaging) and indicated, out loud, that the Power Bars were the "organic material." The TSA officials ran an "explosive trace detection test" on the Power Bars. That test came back negative.

31. Defendant Kieser got more agitated when Vanderklok stated that he did not know a Power Bar was "organic material" and that someone should have simply told him that wrapped food items were included in the definition of "organic materials."

32. At no point during this time period was the Security Checkpoint closed down. (See Exhibit "B"). Other passengers continued to proceed through the security

10

checkpoint and there was no disturbance at the Checkpoint.

33.     At no point during this time period did Mr. Vanderklok raise his voice,
speak disrespectfully, flail or wave his hands or arms around. He did not point in
Defendant Kieser's face.

34.     After Plaintiff's bags were checked by the TSA, Mr. Vanderklok told
Defendant, Kieser, he wanted to file a Complaint and asked for a complaint form so that
he could complete it and detail what he believed was inappropriate and aggressive
behavior on the part of Defendant, Kieser.

35.     Due to this request, Defendant Kieser, after giving him his bag and the
bag's contents back, called the Philadelphia Police and reported that Mr. Vanderklok,
while getting bag checked, said that "anybody can bring a bomb and you wouldn't even
know it." He simultaneously directed another TSA Agent to "watch" Mr. Vanderklok,
who was putting his shoes on and re-packing his bag, until the Philadelphia Police
arrived.

36.     Once the search of Plaintiff's bags revealed nothing, Plaintiff should have
been released. Instead, because he exercised his First Amendment right to free speech,
and said he wanted to file a Complaint against the TSA; defendant, Kieser, then
knowingly made a string of untrue statements claiming Plaintiff made comments that he
did not, knowing that it would result in an illegal seizure and arrest of Mr. Vanderklok.

37.     Defendant Raymond Pinckney was the first Officer to arrive at the
Checkpoint. Without any investigation, he immediately told Mr. Vanderklok that he was
under arrest and took Mr. Vanderklok into police custody.

38.     Defendants, Pinkney, Wojciechowski and Flaville, never watched the

11

videotaped of the incident which clearly showed there was no disruption or disturbance and would have verified the lack of probable cause even though Defendant Wojciechowski's office at the airport had the media capability to watch the video.

39.     Defendant, Kieser, made up the statements identified in paragraphs 7 thru 9 above after Plaintiff requested a complaint form.

40.     Defendants, Pinkney, Wojciechowski, Flaville failed to do their own investigation into probable cause which would have quickly shown that the statement by defendant Kieser were false.

41.     Defendants, Pinkney, Wojciechowski and Flaville, knew or reasonably should have known that the actions they took by arresting Plaintiff, when there were inconsistent statements made by Defendant Kieser, did not meet any element of any crime and would violate the constitutional rights of plaintiff.

42.     Defendants, Pinkney, Wojciechowski and Flaville, by arresting Plaintiff when there was no probable cause acted with malicious intent to cause the Plaintiff to be illegally detained and arrested.

43.     The City of Philadelphia is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania. In turn, the City of Philadelphia is responsible for the development, operation, and supervision of the policing powers.

44.     The City of Philadelphia through its Police Department is responsible for setting policy, procedures and directives for the operation of its Police Officers and to ensure that policies, procedures and directives established are enforced for the exercise of their police duties; and, are responsible for the development and implementation of policies and procedures concerning the selection, evaluation, training and supervision of

12

individuals employed as police officers. This includes when and under what circumstances, an officer is permitted to detain or arrest a citizen.

45.    The City of Philadelphia by and through its Police Department has intact a series of policies and procedures that govern the actions of police officers regarding probable cause to arrest. While there are a variety of Policies/Protocols which dictate the actions of officers, all police officers who are employed as City of Philadelphia Police Officers are expected to follow the mandates promulgated within each and every Protocol.

46.    Defendants Pinckney, Wojciechowski and Flaville are officers of the City of Philadelphia Police Department assigned to Southwest Philadelphia and/or Philadelphia International Airport during the relevant time periods. In such capacity, Defendants Pinckney, Wojciechowski and Flaville are charged with the enforcement of the laws of the Commonwealth of Pennsylvania, in a fair, just and equitable manner consistent with the rights afforded all individuals by the Constitutions of the United States of America and the Commonwealth of Pennsylvania; and, were acting, at all times relevant hereto, under color of law and color of their authority as police officers of the City of Philadelphia.

47.    The City of Philadelphia through its Police Department had a policy, procedure and/or custom of blindly and without any investigation arresting people upon being called by a TSA agent. This custom was shown by the prior actions of the Philadelphia Police in the George (2:10-cv-00586) and Pellegrino (2:09-cv-5505) cases.

48.    The City of Philadelphia by and through but not limited to Police Commissioner Charles A. Ramsey and their Investigations and Homeland Security

13

Commissioner (responsible for the airport police) knew that their airport police had a policy, agreement, procedure and custom of rubber stamping detentions and arrests upon being notified by the TSA at the airport of an issue.

49.     Furthermore, the City of Philadelphia and Police Commissioner Charles A. Ramsey and their Investigations and Homeland Security Commissioner knew of the custom and policy of the airport police in failing to independently investigate for probable cause resulting in unconstitutional arrests and seizures as evidenced by the not guilty verdicts and subsequent lawsuits of George v. United States, Pellegrino v. United States and Albani v. United States[3] (in which Detective Wojciechowski was a defendant).

50.     Defendants, City of Philadelphia and TSA were aware of unlawful conduct in the past where airport police failed to investigate and determine probable cause after being notified by TSA of an incident and as such the relevant policy makers failed to take precautions against future violations which led to the violation of Plaintiff's constitutional and civil rights.

51.     Defendants, United States of America, TSA, Kieser, and Pistole knew about this policy, procedure, agreement and custom of the Philadelphia Airport Police to detain, arrest and seize anyone that TSA called about and as such contributed to the deprivation of Plaintiff's constitutional rights to be free from unreasonable and unfounded searches and seizures.

52.     The City of Philadelphia should have had established or enforced established policies, procedures and/or guidelines concerning the nature of the conduct

---

[3] Some of these cases were dismissed on immunity issues or failure to adequately plead and are distinguishable from Plaintiff's case. However, in all of the cases, the airport police used the same custom by arresting people at the airport upon notice from TSA of an issue, whether true or not, and without probable cause thereby violating their constitutional rights.

and interaction of any Police Officer has with any individual in the discharge of their

duties; and, in particular, in the manner in which incidents are investigated; when

individuals are to be taken into custody and or arrested; when arrests should be made, and

when probable cause to arrest exists. Additionally, policies, procedure and/or guidelines

exist or should have existed concerning the review and supervision of the actions of

individual officers to insure that they were conforming to established Police Department

policies, procedures and/or guidelines and were discharging their duties in an appropriate

and lawful manner.

53.     Specifically, The City should have communicated to Philadelphia

Police Department officers assigned to the Airport the following:

> Investigative detentions may be made only on reasonable
> suspicion of criminal conduct and any arrest must be based on
> probable cause. A referral by TSA agents is not grounds for
> arrest unless an officer makes a judgment of probable cause;
> similarly, referral by TSA agents is not grounds for detention
> unless an officer makes a judgment that there is reasonable
> suspicion of criminal conduct. Any detentions or arrests should
> be documented on appropriate police paperwork consistent with
> PPD Directives.

54.     In fact, this policy and procedure was put into effect as a result of the

unconstitutional custom or agreement of the police to not independently investigate

probable cause after being called by the TSA agent.

55.     The City of Philadelphia through its Police Department should have

ensured that the established policies and procedures that are outlined in the Philadelphia

Police Department Procedures/Protocols were being followed. Alternatively, if such

Policies/Protocols were not being followed by Officers during the exercise of their

official duties, appropriate disciplinary action should have been taken by the City of

15

Philadelphia against the specific officers found to be in noncompliance.

56.     The failure by the City of Philadelphia to ensure that the established policies and procedures found in the Philadelphia Police Department Order were being followed by all Officers during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the City of Philadelphia Police Department to thwart the custom or practice of officers' noncompliance of the noted Procedures/Protocols, and therein resulting in the violation of the constitutional rights ensured to the citizens of the City of Philadelphia, such as the Plaintiff, and other individuals referenced herein.

57.     On or about January 26, 2013, Officers Pinckney and Detective Wojciechowski were on duty as Philadelphia Police Officers. They should have known or had the ability to learn the elements of the relevant crimes.

58.     The City of Philadelphia, TSA, Pistole, Johnson and the United States of America and Officer Pinckney and Detective Wojciechowski and Defendant Flaville should not have entered into any agreement or established a custom that, if the TSA wants someone taken into custody and arrested, the Philadelphia Police Department would take that person into custody without doing their own investigation into probable cause. The Philadelphia Police should not have allowed the comment of a TSA Supervisor alone to replace their independent evaluation of whether there was probable cause or the need to detain plaintiff.

59.     Defendant Pinckney, in taking Mr. Vanderklok into custody, did so without probable cause. Even taking the words of Defendant Kieser as true (which they were not), there is no probable cause to believe that any offense/crimes code violation

16

had occurred and there was no exigent reason for detention of Mr. Vanderklok.  Instead of evaluating the situation and acting properly, defendant Pinckney took away Mr. Vanderklok's liberty based on Kieser's identification of him as a person who said something completely non-criminal about what "anybody" could do without Kieser "knowing." Defendant Pinkney did not ask if the bag was searched. He did not inquire as to whether the passenger had created a disturbance. He did not ask if the screening devices found anything unusual in Mr. Vanderklok's belongings. He did nothing other than to take Mr. Vanderklok into custody.

60.   The video footage clearly establishes that there was no commotion, no disturbance, no interruption of Airport business occurring at any point – and certainly not when Officer Pinckney arrived. Nothing like that was reported to Officer Pinckney. The actual words spoken by Mr. Vanderklok stating he wanted to file a Complaint undeniably do not establish probable cause. The alleged words of Mr. Vanderklok, reported by Charles Kieser, do not come close to establishing probable cause to arrest for any of the crimes charged – or any other crimes. The words reported - "anybody can bring a bomb and you wouldn't even know it" – would more appropriately be categorized as an insult to the TSA Supervisor than a threat to anyone's safety. No other passenger heard the alleged statement and no other witness, TSA or otherwise, came forward. And the words alleged to have been spoken were spoken after the TSA officials knew that the watch was just a watch (and not a component to an explosive devise).

61.   When he arrived at the checkpoint, Defendant Pinkney immediately took Mr. Vanderklok into custody and informed him that he was under arrest. Pinkney went on to prepare two documents – a "75-48" and a "Uniform Police Memo to S.W.D.D." (See

17

Exhibit "A"). It is clear from these documents that the only information Defendant

Pinckney had when he arrested Mr. Vanderklok was the information provided by Charles

Kieser. It is not clear if he even had first-hand information or if he was acting on

hearsay. No other witnesses are named. No other evidence – direct or circumstantial – is

mentioned. No other investigation is performed. No other witnesses are sought out or

interviewed. In both police reports, Defendant Pinkney indicates that he spoke only to

Defendant Kieser. The reports indicate that the Officer made the arrest at the time he

arrived at the Security Checkpoint.

62.      In the report, there is a line that reads: "Details of Arrest (What you did in

the investigation or arrest; be precise as to details!)." Under that, Police Officer Pinckney

wrote:

"TSA Supervisor Kieser called Police and stated Passenger was getting his carry on bag
checked and said Anybody can bring a bomb and you wouldn't even know it. Police took
passenger to H.Q. for further investigation. "

63.      These details of arrest do not rise to the level of any crime, including those

Plaintiff was charged and acquitted of.

64.      After handcuffing Mr. Vanderklok, Defendant Pinkney walked him to an

elevator, which they rode to a basement cell-room. He took Mr. Vanderklok's

belongings, including his bag, its contents, his phone, and his belt. Mr. Vanderklok sat,

locked in that cell, for hours. There was no "further investigation" done.

65.      Officer Pinkney began the paperwork that led to the charging of Plaintiff

with baseless and unsubstantiated crimes.

66.      Mr. Vanderklok was then led outside to a police/TSA vehicle and

transported, with his hands cuffed behind his back, to a Philadelphia Police District

18

where he was thrown in another cell. Aside from hearing things about being sent to "Guantanamo," Mr. Vanderklok also overheard a conversation amongst Defendant Wojciechowski and other Police Personnel where they were talking about making sure they got "the right A.D.A." to review their case to assure that they got approval for the criminal charges they wanted brought against Mr. Vanderklok. No one from the FBI, NSA, JTTF, or any other federal or local agency questioned Mr. Vanderklok. No one seemed concerned that he might be dangerous – most likely because it was abundantly clear that he was not. In fact, that was abundantly clear before Defendant Kieser called the Philadelphia Police.

67.     Mr. Vanderklok was held in that cell room for many more hours. He was fingerprinted and photographed by Police like a criminal. Almost 24 (twenty four) hours passed before he got released from custody.

68.     Based on the false statements of Defendant Kieser, the improper and illegal arrest and detention by the Philadelphia Police Defendants, their ridiculous decision to charge Mr. Vanderklok and the influence/manipulation they exerted over the prosecuting agency to get those charges approved, Mr. Vanderklok had $40,000.00 bail set on him. He was forced to post bond, hire counsel, and be subject to, among other things, travel restrictions.

69.     As a direct and proximate result of the actions of the Defendants, Roger Vanderklok has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, sleeplessness and nervousness. He has incurred and may hereafter incur expenditures for medical care,

19

drugs, and kindred expenditures.

70.     Defendants, Pinckney, Wojciechowski and Flaville initiated criminal proceedings against Plaintiff by affirming affidavits of probable cause; the criminal trial resulted in a Judgment of Acquittal in Plaintiff's favor; there was no probable cause for any of the charges; the defendants acted with malice and a purpose other than to bring plaintiff to justice and as a result the plaintiff suffered a deprivation of liberty.

71. Defendants, Pinckney, Wojciechowski and Flaville, initiated criminal proceedings against Plaintiff without probable cause because none of the alleged statements ("anybody could bring a bomb and you wouldn't even know it to, I could bring a bomb through here any day of the week and you would never find out, to Let me tell you something- I'll bring a bomb through here any day that I want...you'll never find it) alleged by defendant Kieser amount to probable cause for any element of the crimes of disorderly conduct, terroristic threats or threatening the placement of a bomb.

72.     At trial, the first opportunity the Court had to evaluate whether probable cause existed, the court entered a Judgment of Acquittal after the prosecution's case. (See Transcript attached as Exhibit "E").

73.     The defendants, Pinckney, Wojciechowski, Flaville and Kieser, acted maliciously and in retaliation for Plaintiff stating he wanted to file a Complaint and asking for a complaint form with no purpose other than to falsely charge and arrest plaintiff.

74.     The result was the plaintiff suffered a deprivation of his liberty by being held for almost 24 hours, loss of the cost of his plane ticket to Florida, expense of bail and the restriction imposed by bail such as no traveling for over 2 months.

20

75.     The City of Philadelphia, United States of America and the TSA failed to have established and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any Police Officer/TSA Agent has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated; when Police are to be called, when individuals are to be taken into custody and or arrested; when probable cause has been established including the use of a TSA Supervisor's statements. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

76.     The City of Philadelphia, United States of America and the TSA should have ensured that their established policies and procedures that are outlined in their Procedures/Protocols were being followed. Specifically, they should have ensured that their procedures/protocols were being followed by all individuals employed by them. Alternatively, if such Policies/Protocols were not being followed by officers/agents during the exercise of their official duties, appropriate disciplinary action should have been taken by the Defendants against the specific officers/agents found to be in noncompliance. The failure by the City of Philadelphia Police Department to ensure that the established policies and procedures were being followed by all officers/agents during the discharge of their official duties rendered the policies and procedures "window dressing," and demonstrates a deliberate indifference by the Defendants to thwart the custom or practice of officers' or agents' noncompliance of the Order, and therein

21

resulting in the violation of the constitutional rights ensured to the citizens of the City of Philadelphia, such as the Plaintiff.

77.     The City of Philadelphia, United States of America, and the TSA failed to have established and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any officer/agent has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when Police are to be called; when individuals are to be taken into custody and or arrested; when probable cause has been established. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

78.     The City of Philadelphia, United States of America and the TSA should have ensured that the established policies and procedures that are outlined in their guidelines were being followed. Alternatively, if such Policies/Protocols were not being followed by officers/agents during the exercise of their official duties, appropriate disciplinary action should have been taken by the Defendants against the specific officers/agents found to be in noncompliance.

79.     The City of Philadelphia, United States of America and the TSA had a policy, procedure, agreement and at the very least had established a custom whereby police officers would arrest any person that TSA called them about, without independently establishing whether probable cause existed thereby violating their constitutional rights.

80.    The errors, omissions and failures of the City of Philadelphia were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

81.    The errors, omissions and failures of the City of Philadelphia were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

82.    The errors, omissions and failures of Raymond Pinckney in his official capacity were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

83.    The errors, omissions and failures of Detective M. Wojciechowski in his official capacity in his official capacity were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

84.    The errors, omissions and failures of the Kenneth Flaville in his official capacity were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and

23

immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

85.     The errors, omissions and failures of the Defendants, Kieser and TSA, were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

86.     Defendant, Kieser, set about the process of initiating criminal proceedings against Plaintiff by retaliating against him for utilizing his first amendment rights by stating he wanted to file a complaint against Kieser and the TSA and asking for a complaint form to fill out.

87.     As a result, Defendant Kieser, began telling untruths (that plaintiff stated "anybody could bring a bomb in here and you wouldn't even know it") and making up information with the purpose to have plaintiff arrested and deprived of his liberty knowing Plaintiff never made these statements, resulting in a criminal trial where the court entered a Judgment of Acquittal in Plaintiff's favor.

88.     Defendant, Kieser, knew because of the policy, agreement, procedure and custom between the TSA and the Philadelphia Police Department that once he called the police, Plaintiff would be arrested.

89.     Furthermore, there was no probable cause for any of the charges against Plaintiff and said defendants, Kieser, Pinkney, Wojciechowski and Flaville acted with malice and a purpose other than to bring plaintiff to justice and as a result the plaintiff suffered a deprivation of liberty.

24

90.     Plaintiff exercised free speech when he stated he wanted to make a complaint and asked for a complaint form to complain about defendant Kieser's attitude and conduct.  Although, Plaintiff denies saying "anybody could bring a bomb in here" and pointing his finger, these statements and expressive conduct would also be considered protected free speech.

91.     As a result of Plaintiff utilizing his First Amendments rights, defendants, Kieser and TSA had Plaintiff arrested because of his speech and/or gestures and as such this action would clearly deter an ordinary person from exercising his or her right.

92.     As a result of Plaintiff utilizing his First Amendments rights, defendants, Pinkney, Wojciechowski and Flaville had Plaintiff arrested without probable cause because of his speech and/or gestures and as such this action would clearly deter an ordinary person from exercising his or her right.

93.     Due to Kieser's untrue statements about Plaintiff using the word bomb and becoming irate, Kieser played a role in the protracted seizure of Plaintiff.

94.     Defendant Kieser's conduct and untrue statements about Plaintiff's words and actions can only by motivated by evil motive or intent and it involves reckless or callous indifference to the federally protected rights of Plaintiff.

95.     The TSA and the United States adopted and implemented a policy, procedure, and custom with the Philadelphia Police whereby whenever the TSA called the police, the person at issue would be arrested, regardless of probable cause and as a result violating the individual's constitutional right to be free from false arrest and seizure.

96.     The errors, omissions and failures of the United States Of America were

25

the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

97.     The errors, omissions, falsehoods and failures of Charles Kieser in his official capacity were the direct or proximate cause that allowed the false arrest, unlawful seizure, and illegal detention of Roger Vanderklok in violation of the rights and immunities guaranteed to him by the First, Fourth, and Fourteenth Amendments of the United States Constitution to have occurred.

98.     Defendants, TSA, United State of America, Kieser and Pistole were acting under color of state law since they had "police power" to detain and search.

99.     Defendant Kieser acting under color of state law when he knowingly, intentionally and with reckless disabandonment made up a string of untruths to intentionally have Plaintiff arrested, including stating that Plaintiff said "Anybody can bring a bomb and you wouldn't even know it to" to changing his story to Plaintiff stating "I could bring a bomb through here any day of the week, and you would never know it" to at trial stating Plaintiff said "Let me tell you something-I'll bring a bomb trough here any day that I want.. you'll never find it.)" These statement each getting more threatening show willful conduct on the part of defendant Kieser to make up a story to fit the elements of a crime so that Plaintiff would be arrested, prosecuted and sentenced.

100.    Defendant, Pinkney,Wojciechowski and Flaville, should have recognized immediately that there was an inconsistency in Kieser's story and that his description did not meet any elements of any crime, including disorderly conduct.  Instead, they willfully

26

ignored this inconsistency and arrested and confine Plaintiff with the intent he be charged
and prosecuted even knowing there was no probable cause for his arrest.

101.    Defendants, Pinckney, Wojciechowski and Flaville, are not entitled to
qualified immunity under state law because they acted with willful misconduct with the
intent to imprison, arrest and charge Plaintiff when they arrested him without probable
cause.

102.    At all times relevant hereto, the named Defendants were acting under
color of state law.

103.    At all times relevant whereto, the Defendants were acting directly or
through their agents, servants and employees.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:

Unconstitutional Search and Seizure – Fourth Amendment to the U.S. Constitution,

§1983, and Bivens

104.    The detention, arrest, unnecessary and extended restraint, incarceration of
the Plaintiff by the Defendants, as described in paragraphs 1-103, constituted an
unreasonable search and seizure in violation of clearly established rights under the Fourth
and Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM FOR RELIEF:

Unconstitutional Infringement of the Freedom of Speech – First Amendment to the

U.S. Constitution, § 1983, and Bivens

105.    The detention, arrest, unnecessary and extended restraint, incarceration,

and search of the Plaintiff by the Defendants on the basis of the alleged non-criminal, non-threatening, non-suspicious words of the Plaintiff, as described in paragraphs 1-104, infringed Plaintiff's freedom of speech and constituted unconstitutional retaliation in violation of clearly established rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF:

### False Arrest

106.    Plaintiff's detention and arrest without probable cause or any other lawful grounds, as described in paragraphs 1-105, constitute the tort of false arrest under the laws of the Commonwealth of Pennsylvania and the Federal Tort Claims Act.

107.    Defendants, Kieser, Pinkney, Wojciechowski, Flaville, City of Philadelphia, TSA and the United States of America are liable for these actions.

## FOURTH CLAIM FOR RELIEF:

### False Imprisonment

108.    Plaintiff's detention and imprisonment without probable cause or any other lawful grounds, as described in paragraphs 1-107, constitute the tort of false imprisonment under the laws of the Commonwealth of Pennsylvania and the Federal Tort Claims Act.

109.    Defendants, Kieser, Pinkney, Wojciechowski, Flaville, City of Philadelphia, TSA and the United States of America are liable for these actions.

## FIFTH CLAIM FOR RELIEF:

### Battery and Assault

110.    The handcuffing, pat-down and other unauthorized contacts with

Plaintiff's person, as well as the imminent apprehension of such unauthorized contacts, as described in paragraphs 1-109, constitute the torts of battery and assault under the laws of the Commonwealth of Pennsylvania and the Federal Tort Claims Act, Defendants, Kieser, Pinkney, Wojciechowski, Flaville , City of Philadelphia, TSA and the United States of America are liable for these actions.

## SIXTH CLAIM FOR RELIEF

### Monell Claims

111.    Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-110 of the within Complaint as if more fully set forth herein.

112.    The policy, procedure and custom of Defendant TSA and the City of Philadelphia to detain any person the TSA called the Philadelphia Police Department about without an independent investigation or determination of probable cause resulted in the detention, incarceration, and search of the Plaintiff by the Defendants on the basis of the alleged non-criminal, non-threatening, non-suspicious words of the Plaintiff, as described in paragraphs 1-111, infringed Plaintiff's freedom of speech and constituted unconstitutional retaliation in violation of clearly established rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

113.    The Defendant, City of Philadelphia, failed to adequately train, supervise and/or discipline its employees or agents in the performance of their duties and/or undertook actions which  were improper or illegal and demonstrated indifference to the constitutional rights of Individuals, such as Roger Vanderklok.

114.    The Defendant, City of Philadelphia, had policies and/or customs in place

29

and/or failed to insure that policies, procedures and protocols which existed were properly enforced and personnel supervised in the performance of their duties that enabled their employees, servants or agents to act with deliberate indifference to the constitutional rights of individuals, such as Roger Vanderklok.

115.    The Defendant, City of Philadelphia, failed to develop and implement policies, procedures and protocols that then enabled their employees and agents to act with deliberate indifference to the constitutional rights of individuals, such as Roger Vanderklok.

116.    The Defendant, City of Philadelphia, has established policies and procedures to act as a safeguard against constitutional infractions and restraints upon officers/agents affecting the detention and arrests of citizens.

117.    Defendant, the City of Philadelphia, should have trained their airport officers to:

> Investigative detentions may be made only on reasonable suspicion of criminal conduct and any arrest must be based on probable cause. A referral by TSA agents is not grounds for arrest unless an officer makes a judgment of probable cause; similarly, referral by TSA agents is not grounds for detention unless an officer makes a judgment that there is reasonable suspicion of criminal conduct. Any detentions or arrests should be documented on appropriate police paperwork consistent with PPD Directives.

118.    Within this action, the conduct of Defendant, City of Philadelphia, were violative of the policies and procedures promulgated by the Defendant, City of Philadelphia, and the rights and privileges guaranteed to the Plaintiff by the Constitution of the United States and the Constitution of the state of Pennsylvania. Said rights, privileges and immunities include the right to body integrity; the right to exercise

30

freedom of speech; the right to be free from the use of excessive fore; the right to be free from unreasonable seizures and searches.

119.    The acts of the Defendant, City of Philadelphia, were done with the purpose and intent of depriving Roger Vanderklok of his rights secured to him by the First, Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF:

PA State Malicious Prosecution and § 1983 Malicious Prosecution

120.    Plaintiff's detention, imprisonment, arrest and criminal prosecution without probable cause or any other lawful grounds constituted the tort of malicious prosecution under the laws of the Commonwealth of Pennsylvania and Section 1983. Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-119 of the within Complaint as if more fully set forth herein.

121.    Under the Federal Tort Claims Act and the law of the Commonwealth of Pennsylvania, Defendants, Kieser, Pinkney, Wojciechowski, Flaville, City of Philadelphia, TSA and the United States of America are liable for these actions.

122.    The defendants initiated criminal proceedings against Plaintiff without probable cause because none of the statements ("anybody could bring a bomb and you wouldn't even know it to, I could bring a bomb through here any day of the week and you would never find out, to Let me tell you something- I'll bring a bomb through here any day that I want…you'll never find it) made by defendant Kieser amount to probable cause for any element of the crimes of disorderly conduct, terroristic threats or threatening the placement of a bomb.

31

123.    Additionally, the only statement made by Plaintiff in stating he wanted to file a Complaint about how he was treated and asking for a form, is clearly not a crime.

124.  At trial, the court entered a Judgment of Acquittal, after the prosecution rested, on the charges of disorderly conduct, terroristic threats or threatening the placement of a bomb.

125.  The defendants acted maliciously and in retaliation for Plaintiff asking for a Complaint with no probable cause or purpose other than to falsely charge and arrest plaintiff.

126.    The maliciousness of making up the untrue statements about the bomb and attributing them to Plaintiff was for plaintiff to be wrongly and unjustly charged without probable cause and prosecuted for disorderly conduct, terroristic threats or threatening the placement of a bomb.

127.  The result was the plaintiff suffered a deprivation of his liberty by being held for almost 24 hours, loss of the cost of his plane ticket to Florida, bail and the restriction imposed by bail such as no traveling for over 2 months.

### SEVENTH CLAIM FOR RELIEF:

PA State Retaliatory Prosecution and § 1983 Retaliatory Prosecution

128.    Plaintiff's detention, imprisonment, arrest and criminal prosecution without probable cause or any other lawful grounds constituted the tort of retaliatory prosecution under the laws of the Commonwealth of Pennsylvania and Section 1983. Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-127 of the within Complaint as if more fully set forth herein.

128.     Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions. The TSA officials were "state actors" in that the Police and the TSA have a pre-approved plan and the Police routinely take into custody anyone identified by the TSA without independently evaluating the presence of probable cause.

129.     Under the Federal Tort Claims Act and the law of the Commonwealth of Pennsylvania, Defendants, Kieser, Pinkney, Wojciechowski, Flaville, City of Philadelphia, TSA and the United States of America are liable for these actions.

### EIGHTH CLAIM FOR RELIEF:

Violation Of Plaintiff's Fourteenth Amendment Rights

130.     Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-128 of the within Complaint as if more fully set forth herein.

131.     Defendants' actions errors and omissions, as more fully described in the factual section of the within complaint, constituted violations of Plaintiff's rights, privileges and immunities, as secured by the Fourteenth Amendment to the United States Constitution. Said rights, privileges and immunities include the right to due process and equal protection of the law which encompasses his right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches; and the prohibitions against arrests, detentions, and prosecutions based on fabricated evidence.

132.     The acts of the Defendants were done with the purpose and intent of depriving Plaintiff of his rights secured to him by the Fourteenth Amendment to the United States Constitution.

133.     The acts of the Defendants, as set forth in this complaint, were done

33

willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Roger Vanderklok by the Fourteenth Amendment to the United States Constitution.

134.    Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

## PRAYER FOR RELIEF

WHEREFORE, Roger Vanderklok asks for the entrance of judgment against the Defendant as follows:

(a) Compensatory damages in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial as to all Defendants except the United States of America and the City of Philadelphia;

(c) Reasonable attorneys' fees and costs of suit;

(d) Prejudgment and postjudgment interest; and

(e) Such other relief as the Court deems appropriate and just.

**FILED**

MAY 27 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Respectfully submitted by:

/s/ Thomas B. Malone
Thomas B. Malone, Esquire
PA. ID No. 77291
The Malone Firm, LLC
1650 Arch St., Su. 1903
Philadelphia, PA 19103

34

EXHIBIT "A"



# DISCOVERY COVER SHEET
# Philadelphia Police Department

DA Office Copy

**DC Number:** 2013-77-000457                                             **Printed:** 2/13/2013 14:20

**Docket Number(s):**

**Next Court Date:**                                                      **Court Room:**

**Case Subject:** Bomb Scare at 8800 ESSINGTON AVE on 01/26/2013

**Assigned Investigator:** WOJCIECHOWSKI, MICHAEL (PR# 219667, # 9065)

**Approving Supervisor:** DOERR, GREGORY (PR# 241410, # 8667)          **Discovery Approved On:** 2/13/2013 11:22

**Assigned Unit:** 6500

| Defendant Name(s) | PID | Arrest Date |
|---|---|---|
| VANDERKLOCK, ROGER | 1133394 | 1/26/2013 8:20 |

## ENCLOSED REPORTS

### Case Reports:

☑ 2013-77-000457.1 Investigation Report (75-49) Bomb Scare at 8800 ESSINGTON AVE on 01/26/2013

### Interviews:

☑ TSA STATEMENT

☑ ARREST MEMO

☐ _____

### Attachments:

☑ Arrest Report Arrest Report for ROGER B B VANDERKLOCK 01272013

☑ Incident Report 48

☑ Other Attachments 229

### Other Enclosures:

☐ Seizure Analysis

☐ Ballistics Report

☐ Certificate of Non-Licensure

☐ _____

☐ _____

☐ _____

| Needed For Court: | | |
|---|---|---|
| **Court Reason** | **Entity Information** | **Contact Information** |
| Victim | KIESER, CHARLES | |
| Arresting Officer | PINKNEY, RAYMOND (PR# 201083, # 4718)<br>Vacation:<br>7/26/2013 - 8/14/2013<br>Vacation:<br>2/21/2013 - 2/21/2013 | 7700, 1C |

DA'S OFFICE REPRESENTATIVE _____          Date _____

DEFENSE COUNSEL _____          Date _____

# Philadelphia Police Department Investigation Report

DC Number 2013-77-000457
Report No 2013-77-000457.1
Report Date 2/12/2013 1:17:12 PM
Report Type Investigation Report (75-49)

## A - Approved
Page 1 of 3

**Unit Control#:**

| | |
|---|---|
| Classification | 0809 - ASSAULT TERRORIST THREATS |
| Previous Classification | 3128 - BOMB SCARE |
| Location of Occurrence | 8800 Essington Ave |
| Dist/Sect of Occurrence | 77th District Sector A |
| Responding Officer | P/O RAYMOND PINKNEY (PR 201083 / #4718) |
| Assisted By | |
| Related Cases | |

| | |
|---|---|
| Occurred On | 1/26/2013 8:20;00 AM |
| Reported On | 1/26/2013 8:26:13 AM |
| Disposition / Status | 2 - Arrest |
| Clearing Unit | 7700 - Airport District |
| Investigating Officer | Det MICHAEL WOJCIECHOWSKI(PR 219667/ #9065) |
| Dist/Unit Preparing | 6500 - Southwest Detective Division |

## Report Approval

Completed 2/12/2013 1:17:12 PM   Det MICHAEL WOJCIECHOWSKI (PR 219667 / #9065)
Approved 2/12/2013 2:36:51 PM   Sgt GREGORY DOERR (PR 241410 / #8667)

## Report Summary

ROGER VANDERKLOCK WAS ARRESTED FOR THREATENING TO BRING A BOMB TO THE AIRPORT.

## Classification Detail: 0809 - ASSAULT TERRORIST THREATS

| | | |
|---|---|---|
| Location | 098 - Airport | No. Prem Entered |
| Offense Completed? | YES | Using | Entry Method |
| Hate/Bias | None (No Bins) | Criminal Activity | Type Security |
| Domestic Violence | NO | Weapons/Force | Tools |

## Victim / Complainant V1: KIESER, CHARLES

| | | | |
|---|---|---|---|
| Address | | DOB | Officer Payroll # |
| CS2 | | Age / Race / Sex | 39 / White / Male | District / Unit |
| Home Phone | | Ethnicity | Not of Hispanic Origin | SSN |
| Cell Phone | | Occupation/Grade | SCREENING OFFICER | OLN |
| Beeper | | Employer/School | TSA | OLN State / Country |
| Email | | Emp/Sch Address | 2 International Pz, Ste 640 | Injury |
| Work Phone | | Emp/Sch CSZ | Philadelphia, PA 19113 | Circumstances |
| Found Date | | Found Location | | Reason for Absence |
| Reason for Cancellation | | Found City | |
| PCIC/NCIC Notification | | | |
| Victim Notes | | | |

### Interview Section

| | | |
|---|---|---|
| Interview Date | Interviewed By | (PR /#) | 75-483 Completed |
| Interview Location | Others Present | |

Interview Summary
THE COMPLAINANT STATED THAT HE IS A SCREENING SUPERVISOR FOR THE TSA. ON 1/26/13, HE WAS WORKING AT THE B TERMINAL SECURITY CHECKPOINT OF THE PHILADELPHIA INTERNATIONAL AIRPORT. AT APPROXIMATELY 8:15 AM, ONE OF HIS OFFICERS BEGAN DEALING WITH A PASSENGER WHO WAS BECOMING IRATE.

HE CHECKED THE X-RAY IMAGE AND SAW SEVERAL ANOMALIES WHICH APPEARED TO BE COMPONENTS OF A PIPE BOMB. AFTER THE PASSENGER BECAME LOUD TOWARDS THE SCREENING OFFICER, THE COMPLAINANT WENT TO TRY AND CALM THE SITUATION. THE COMPLAINANT EXPLAINED WHAT THEY WERE LOOKING FOR AND WHY THE BAG HAD TO BE CHECKED. THE PASSENGER (THE DEFENDANT)
THEN STATED, " I COULD BRING A BOMB THROUGH HERE ANY DAY OF THE WEEK, AND YOU WOULD NEVER KNOW IT." THE BAG CHECK WAS COMPLETED AND NO TRACES OF EXPLOSIVES WERE FOUND. THE POLICE WERE NOTIFIED OF THE REMARK, AND THE DEFENDANT WAS WATCHED UNTIL THE OFFICERS ARRIVED.
THE COMMENT WAS MADE IN A PUBLIC AREA WITH SEVERAL OTHER PASSENGERS NEARBY.
SINCE THE PASSENGER'S BAG HAD ALREADY BEEN THOROUGHLY CHECKED, THERE WAS NO EVACUATION OF THE AREA.

## Property

| Description | | Reported Value | Recovered Value |
|---|---|---|---|
| | TOTAL | $0 | $0 |

NetRMS_CR.rtf v2f

Printed For:
Printed: February 13, 2013 - 2:20 PM

| **Philadelphia Police Department Investigation Report** | **A - Approved** |
|---|---|
| DC Number  **2013-77-000457** | Page 2 of 3 |
| Report No    **2013-77-000457.1** | |
| Report Date  **2/12/2013 1:17:12 PM** | |
| Report Type  **Investigation Report (75-49)** | |

## Witness W1:P/O RAYMOND  PINKNEY (PR 201083 / #4718)

| | | | | | |
|---|---|---|---|---|---|
| Address | | DOB | | Officer Payroll # | **201083** |
| CSZ | | Age / Race / Sex | **/ /** | District / Unit | **7700 - Airport District** |
| Home Phone | | Ethnicity | | SSN | |
| Cell Phone | | Occupation/Grade | | OLN | |
| Beeper | | Employer/School | **Philadelphia Police Department** | OLN State / Country | **/** |
| Email | | Emp/Sch Address | **One Franklin Sq** | | |
| Work Phone | **215 686-1776** | Emp/Sch CSZ | **Philadelphia, PA  19106** | | |
| Witness Notes | | | | | |

**Interview Section**

| | | | | |
|---|---|---|---|---|
| Interview Date | | Interviewed By | **(PR  / #)** | **75-483 Completed** |
| Interview Location | | Others Present | | |
| Interview Summary | **P/O PINKNEY RESPONDED TO THE CHECKPOINT AND WAS MET BY THE COMPLAINANT. AFTER THE FACTS WERE RELATED TO THE OFFICER, OFFICER PINKEY TOOK THE DEFENDANT TO THE AIRPORT UNIT HQ FOR FURTHER INVESTIGATION.** | | |

## Arrestee A1: VANDERKLOCK, ROGER B

| | | | | | |
|---|---|---|---|---|---|
| AKA | | DOB | **4/13/1956** | SSN37 | **2-70-7668** |
| Alert(s) | | Age / Race / Sex | **56 / White / Male** | OLN | |
| Address | **834 Chestnut St Apt Ph117** | Ethnicity | **Not of Hispanic Origin** | OLN State / Country | **/ United States of America** |
| CSZ | **Philadelphia, PA  19107** | Place of Birth | | Build | |
| Home Phone | | Occupation/Grade | | Scars/Marks/Tattoos | |
| Cell Phone | | Employer/School | | Teeth | |
| Beeper | | Emp/Sch Address | | Facial Hair | |
| Email | | Emp/Sch CSZ | | Complexion | |
| Work Phone | | Height / Weight | **/** | Hair Style / Length | |
| Attire | | Eye / Hair Color | **/** | Blood Type | **/** |
| Jewelry | | Artif. Body Prts/Aids | | | |
| | | | | | |
| Offender PID | **1133394** | CBN | **1187921** | Arrested Date | **1/26/2013 8:20:00 AM** |
| Arrest Type | **Sight Arrest** | Arrested For | **0809 - ASSAULT TERRORIST THREATS** | Arrest Location | **B Checkpoint, P. I. A.** |
| FBI No. | **678847TD6** | Arresting Officer 1 | **W1** | Booked On | |
| PA SID. | **40486062** | Arresting Officer 2 | | Booked Location | |
| Armed With | **01 - Unarmed** | Number of Warrants | | Released Location | |
| Multi. Clearance | **Not Applicable** | Notified | | Released On | |
| Prev. Suspect No. | | Juvenile Disposition | | Released By | **(PR  / #)** |
| | | | | Release Reason | |
| | | | | Held For | |
| Arrest Notes | | | | | |

**Interview Section**

| | | | | |
|---|---|---|---|---|
| Interview Date | | Interviewed By | **(PR  / #)** | **75-483 Completed** |
| Interview Location | | Guardian Present | | Miranda Read |
| | | Others Present | | Miranda Waived |
| Interview Summary | | | | |

## Case Facts

## MO

## Actions Taken

| | |
|---|---|
| **1.  Defendant Statement Taken** | **NO** |
| **2.  Defendant Debriefed** | **NO** |

| **Philadelphia Police Department Investigation Report** | **A - Approved** |
|---|---|
| DC Number 2013-77-000457<br>Report No 2013-77-000457.1<br>Report Date 2/12/2013 1:17:12 PM<br>Report Type Investigation Report (75-49) | Page 3 of 3 |

| | |
|---|---|
| 3. PA Crimes Code Charges Placed for Defendant | 2715,5503 |
| 4. Bomb Squad Notified | YES |
| 5. Detective Division Notified | YES |
| 6. District Attorney's Office Notified | YES |
| 7. ATF Notified | YES |
| 8. Div/Dist Commander Notified | YES |
| 9. FBI Notified | YES |
| 10. BMV Records Check | YES |
| 11. Criminal History Through Federal, State and Local Systems Records Check | YES |
| 12. Defendant Checked Through PA State Police for Number of Guns Owned | YES |
| 13. FBI Records Check | YES |
| 14. NCIC/PCIC Offender Records Check | YES |

## *Philadelphia Police Department Arrest Report*

Page 1 of 2 *PARS*

| Defendant: last name: **VANDERKLOCK** | | Sex: Male | SSN: 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 | DOB: 04/13/1956 |
| first name: **ROGER B** | middle initial: **B** Race: White | | Birth Place: **GRAND RAPIDS** | |

| Address: **834 CHESTNUT** | ST \PT/Suite: PH117 Philadelphia PA 19107- | | Phone #: 215-000-0000 |

| Year: 2013 | District: 77 | DC#: **13-77-000457** | Sector: 1 | Ctrl#: 00000 |
| PID: **1133394** | SID: 40466062 | OTN: N8448716 | Event: 161821429 | CBN: **1187921** |
| Crime Class: 809 | Desc: Other assaults terroristic threats | | Authority: Philadelphia Police Department | |
| DFJ: N | | | FBI / FID: **678847TD6** | |

| Arrest Name: ROGER VANDERKLOCK | DOB: 04/13/1956 | SSN: |

### ARREST INFORMATION:

Date / Time: 01/26/2013 08:25AM      District: 77      Inside/Outside: I      Arrest Type: SA

B CHECKPOINT, PIA  WY  Philadelphia PA 19153-

Slating Date: 01/26/2013   Slating Time: 11:22AM      Sum/Warr:      Issued By AC Magistrate:

### OCCURRENCE:

Date / Time: 01/26/2013 08:20AM      Date reported: 01/26/2013 08:20AM      Inside/Outside: I      Codefendants?: N

B  CHECKPOINT, PIA  WY  Philadelphia PA 19153-

### FACTS OF THE CASE:

THE COMPLAINANT STATED THAT HE IS A SCREENING SUPERVISOR FOR THE TSA. ON 1/26/13, HE WAS WORKING AT THE B TERMINAL SECURITY CHECKPOINT OF THE PHILADELPHIA INTERNATIONAL AIRPORT. AT APPROXIMATELY 8:15 AM, ONE OF HIS OFFICERS BEGAN DEALING WITH A PASSENGER WHO WAS BECOMING IRATE.

HE CHECKED THE X-RAY IMAGE AND SAW SEVERAL ANOMALIES WHICH APPEARED TO BE COMPONENTS OF A PIPE BOMB. AFTER THE PASSENGER BECAME LOUD TOWARDS THE SCREENING OFFICER, THE COMPLAINANT WENT TO TRY AND CALM THE SITUATION. THE COMPLAINANT EXPLAINED WHAT THEY WERE LOOKING FOR AND WHY THE BAG HAD TO BE CHECKED. THE PASSENGER (THE DEFENDANT) THEN STATED, " I COULD BRING A BOMB THROUGH HERE ANY DAY OF THE WEEK, AND YOU WOULD NEVER KNOW IT." THE BAG CHECK WAS COMPLETED AND NO TRACES OF EXPLOSIVES WERE FOUND. THE POLICE WERE NOTIFIED OF THE REMARK, AND THE DEFENDANT WAS WATCHED UNTIL THE OFFICERS ARRIVED.

THE COMMENT WAS MADE IN A PUBLIC AREA WITH SEVERAL OTHER PASSENGERS NEARBY.

SINCE THE PASSENGER'S BAG HAD ALREADY BEEN THOROUGHLY CHECKED, THERE WAS NO EVACUATION OF THE AREA.

P/O PINKNEY RESPONDED TO THE CHECKPOINT AND WAS MET BY THE COMPLAINANT. AFTER THE FACTS WERE RELATED TO THE OFFICER, OFFICER PINKEY TOOK THE DEFENDANT TO THE AIRPORT UNIT HQ FOR FURTHER INVESTIGATION.

### CHARGES:

| Code | OC | Description | Grade | Counts |
|------|----|-----|-------|--------|
| CC2715 | | BOMB THREATS | M1 | 001 |
| CC5503A4 | | DISORDERLY CONDUCT-HAZARD | S | 001 |

### REQUESTED HEARING DATE:                REQUESTED HEARING LOCATION:

02/25/2013 00:00

### COMPLAINANTS AND WITNESSES:

Complainant(s)

CHARLES KIESER      Age:      Phone(H):      Phone(W): 215-000-0000  SSN:  - -

| ARREST REPORT BY: | | Badge  Description | | Unit Id  Platoon  Squad  Group Id | | |
| 219667   WOJCIECHOWSKI M | | 9065  65  Southwest Detective Division | | 0 | 5 | 0 |

### ARREST REPORT APPROVED BY:

Supervisor- payroll no:      FLAVILLE KENNET KENNETH            246377            Approval Code:  Approved

### POLICE PERSONNEL:

| Employee Name | Payroll Number | Badge | Dist/Unit | Platoon/Group | Vacation Dates | Vacation Description | Needed At Hearing Police/Sup | Arrest OFC. |
|---------------|----------------|-------|-----------|---------------|----------------|----------------------|------------------------------|-------------|
| PINKNEY RAYMOND | 201083 | 4718 | 77/0 | 1 C | 02/21/2013 to 02/21/2013 | Vacation | N / Y | Y |
| PINKNEY RAYMOND | | | | C | 07/26/2013 to 08/14/2013 | Vacation | N / Y | Y |

Rev. 11/1996                     SW            01/27/2013 01:44:41

## Philadelphia Police Department Arrest Report

Page 2 of 2 *PARS*

Defendant: last name: **VANDERKLOCK**   Sex: Male   SSN: **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**   DOB: **04/13/1956**

first name: **ROGER B**   middle Initial: **B**   Race: **White**   Birth Place: **GRAND RAPIDS**

### ADDITIONAL INFORMATION:

Hits: Y   Statement?:   Lab User Fees Requested?: N   ADA Concerns?:

### EMPLOYER INFORMATION:

Occupation: ARCHITECT   Employer: SELF   Phone: 215-000-0000

Philadelphia PA   -

### DESCRIPTIVE DATA:

| | | | |
|---|---|---|---|
| Complexion | CLEAR | Eye Characteristics | NORMAL |
| Eye Color | BLU | Facial Hair | NONE |
| Glasses (Y=Yes) | 0 | Hair Color | GRY |
| Hair Length | ABOVE EARS | Hair Style | STRAIGHT |
| Teeth | NORMAL | | |

Rev. 11/1996   SW   01/27/2013 01:44:41

# BIOGRAPHICAL INFORMATION REPORT

☐ ARREST   ☒ INVESTIGATION   ☐ OTHER

*(CHECK BLOCKS WHERE DOCUMENTATION EXISTS)*

PHILADELPHIA POLICE DEPARTMENT

| DATE | TIME | LOCATION OF INITIAL CONTACT | DISTRICT | D.C. NO. |
|---|---|---|---|---|
| 1-26-13 | 825 AM | PHL Terminal B CKPT | 77th | 13-77-00457 |

| NAME | LAST | FIRST | MIDDLE | D.O.B. | SEX | RACE |
|---|---|---|---|---|---|---|
| | Vanderklok | Roger | Bruce | 4-13-56 | Male | White |

| HEIGHT | WEIGHT | HAIR COLOR | EYE COLOR | COMPLEXION | BUILD | GLASSES (YES/NO) | FACIAL HAIR |
|---|---|---|---|---|---|---|---|
| 6'2 | 160 | Gray | Blue | light | Med | NO | None |

| NICKNAME | ALIASES | MARITAL STATUS |
|---|---|---|
| None | None | Yes |

| RESIDENCE STREET NUMBER/NAME | CITY/STATE (OTHER THAN PHILA.) | DIST |
|---|---|---|
| 834 Chestnut St APT PH117 | Phila PA 19107 | |

| TYPE OF RESIDENCE | RESIDES WITH | DRIVER NUMBER | STATE |
|---|---|---|---|
| House | Wife | 29314163 | PA |

| SOCIAL SECURITY NUMBER | OCCUPATION | EMPLOYER/ADDRESS |
|---|---|---|
| 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 | Architect | UNKNOWN |

| PLACE OF BIRTH (CITY/STATE) | GROUP AFFILIATION | ETHNIC BACKGROUND |
|---|---|---|
| Owosso, Michigan | | |

| SCARS, TATTOOS, DEFORMITIES | CLOTHING DESCRIPTION | JEWELRY WORN |
|---|---|---|
| None | Orange CAP/ Blue JKT/ Plaid shirt/ Blue Jeans/ Brn loafer Shoes | Watch |

## VEHICLE INFORMATION

| | YEAR | MAKE | MODEL | COLOR | STATE | TAG | VIN |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |

| | OWNER—LAST NAME, FIRST | ADDRESS | CITY | STATE |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |

| MODUS OPERANDI *(METHODS, TRAITS, ETC.)* | AREAS FREQUENTED |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

75-229 (Rev. 3/92)

AREAS MARKED WITH ▷ MUST BE FILLED IN.
CHECK RELIABILITY BOXES WHEN APPROPRIATE

## RELATIVES

| | LAST | MAIDEN | FIRST | ADDRESS | CITY/STATE |
|---|---|---|---|---|---|
| SPOUSE | Vanderklok | Visser | Elenor | 834 Chestnut St | Phila Pa R107 |
| MOTHER | Boeresen | MAIDEN | FIRST Loretta | ADDRESS Deceased | CITY/STATE |
| FATHER | LAST | FIRST | ADDRESS | | CITY/STATE |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |

## ASSOCIATES

| LAST NAME | FIRST NAME | ADDRESS | CITY/STATE | PPN |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## EDUCATION

| SCHOOL | ADDRESS | CITY/STATE | YEARS |
|---|---|---|---|
| Jenison | Unknown Michigan | Michigan | 4 yrs |
| | | | |

## CRIMINAL RECORD INFORMATION

| PPN N RF | FBI NUMBER NRF | PA NUMBER NRF | OTHER NUMBER (STATE, IMMIGRATION) |
|---|---|---|---|
| PAROLE NUMBER | PAROLE OFFICER | | TELEPHONE NUMBER(S) |
| PROBATION NUMBER | PROBATION OFFICER | | TELEPHONE NUMBER(S) |

CHIEF CRIMINAL ACTIVITY     Threats

| INITIATING OFFICER (last/first) Q. Murray | BADGE 4718 | RANK P/O | DISTRICT/UNIT/PLATOON 77th Airport |
|---|---|---|---|
| ASSIGNED INVESTIGATOR Wojciechowski | BADGE 9065 | RANK DET | DISTRICT/UNIT/PLATOON 77/5 |

## ADDITIONAL REMARKS

75-229 (Reverse) (Rev 3/82)

PHILADELPHIA POLICE DEPARTMENT

## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./DOC. | D.C. NO. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 13 | 77 | 00457 | A | 72 | EB31 | 1-26-13 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| Invest. Bomb Scare | 3128 | 825 P | |

LOCATION OF OCCURRENCE: Terminal B CKPT

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 1-26-13 | 1 6 | 8.5 | |

COMPLAINANT: Police

ADDRESS: 77th Airport

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV CONT NO |
|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No ☐ Case Out | | | |

| WITNESS | TRACEABLE PROP | VEHICLE DESCRIPTION OR OFFENSE | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable):

B/C Threats

Below passenger's carry on bag
was being checked by TSA because he
had a PCP pipe w/watch inside. Passenger
became Frustrated and said Anybody
can bring A bomb in here and Nobody
would know. Police was called and
Passenger was taken into custody for
investigation. TSA supervisor
Kiesler heard the comment.

PROPERTY DESCRIPTION (Include Make, Model, Custom and Serial No. Where Applicable):

| | INSURED | STOLEN VALUE |
|---|---|---|
| | ☐ Yes ☐ No | $ |

Roger Bruce VanderKlok
334 Chestnut St Apt PH17
Phila PA 19107  OLN 29314163
DOB 4-13-56 W/M 6'2 160

VEHICLE 1 – OWNER'S NAME

VEHICLE 2 – OWNER'S NAME

VEHICLE 1 – OWNER'S NAME

VEHICLE 2 – OWNER'S NAME

| ANTI-CUSTODIAL MESSAGE SENT | DISTRICT FORM 75A | RECEIPT SENT BY | |
|---|---|---|---|
| Serial No.          Date | NO | NO | |

| PREPARED BY | NO | DIST/UNIT | TOTAL PAGES | PAGE NO |
|---|---|---|---|---|
| Pinkney 201083 | 4718 | 77 | | |

| REVIEWED BY | NO | DATE/TIME | REFERRAL DATE | CON NO |
|---|---|---|---|---|
| | 1593 | 7/8 | | |

PURSUANT TO ACT 186 OF 1995, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION VICTIM SERVICES FORM.

48  Form (Rev. 12-98)

## UNIFORM POLICE MEMO TO S.W.D.D.

District 77ᵗʰ   Car/Wagon# FB3   Sector A   DC#13.77.00457

Date 1-26-13   Time Out: 825AM   Time of Occurrence: 815AM

Location of Occurrence: PHL Terminal B CKPT   Inside/Outside:

Location of Arrest: PHL Terminal B CKPT   Time of Arrest 840AM

#1 Arresting/Reporting Officer: Raymond Pinkney   Badge# 4718   Dist: 77ᵗʰ
(FIRST)      (LAST)

PR# 201083   Plt.: 1C   Vacation:

#2 Arresting/Reporting Officer:   Badge#   Dist:
(FIRST)      (LAST)

PR#   Plt.:   Vacation:

#1: Offender/Defendant:   Age:   Sex:

Address:   D.O.B.:   /   /

#2: Offender/Defendant:   Age:   Sex:

Address:   D.O.B.:   /   /

#3: Offender/Defendant:   Age:   Sex:

Address:   D.O.B.:   /   /

Property Receipt #   Item Description:

Property Receipt #   Item Description:

Property Receipt #   Item Description:

Details of Arrest: *(What you did in the investigation or arrest, be precise as to details)*:

TSA Supervisor Kieser called Police and stated Passenger was getting his carry on bag checked and said Anybody can bring a bomb and you wouldn't ever know it. Police was called took passenger to H.Q. for further investigation

*\*\*Use reverse side for additional space if needed\*\*\**

EXHIBIT

"B"

https://www.dropbox.com/sh/x0h0mkniuzstkvz/AAB4Ub6Gcs
MtaQtxpxG0iO5Pa?dl=0

EXHIBIT "C"



EXHIBIT "D"



EXHIBIT "E"