IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____ :
                                :
ROGER VANDERKLOK                :
                                :
        *v.*                     :          Docket No.: 15-cv-00370
                                :
UNITED STATES OF AMERICA, et al :
_____ :

ORDER

AND NOW, on this        day of            , 2015, upon consideration of the Motion to

Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) of defendants, Raymond Pinkney, Kenneth

Flaville, and Michael Wojciechowski and Plaintiff's response hereto , it is herby ORDERED and

DECREED that said Motion is DENIED.

**BY THE COURT:**

_____
**Hon. William. H. Yohn, Jr., U.S.D.J.**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ROGER VANDERKLOK            :

                                     :

      *v.*                       :          Docket No.: 15-cv-00370

                                     :

UNITED STATES OF AMERICA, et al    :

_____

## PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12 (B)(6) ON BEHALF OF DEFENDANTS, RAYMOND PINKNEY, KENNETH FLAVILLE, AND MICHAEL WOJCIECHOWSKI

Plaintiff, Roger Vanderklok, by and through his attorneys, The Malone Law Firm, hereby responds to the motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as follows:

1.      Denied as stated. Plaintiff does not allege that the report received to the police from the TSA supervisor was credible. In fact, Plaintiff alleges the information received was fabricated and in retaliation for stating he wanted to complain about the TSA agent's conduct. (See Amended Complaint attached hereto as Exhibit "A" at ¶¶3-8). Nevertheless the words the TSA agent, Defendant Kieser, alleges were said by plaintiff "anybody can bring a bomb and you wouldn't even know it" is protected First Amendment speech and not probable cause for any crime.

2.      Denied. Plaintiff's Complaint pleads with specificity the involvement of all three officers. The details of their involvement are further explained in the attached brief. (See Exhibit "A" ¶¶15-17, 37-42, 61-68, 70-74).

3.      Denied.  None of the individual officers are entitled to qualified immunity. They arrested Mr. Vanderklok without probable cause and any reasonable officer would have realized

that probable cause never existed and Defendant, Kieser's, allegations of what plaintiff said was merely protected free speech.

4. Denied. A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979); Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

5. Denied. Detective Wojciechowski participated in interviewing the witness, Defendant Kieser, deciding on whether probable cause existed and on what charges to recommend. It was Detective Wojciechowski that stated that they needed to shop around to find the right ADA to approve their charges. (See Exhibit "A" ¶66). Sergeant Flaville approved the charges and finding of probable cause, none of which were supported by the evidence.

6. Denied as stated. A qualified immunity determination can be made from the face of the complaint, therefore there is no qualified immunity. If the court requires more information, plaintiff asks for leave to file a Second Amended Complaint and to conduct Pre-Complaint discovery.

7. (Incorrectly number 6). Denied. For the reasons more fully set forth in the accompanying brief, moving defendants' motion to dismiss should be denied.

WHEREFORE, Plaintiff, Roger Vanderklok, respectfully requests that the Motion of Defendants, Raymond Pinkney, Kenneth Flaville, and Michael Wojciechowski be DENIED.

Respectfully submitted,

BY:     /s/ Thomas B. Malone
        Thomas B. Malone, Esquire
        PA. ID No. 77291
        The Malone Firm, LLC
        1650 Arch St., Su. 1903
        Philadelphia, PA 19103

_____

ROGER VANDERKLOK          :
                                       :
      *v.*                        :            Docket No.: 15-cv-00370
                                       :

UNITED STATES OF AMERICA, et al  :

_____

**PLAINTIFF, ROGER VANDERKLOK'S, BRIEF IN OPPOSITION TO THE MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF DEFENDANTS, RAYMOND PINKNEY, KENNETH FLAVILLE, AND MICHAEL WOJCIECHOWSKI**

Plaintiff, Roger Vanderklok, by and through his attorneys, The Malone Law Firm, hereby responds to the Motion to Dismiss Plaintiff's Amended Complaint by Defendants, Raymond Pinkney, Kenneth Flaville, And Michael Wojciechowski, and submits this brief in support of his response.

## I.      COUNTER STATEMENT OF FACTS

On January 26, 2013, Plaintiff, Roger Vanderklok, a married father of three children, was attempting to travel from Philadelphia to Miami in order to run in a Marathon the following day. (See Amended Complaint ¶ 2 attached hereto as Exhibit "A").  In the carry-on bag he packed were, amongst other things, a heart-monitoring watch and Power Bars.

At Philadelphia International's Security Screening checkpoint, he was stopped and detained by TSA screeners and repeatedly questioned about the contents of his bag.  Id. at ¶ 3. He politely answered all their questions and invited the TSA personnel to inspect his bag and its contents.  Id.   Apparently, they saw a heart-monitoring watch and the Power Bars and thought they looked like the components of an explosive device. Id. at ¶ 27. The TSA officials viewing

the screen and handling of his bag were talking about the watch and the case it was in.[1]  Mr.

Vanderklok volunteered that it was just his heart-monitoring watch and they were welcome to

look in the bag and at the watch.  Id.

    As Mr. Vanderklok was waiting patiently for his bag,  the TSA officials indicated that

they had to do "further testing" on the bag.  Id. at  ¶28.  The TSA officials started to ask Mr.

Vanderklok about "organic material."  Id.  Plaintiff  stated that they were free to look into his

bag, containing "just [his] running stuff."  They continued to talk about "organic material" and

swabbed something from the bag. Id. The organic material turned out to be his power bars. Id.

    After a thorough check of his bag, and after TSA personnel were sure that there was

nothing improper, dangerous, or illegal in his bag, the TSA supervisor gave Mr. Vanderklok his

bag back. Id.  It was not until AFTER  Mr. Vanderklok got his bag back that a call was made to

the police. (See videos marked as  Exhibit "B" to the Amended Complaint[2]).  The video shows a

phone call being made after the bag had been cleared and returned to the  Plaintiff.  Until

discovery is taken, no one knows what was said on the phone between the Police Defendants and

the TSA Defendant. Therefore, the phone call  is an issue of material fact for a jury to decide.

    At no point during this time period was the Security Checkpoint closed down.  Id. at  ¶

32. Other passengers continued to proceed through the security checkpoint and there was no

disturbance at the Checkpoint. Id.  Never did Mr. Vanderklok raise his voice, speak

disrespectfully, flail or wave his hands or arms around. Id. at  ¶ 32. Nor did he point in

Defendant Kieser's face. Id. at  ¶33.  During the investigation, Mr. Vanderklok, was spoken to by

the TSA supervisor, Mr. Kieser, in an agitated and impolite manner.  Id at ¶ at 29.  As a result,

---

[1] Defendant attaches a photograph of the "alleged piece of PVC pipe and watch". There is no evidence that these
were the specific objects in Mr. Vanderklok's bag.  This photograph was never turned over in the criminal case and
there has been no testimony that it is relevant to the incident matter. Therefore, Plaintiff suggests it not be
considered in any effect for the purposes of this motion.
[2] A copy of the videos had been hand delivered to the Court with the Amended Complaint.

Mr. Vanderklok  told the supervisor he wanted to file a complaint and asked for a complaint form.  Id. at ¶3.

The TSA Supervisor told the first Police Officer to arrive, Officer Pinkney, that Mr. Vanderklok had become loud to another agent and said to him that "anybody can bring a bomb and you wouldn't even know it."  The story then became that Mr. Vanderklok  was frustrated and said "anybody can bring a bomb in here and nobody would know it".  (See Exhibit "A" to the Amended Complaint).   Later, Defendant Kieser told Detective Wojciechowksi  that the words were: "I could bring a bomb through here any day of the week and you would never find it" (See Police Document attached as Exhibit "A" to the Amended Complaint). [3]  Plaintiff adamantly denies every getting frustrated or speaking loudly to any agent and the police report does not indicate that he was loud when he allegedly said "anybody can bring a bomb and you wouldn't even know it". (See Exhibit "A" to the Amended Complaint).  Any discrepancy as to what was said by the plaintiff and how it was said would be a material fact for the jury to decide.

The video footage clearly establishes that there was no commotion, no disturbance, no interruption of Airport business occurring at any point – and certainly not when Officer Pinkney arrived.  Id. at  ¶ 60 and Exhibit "B" of the Amended Complaint.   The actual words spoken by Mr. Vanderklok stating he wanted to file a Complaint undeniably do not establish probable cause.  The words Kieser attributes to plaintiff, "anybody can bring a bomb and you wouldn't even know it," do not come close to establishing probable cause to arrest for any of the crimes charged – or any other crimes.  Id.  The words reported, "anybody can bring a bomb and you wouldn't even know it," would more appropriately be categorized as an insult to the TSA Supervisor about his competency than a threat to anyone's safety.   No other passengers heard

[3] Plaintiff adamantly denies that he made ANY statement that had the word  "bomb"  in it. Even assuming he made any of the statements alleged by the TSA, these statements do not give probable cause for any crime under Chapter 18 of the Pennsylvania Code.

the alleged statement and no other witness, TSA or otherwise, came forward or were questioned. Id. The words alleged to have been spoken were spoken after the TSA officials knew that Plaintiff's bag had nothing dangerous in it. Id. The words allegedly spoken were protected free speech. The words actually spoken requesting a complaint form were also protected speech by the First Amendment. Id. at ¶¶4-6. The resulting arrest and prosecution were in retaliation for this protected speech.

When Defendant Pinkney arrived at the checkpoint, he immediately took Mr. Vanderklok into custody and informed him that he was under arrest. Pinkney went on to prepare two documents – a "75-48" and a "Uniform Police Memo to S.W.D.D." Id at ¶ 61 and Exhibit "A " to the Amended Complaint. It was clear from these documents that the only information Defendant Pinkney had when he arrested Mr. Vanderklok was the information provided by Charles Kieser. Id. No other evidence – direct or circumstantial – was mentioned. Id. No other investigation was performed. No other witnesses were sought out or interviewed. No video was observed. In both police reports, Defendant Pinkney indicated that he spoke only to Defendant Kieser. Id. In essence, he did nothing to verify the allegations of Defendant Kieser, especially considering what he saw when he arrived (a calm person who had their luggage in their possession) was in direct contradiction to what had been reported. The reports indicate that the Officer made the arrest at the time he arrived at the Security Checkpoint.

In the report, there is a line that reads: "Details of Arrest (What you did in the investigation or arrest; be precise as to details!)." Under that, Police Officer Pinkney wrote:

> "TSA Supervisor Kieser called Police and stated Passenger was getting
> his carry on bag checked and said Anybody can bring a bomb and you
> wouldn't even know it. Police took   passenger to H.Q. for further investigation.

" Id. at ¶ 62 and See Exhibit "A" to the Amended Complaint. Mr. Vanderklok was then led outside to a police/TSA vehicle and transported, with his hands cuffed behind his back, to a Philadelphia Police District where he was thrown in another cell. Id. at ¶ 66. At the police station, plaintiff overheard the officers talk about sending him to "Guantanamo." Mr. Vanderklok also overheard a conversation amongst Defendant Wojciechowski and other Police Personnel where they were talking about making sure they got "the right A.D.A." to review their case to **assure that they got approval for the criminal charges they wanted brought against Mr. Vanderklok**. Id. (emphasis added). The only reason to search for the right A.D.A. would be because they were concerned about the lack of probable cause. Moreover, no one from the police, FBI, NSA, JTTF, or any other federal or local agency questioned Mr. Vanderklok or even attempted to speak to him. Id. No one seemed concerned that he might be dangerous – most likely because it was abundantly clear that he was not. Id. In fact, the lack of danger was profusely clear before Defendant Kieser called the Philadelphia Police. Id.

These details of arrest do not rise to the level of any crime, including those Plaintiff was charged and acquitted of. Yet, after Officers/Detectives purposefully harassed and scared him, Mr. Vanderklok was charged with crime he did not commit, including, "Placement of a Bomb", "Terroristic Threats" and "Disorderly Conduct". Exhibit "A" at ¶ 8. Bail was set at $40,000.00. Id. He was forced to post bail and inform his employer of the charges pending against him. Id. He was subsequently under the restrictions of all defendants on bail in Philadelphia (which include travel restrictions). Id.

## II. ARGUMENT

### A. Standard of Review

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn there from, and view them in the light most favorable to the non-moving party." <u>Cobb v. Truong</u>, No. 2:13-CV-1750, (W.D. Pa. March 26, 2015) citing <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. <u>Id</u>. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678 (2009) (quoting <u>Twombly,</u> 550 U.S. at 570).

The complaint must state `enough fac*ts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.*" <u>Phillips v. County of Allegheny,</u> 515 F.3d 224, 235 (3d Cir. 2008)(emphasis added).. Further, although the focus in assessing a motion to dismiss is on the allegations set forth in the pleadings, "matters of public record, orders [and] exhibits attached to the complaint" also may be considered. <u>Oshiver v. Levin, Fishbein, Sedran & Berman,</u> 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357); <u>Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.,</u> 998 F.2d 1192, 1196 (3d Cir. 1993). Matters of public record include judicial proceedings and a court may take judicial notice of another court's opinions and orders. <u>Southern Cross Overseas Agencies v. Wah Kwong Shipping Group Ltd.,</u> 181 F.3d 410, 426 (3d Cir.

1999). Finally, in applying the plausibility standard a reviewing court must make a context-specific inquiry, drawing on its judicial experience and common sense. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

Although "conclusory or `bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff[s] can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

Furthermore, if the complaint fails to establish defendant liability, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. Brummell v. City of Harrisburg, 1:09-CV-01816 (M.D.Pa. 2010); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**B.    Section 1983 Claims Against The Individual Officers Should Not Be Dismissed Because They Are Not Entitled To Qualified Immunity.**

The doctrine of qualified immunity provides that "law enforcement officers acting within their professional capacity are generally immune from trial `insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Russo, 212 F. 3d 781, 786 (3d Cir.2000) (quoting Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed. 2d 818 (1999)). The qualified immunity defense involves a two-step analysis.

To determine if a government official is entitled to qualified immunity, the following questions must be addressed: (1) whether the official violated a constitutional right of the

plaintiff, and (2) whether that right was clearly established at the time of the incident, such that it would have been clear to a reasonable official that his conduct was unlawful. <u>Saucier v. Katz,</u> 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). A Court has discretion to decide which of these two inquiries will be addressed first in light of the circumstances in the case. <u>Pearson v. Callahan,</u> 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed. 565 (2009).

As to the first inquiry above, "we must ask whether `[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right'". <u>Reedy, supra,</u> 615 F.3d at 223, quoting <u>Saucier,</u> 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Saucier,</u> 533 U.S. at 201.

However, if "the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, . . . we must ask `whether the right was clearly established . . . in light of the specific context of the case'". <u>Reedy,</u> 615 F.3d at 224, quoting <u>Saucier,</u> 533 U.S. at 201. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Curley v. Klem,</u> 298 F.3d 271, 277 (3d Cir.2002) (quoting <u>Saucier v. Katz,</u> 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). A constitutional right is established if it is sufficiently clear and well-defined so that "a reasonable official would understand that what he is doing violates that right." <u>Carswell v. Borough of Homestead,</u> 381 F.3d 235, 242 (3d Cir. 2004) (citations omitted) " The plaintiff need not show that the very action in question was previously held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent. <u>McLaughlin v. Watson,</u> 271 F.3d 566, 571 (3d Cir. 2001); <u>Clifton v. Borough of Eddystone,</u> 824 F. Supp.2d 617 (E.D.Pa. 2011).

Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir.2002). A decision as to qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis." Id. at 278. (emphasis added).

### 1. *Fourth Amendment False Arrest Claim (Count 1)*

The premise of Defendants' argument for dismissal is that there was probable cause to arrest Plaintiff and therefore no constitutional right of Plaintiff was violated. The law is clear that if there was NO probable cause for arrest than the first part of the Saucier analysis is met. An "arrest without probable cause is a constitutional violation actionable under section 1983." Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978); Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir.1998).

a. **Defendants Pinkney, Flaville, And Wojciechowski Violated A Constitutional Right Of The Plaintiff Because There Was No Probable Cause For His Arrest**

A "'common sense' approach [must be taken] to the issue of probable cause" and a determination as to its existence must be based on "the totality of the circumstances." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir.1997). "It is the responsibility of the court to assess the objective facts available to the officers at the time of the arrest and determine if they were sufficient to justify a reasonable belief that a plaintiff broke the law." Id. Furthermore, whether

any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue. Wright v. City of Philadelphia, 409 F.3d 595 (3rd Cir. 2005).

"Generally, the question of probable cause in a section 1983 damage suit is one for the jury, . . . particularly . . . where the probable cause determination rests on credibility conflicts." Merkle v. Upper Dublin School District, 211 F.3d 782, 788 (3d Cir. 2000). "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding". Id. at 788-89.

There is no doubt that an **"arrest without probable cause is a constitutional violation actionable under section 1983."** Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978)(emphasis added); See also Montgomery, 159 F.3d 120, 124 (3d Cir.1998). In the case at bar, there was no probable cause to arrest Plaintiff for any crime and certainly not for the crimes plaintiff was charged with: disorderly conduct, threatening the placement of a bomb and terroristic threats.

Defendant points to 18 Pa.CS §5503 (a)(4) as the applicable section of disorderly conduct to apply to the probable cause determination in this case. It was also the section under which plaintiff was charged.

> § 5503. Disorderly conduct
>
> (a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> * * *
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4).

Under the disorderly conduct statute, "whether `words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance.'" Gilles v. Davis, 427 F.3d 197, 204 (3d Cir. 2005) (quoting Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999)). "The cardinal feature of the crime of disorderly conduct is *public unruliness* which can or does lead to tumult and disorder." Commonwealth v. Fedorek, 946 A.2d 93, 100 (Pa. 2008) (quoting Hock, 728 A.2d at 946 (emphasis in original)). With respect to the disorderly conduct statute here, 18 Pa.C.S. § 5503(a)(4), the Third Circuit Court of Appeals has stated that it "requires proof that a person (1) `with intent to cause public inconvenience, annoyance, or alarm' (2) `creates a hazardous or physically offensive condition by any act' that (3) `serves no legitimate purpose of the actor.'" Snell v. City of York, PA, 564 F.3d 659, 671 (3d Cir. 2009) (quoting 18 Pa.C.S. § 5503(a)(4)).

The law is also clearly established that a person cannot be lawfully arrested in retaliation for protected speech. Clifton v. Borough of Eddystone, 824 F.Supp.2d 617, 628-29 (E.D. Pa. 2011). "Except for certain narrow categories deemed unworthy of full First Amendment protection — such as obscenity, `fighting words' and libel — all speech is protected by the First Amendment." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004) (citing R.A.V. v. St. Paul, 505 U.S. 377, 382-90, 112 S.Ct. 2538, 120 L.Ed.2d 385 (1992)). Certainly, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

In analyzing the elements necessary to establish probable cause for disorderly conduct , under  § 5503(a)(4), the issue of intent  must be addressed.  The statement Defendant Kieser alleges that Plaintiff said " anybody can bring a bomb and you wouldn't know it" does not establish any intent to cause public inconvenience, annoyance or alarm or recklessly create a risk therefore. It is obvious in the videos that no one even reacts to the alleged comments and no one pays any attention to Mr. Vanderklok or the TSA as his bags are searched.  (See Exhibit "B" to the Amended Complaint).  At the time the airport police officer  (Pinkney)  arrived, Mr. Vanderklok had his bags returned and everyone was going about their own business. The checkpoint was never closed nor even temporarily stopped.  Mr. Vanderklok's alleged words were nothing more than a criticism of the inefficiencies of the TSA and were protected speech. Given that there is no intent, the analysis for probable cause for disorderly conduct should end.

However, addressing the other subsections of §5503 further proves that none of the elements of disorderly conduct were met and therefore there could be no probable cause for arrest under this statute.  Subsection (4) states that the conduct must create a hazardous or physically offensive condition which serves no legitimate purpose to the actor.  A "hazardous condition" is a condition that involves danger or risk. Commonwealth v. Roth, 366 Pa.Super. 575, 582, 531 A.2d 1133, 1137 (1987). The dangers and risks against which the disorderly conduct statute are the possibility of injuries resulting from  public disorders.

Defendant used the Roth[4] case to support its position that Mr. Vanderklok's words created a hazardous condition.  In Roth, the Court opined that a hazardous condition arises where

---

[4] Defendants stated that Plaintiff was talking to TSA agents in an agitated state. The video shows Plaintiff holding his laptop, calmly talking to the agents. (See Exhibit "B" of the Amended Complaint).  The fact that plaintiffs and defendants have a dispute over how the conversation went between them is certainly an issue for a jury.

a group of demonstrators attempts to force itself into a church that is barricaded by ushers who "were determined not to `let the battle be fought' inside their church." Commonwealth v. Roth, 531 A.2d 1133, 1137 (Pa. Super. 1987). In the case at bar, there was no highly charged atmosphere, no prior altercation between the parties and nothing to show any aggression. As a counterexample, emotionally evocative speech has not been found to be a hazardous or physically offensive condition. See Commonwealth v. Jarboe 12 Pa. D. & C.3d 554, 557 (CCP 1979). Mr. Vanderklok's words were not a hazardous condition  but instead protected speech.

Since it is clear the Mr. Vanderklok's alleged speech did not rise to the level of a hazardous condition, it must be analyzed to see if it qualifies as a physically offensive condition. Although a precise definition of "physically offensive condition" is elusive, this term encompasses direct assaults on the physical senses of members of the public.  Commonwealth v. Williams, 394 Pa. Super. 90, 574 A.2d 1161 (Pa. Super. 1990).  A defendant may create such a condition if she sets off a "stink bomb", strews rotting garbage in public places, or shines blinding lights in the eyes of others. Id.  The alleged words uttered by Mr. Vanderklok do not create an assault on the physical senses of the public and therefore this element of disorderly conduct was not met.  To be clear, the distinction provided by the statute and our case is that a `threat' of a stink bomb attack is distinct from the `hazardous or offensive condition' created by the stink bombs odor. Making a statement about a bomb is not a hazardous or physically offensive condition and therefore there is no grounds for probable cause.

Defendants make no allegation that probable cause existed for any other subsection of §5503, but in an abundance of caution the lack of probable cause for all subsections of §5503 will be addressed.

Under subsection (a)(1) of the disorderly conduct statute, probable cause exists for things such as fighting words or threatening the life of another. The "fighting words" provision of Pennsylvania's disorderly conduct statute sanctions an individual who "engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa. Cons.Stat. Ann. § 5503(a)(1). Fighting words "by their very utterance inflict injury or tend to incite an immediate breach of peace." Victory Outreach Ctr. v. Melso, 313 F.Supp.2d 481, 491 (E.D.Pa.2004) (quoting Commonwealth v. Hock, 556 Pa. 409, 728 A.2d 943, 946 n. 3 (1999)). "Anybody can bring a bomb and you wouldn't even know it" are not fighting words and do not inflict injury or incite an immediate breach of peach. The words regard future unknown action and have no immediacy or present threat and create no violent behavior. Additionally, the police and, given their close functional relationship, the TSA "must expect, as part of their jobs exposing them to daily contact with distraught individuals in emotionally charged situations, to confront and answer accusations of rudeness and improper conduct." Commonwealth v. Weiss, 340 Pa.Super. 427, 434, 490 A.2d 853, 856 (1985); Commonwealth v. Bender, 248 Pa.Super. 504, 515, 375 A.2d 354, 359-60 (1977). Plaintiff's conduct at its worst could have been categorized as unreasonable, or even unjustified, but there is no evidence of a reckless disregard for public inconvenience, annoyance, or alarm. See Weiss, 340 Pa. Super 427.

Subsection (2) and (3) of the disorderly conduct statute deals with (2) unreasonable noise and (3) uses obscene language or gestures, there is no question that based on the events as alleged there existed no probable cause for arrest on either of these elements. There was no probable cause based on subsection (1), (2), (3) or (4) of the disorderly conduct statute.

"The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community". <u>Commonwealth v. Greene</u>, 410 Pa. 111, 117 (1963). "It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clearly outlined circumference." <u>Greene</u>, 410 Pa. at 117, 189 A.2d at 145.

The video of the encounter clearly shows Plaintiff calm and following instructions. (See Exhibit "B" of the Amended Complaint). There was no disturbance to any passengers. The security checkpoint remained open at all times. No federal agents, bomb squads, NSA or JTTF were called. The terminal was not shut down. No one was inconvenienced. No one even appears to hear or see what is happening other than those involved. There was no finger pointing, screaming, angry faces. The video clearly shows a normal encounter between a TSA agent and a passenger going through additional screening.

Kieser's allegations that Plaintiff said "Anybody can bring a bomb and you wouldn't even know it" is nothing but protected First Amendment speech. Defendant comments about potential reactions of citizens but NONE of them were realized or existed at the time of the search or arrest. No citizens reported the incident or completed a statement. According to the video, none of them react. Plaintiff's alleged statement is more similar to a situation where a person is criticizing the police-an action that has been held to be protected by the First Amendment. See <u>Weiss</u>, 340 Pa. Super. at 427.

It is relevant that, at the first opportunity to evaluate probable cause (the municipal criminal trial), the court threw out ALL of the charges. The only new information at the time of the trial, as compared to when the police arrested plaintiff, was a more elaborate and clearly untrue version of Kieser's story that had plaintiff pointing and throwing his arms. Since the Court found that this more elaborate and detailed version did not meet the elements of any crime and entered a Judgment of Acquittal, it is evident that the more simplistic version told by Defendant Kieser to Defendant Pinkney immediately prior to arrest did not make out probable cause.

Since there was no probable cause to arrest for disorderly conduct, whether probable cause existed for the crime of terroristic threats must next be addressed. That crime is defined, in pertinent part, as follows:

§ 2706. Terroristic threats

(a) Offense defined.—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
(1) commit any crime of violence with intent to terrorize another;

18 Pa.C.S. § 2706(a)(1).

Pursuant to Section 2706(a)(1), terroristic threats requires communicating a threat to commit a crime of violence *with the intent to terrorize another.* (emphasis added). Section 302 of the Crimes Code, 18 Pa.C.S. §§ 101-9402, provides that a person acts "intentionally" when it is his conscious object to engage in culpable conduct or to cause such a result. 18 Pa.C.S. § 302(b)(1). Read together with Section 2706(a)(1) and the facts of the instant case, these sections provide that, Plaintiff has to have the conscious objective to terrorize another or to cause another

to be terrorized. Based on any of the facts as alleged in the Complaint, there was no evidence of the intent to terrorize anyone.

The next charge filed against Plaintiff was under §2715 (a)(4): threat to use weapons of mass destruction. This statute requires a person who intentionally threatens by any means the placement or setting of a weapon of mass destruction. Once again this requires intent which is clearly lacking. Additionally, even taking as true the words Defendant Kieser alleges were said, there is no threat to place or set off a bomb. There can be no doubt that for this charge there was no probable cause.

"As the Supreme Court noted in <u>Franks</u>, `police [can]not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'" <u>United States v. Calisto,</u> 838 F.2d 711, 714 (3d Cir. 1988) (quoting <u>Franks v. Delaware,</u> 438 U.S. 154, 164 n.6 (1978)). In the case at bar, moving Defendants insulate the fabricated story of Defendant Kieser and therefore this factor is yet another reason there was no probable cause.

At the case at bar, there were two opportunities to ascertain probable cause. One when defendant Pinkney observed the situation and apprehended Plaintiff. The second when Detective Wojciechowksi questioned Defendant Kieser a few minutes later. At both opportunities it was evident probable cause did not exist yet both officers ignored this obvious fact and continued to pursue charges.

Furthermore, the Amended Complaint alleges that Plaintiff never uttered the word "bomb" and therefore there would be no probable cause for any crime. It is the Defendants that allege that plaintiff said something about a bomb. Therefore, when one takes all reasonable inferences drawn in favor of plaintiff, there could be no probable cause for any crime.

      b.      **The Constitutional Right Was Clearly Established At The Time Of The Incident And Any Reasonable Officer Would Know That Such Conduct Was Unlawful**

The second step of the qualified immunity analysis is to determine whether the right was clearly established at the time of the alleged violation. The Supreme Court has held that an arrest without a warrant is constitutionally valid if "at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "[T]here does not have to be `precise factual correspondence' between the case at issue and a previous case in order for a right to be `clearly established.'" Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004). A reasonable officer in Officer Pinkney's position, knowing only the evidence presented by TSA Agent Kieser would have understood that his actions violated a clearly established right (free speech), and Pinkney could not have made a reasonable mistake as to what the law required. Pinkney was confronted with an alleged statement where there was no danger (since the bags had been cleared and returned) when he arrived, there was no altercation going on between Mr. Vanderklok and anyone from TSA, there was no disturbance or commotion and therefore there was no probable cause to arrest for disorderly conduct or any other crime.

"A police officer may be liable for civil damages for an arrest if no reasonable competent officer would conclude that probable cause exists." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). It is clear that arresting a person for disorderly conduct based on protected speech is a violation of that individual's constitutional rights. Regardless of the lack of cases discussing statements with the word bomb in it and charges of disorderly conduct, any reasonable officer

would have understood that arresting someone for making a statement of discontent does not establish probable cause. Additionally, there are a plethora of cases holding that probable cause does not exist for protected free speech. See <u>Clifton v. Borough of Eddystone</u>, 10-CV-936 (E.D.Pa. October 7, 2011); <u>Kane v. Hiler</u>, 11-CV-619 (W.D.Pa. July 11, 2012); <u>Commonwealth v. Weiss</u>, 409 A.3d 853, 340 Pa. Super. 427 (Pa. 1985); <u>Clifton v. Borough of Eddystone</u>, 824 F. Supp. 2d 617 (E.D. Pa. 2011); <u>Commonwealth v. Williams</u>, 574 A.2d 1161, 394 Pa. Super. 90 (Pa. 1990); <u>Commonwealth v. Hock</u>, 728 A.2d 943, 556 Pa. 409 (Pa. 1999).

Defendants cite to <u>Mustafa v. City of Chicago</u>[5], 442. F3d 544 (7th Cir. 2006) for support of its argument that courts have decided a similar incident. The plaintiff in Mustafa was yelling and carrying on during her walk to the gate, so much so that when she said maybe she has a bomb in her purse (paraphrased) it alerted another airport worker. In the case before this Court, these facts are blatantly missing. There was no shouting, yelling or carrying on by Plaintiff. Furthermore, more importantly the statute Mustafa was charged under was specific to "threatening the concealment of a bomb which is in such a place that it could cause harm". The statute at issue in Illinois was significantly different than 18 Pa. CS §5503 for disorderly conduct in that the Illinois statute specifically mentions threats about concealing a bomb. The disorderly conduct statute at issue here makes no mention of uttering the word bomb and therefore the analogy between the two cases in inaccurate.

In Mr. Vanderklok's case, no reasonable officer would have thought there was probable cause to arrest. Assuming even the officer failed to do any independent investigation, what was clear to the officer at the time when he arrived to arrest Mr. Vanderklok were the following: Mr. Vanderklok had his bag with the "alleged bomb" back and it had passed security clearance, no

_____

[5] <u>Mustafa</u> took place three months after 9/11 in a highly charged environment and is not binding on this court.

one was sitting around looking at what happened, the terminal remained open, neither the JTTF or the FBI has been called and the statement ("anybody could bring a bomb and you wouldn't even know it)  told to Pinkney by Mr. Keiser was nothing more than someone criticizing the TSA.  No reasonable officer could find this created probable cause for any crime.  At worse, there is an issue of material fact as to what Mr. Kieser and Officer Pinkney observed and said to each other should be submitted to the jury.

## 2.    *Fourth Amendment Malicious Prosecution Claims (Count VI)*

To succeed on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause;(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. DiBella v. Borough of Beachwood,  407 F. 3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003)). The elements of a common law malicious prosecution claim under Pennsylvania law are similar, but the plaintiff is not required to show a deprivation of liberty consistent with the concept of a seizure. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791-92 (3d Cir. 2000).


In the instant case, Defendants Pinkney, Flaville and Wojciechowski  initiated the criminal proceedings against Plaintiff. They started the process rolling by filing the necessary paperwork to get plaintiff charged.  Detective Wojciechowski even shopped around to get a prosecutor that would approve their charges, knowing they lacked probable cause.  (See Exhibit "A" ¶ 66).  There would be no reason to shop around for a prosecutor if you have a sound and legitimate case.  It is clear the defendants initiated the criminal proceedings. The Third Circuit

has previously determined that "implicit in the holding is that police officers who initiate prosecution by arresting a plaintiff without probable cause are liable for the resultant prosecution." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); See Lennon v. Sharron Hill Borough, 12-CV-6701 (E.D. Pa April 10, 2014).

The next analysis is whether the criminal trial ended in plaintiff's favor. In the case at bar, it did. The Court entered a Judgment of Acquittal after the prosecution's case which consisted of calling Defendant Kieser. For the reasons previously mentioned, there was no probable cause and the only reason that the defendants would have initiated the proceedings without probable cause while shopping around to find a favorable prosecutor was to act maliciously in order to have plaintiff arrested, jailed and charged for a purpose other than to bring justice. The fifth and final element was met because Plaintiff was in jail for almost 24 hours, had to make bail and was restricted under his bail conditions including travel. The fifth element, unique to a § 1983 malicious prosecution claim, requires that there be a "deprivation of liberty consistent with the concept of seizure" within the meaning of the Fourth Amendment as the result of malicious legal proceedings. Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir.2009); See also DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005). The Court of Appeals has narrowed the applicable definition of seizure to when a criminal defendant is subject to either pretrial custody or "some onerous types of pretrial, non-custodial restrictions" such as those on travel out of the jurisdiction. DiBella, 407 F.3d at 603; See also Gallo v. City of Philadelphia, 161 F.3d 217, 224 (3d Cir.1998) Since Plaintiff was jailed for almost 24 hours awaiting a bail hearing, had to then post bail and be subject to the conditions of bail this element was met. As a result, Plaintiff has met all the elements of federal and state malicious prosecution alleged in his Complaint.

### 3. *First Amendment Freedom of Speech Claims (Count II) and Retaliatory Prosecution Claims (Count VII)*

A First Amendment retaliation claim requires Plaintiff to allege three elements: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir.2006) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)).

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533 (1989). "[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection—such as obscenity, `fighting words' and libel—all speech is protected by the First Amendment." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282-83 (3d Cir.2004) (citing R.A.V. v. St. Paul, 505 U.S. 377, 382-90, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)). City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (holding that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers."). The law is clearly established that an individual cannot be arrested in retaliation for her protected speech. See, e.g., Moore v. Valder, 65 F.3d 189, 196 (D.C.Cir.1995); Losch v. Borough of Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984). Therefore, in a nonpublic forum such as an airport, a government official cannot "suppress expression merely because [they] oppose the speaker's view." United States v. Kokinda, 497 U.S. 720, 721, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

The words Kieser alleges Mr. Vanderklok uttered, "anybody can bring a bomb and you wouldn't even know it," are protected speech. As a result of allegedly saying these words, plaintiff was arrested; an action that would without doubt deter an ordinary person from exercising his right to free speech. Therefore, a causal link between the conduct (speech) and the retaliatory action (arrest and protection) has been met.

### 4. *Fourteenth Amendment Violations (Count VIII)*

A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). Groman, 47 F.3d at 636 (3rd Cir. 1995). Plaintiff has a claim under Section 1983 for false imprisonment since he was detained pursuant to an arrest made without probable cause. Id. Campeggio v. Upper Pottsgrove Twsp., 14-CV-1286 (E.D. Pa. 2014) . Therefore, there is a Fourteenth Amendment claim.

### C. All State Law Claims Should NOT Be Dismissed

Plaintiff sufficiently pled the state law claims against the moving defendants and did not violate the statute of limitations. (See Complaint attached hereto as Exhibit "B" ¶¶ 57-59,68-74, 81-86, and Exhibit "A" -Amended Complaint at ¶¶ 57-59, 68, 73, 82-84, 89-92, 106-110, 120-134.) Defendants are liable for the state claims of assault, battery, false arrest, false imprisonment, malicious prosecution, and retaliatory prosecution for the reasons that follow.

Under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), police officers are immune from state tort liability for acts within the scope of their employment except when the alleged conduct involves "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. Willful misconduct has been defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially

certain to follow." Horton v. City of Harrisburg, No. 1:06-CV-2338, 2009 WL 2225386 at *6

(M.D. Pa. 2009) (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)) (quotations

omitted), Associates In Obstetrics & Gynecology v. Upper Merion Twp., 270 F.Supp.2d 633,

663 (E.D.Pa. 2003). Essentially, willful conduct is "synonymous with the term `intentional tort.'"

Id.  In cases alleging police misconduct, a heightened standard is applied, such that liability may

only be imposed if an officer "acted with the knowledge that his conduct was unlawful and with

the purpose of achieving an unlawful result." Brummell v. City of Harrisburg, 2010 WL 3896382

at *3-4 (W.D.Pa. Sept. 30, 2010); See Owens v. City of Philadelphia, 6 F.Supp.2d 373, 394-95

(E.D.Pa. 1998).

Under Pennsylvania law, "[a]ssault in an intentional attempt by force to do an injury to

the person of another; and a battery is committed whenever the violence menaced in an assault is

actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh,

537 Pa. 58, 641 A.2d at 293 (1994).  Defendants, Pinkney, Flaville and Wojciechowski, by

arresting Mr. Vanderklok without probable caused and shopping for a prosecutor, acted willfully

with the intent to have him arrested and jailed. In doing so, they intentionally committed an

assault and battery when they handcuffed him and led him through the airport to the police

station where he remained detained.

For  false arrest and false imprisonment claims,  the question is whether Defendants

"intentionally arrested  [a person] knowing that he lacked probable cause to do so." Renk, 641

A.2d at 293. Drawing all reasonable inferences in favor of Plaintiff, when the defendants arrested

Vanderklok without probable cause they committed a false arrest and false imprisonment.

For the malicious prosecution claim, the question is whether there is an issue of material

fact as to whether the malicious prosecution was willful misconduct. There is a least a material

question of fact as to whether Pinkney, Flaville and Wojciechoswki intentionally committed the act of malicious prosecution, in other words, whether they intentionally brought about Vanderklok's prosecution knowing that there was no probable cause. Renk, 641 A.2d at 293. When all reasonable inferences are drawn in favor of Vanderklok, one can infer that if Pinkney knew only what Plaintiff alleges he knew, that there was no probable cause, and continued to arrest his actions must be willful. Following, once Wojciechowski and Flaville proceeded further on the charges and shopped for a favorably prosecutor they too acted maliciously and with the intent to have Plaintiff jailed and charged.

**D.** **The Amended Complaint Adequately Pleads Conduct by Sergeant Flaville and Detective Wojciechowski and Pleads Officer Pinkney's Participation in Plaintiff's Prosecution**

Officer Pinkney set the wheels in motions when he arrested Plaintiff without probable cause. Then, Detective Wojciechowski participated in interviewing the witness, Defendant Kieser, and deciding on whether probable cause existed and on what charges to recommend. He also wanted to find the right ADA to bring the case because there was no probable cause. (See Exhibit "A' ¶66. ) Sergeant Flaville approved the charges and finding of probable cause, none of which were supported by probable cause.

The Amended Complaint specifically alleges that Mr. Vanderklok was led outside to a police/TSA vehicle and transported, with his hands cuffed behind his back, to a Philadelphia Police District where he was thrown in another cell. (See Exhibit "A" at ¶64.) Aside from hearing things about being sent to "Guantanamo," Mr. Vanderklok also overheard a conversation amongst Defendant Wojciechowski and other Police Personnel where they were talking about making sure they got "the right A.D.A." to review their case to assure that they got approval for the criminal charges they wanted brought against Mr. Vanderklok. (See Exhibit "A" at ¶66.)

Police officers who initiate prosecution by arresting a plaintiff without probable cause are liable for the resultant prosecution. <u>Montgomery v. De Simone,</u> 159 F.3d 120, 126 (3d Cir. 1998); See also <u>Jones v. City of Chicago,</u> 856 F.2d 985, 994 (7th Cir. 1988); <u>Lennon v. Sharron Hill Borough</u>, 12-CV-6701 (E.D. Pa 2014).

In this case, Plaintiff's allegation are that the defendants shopped around for a prosecutor who they could convince to bring charges on this case with its lack of probable cause. The exact conversation that occurred between the police officers internally and with Defendant Kieser would require discovery as this is specific information in the possession of defendants.

Based on the allegations in the Amended Complaint, defendants had much influence over the decision of the prosecutor by shopping around to find someone they could exert control over to press charges knowing they had no probable cause to arrest Mr. Vanderklok on any charges.

## III. <u>CONCLUSIONS</u>

There was no probable cause to arrest Mr. Vanderklok for any crime, let alone disorderly conduct, placement of a bomb or terroristic threats. Mr. Vanderklok's speech was protected speech under the Constitution. As a result, any reasonable officer would know that protected speech is not a crime and would have no probable cause or basis to arrest Plaintiff.

If the Court concludes it need further facts, plaintiff requests leave to file a Second Amended Complaint and/or to conduct discovery as to those issues.

Respectfully submitted,

BY:   <u>*/s/ Thomas B. Malone*</u>
         Thomas B. Malone, Esquire
         PA. ID No. 77291
         Robyn Goldenberg, Esquire
         PA. ID. No. 86906
         The Malone Firm, LLC
         1650 Arch St., Su. 1903
         Philadelphia, PA 19103

CERTIFICATE OF SERVICE

I, Robyn Goldenberg, Esquire, do hereby certify that the foregoing Motion was electronically filed with the Clerk of Court's Office on July 9, 2015, using the CM/ECF System, which sends notification of the filing of the same to all counsel of record in this matter as noted hereinafter:

ANNE TAYLOR, ESQUIRE
US ATTORNEY'S OFFICE
615 CHESTNUT STREET
13TH FL
PHILADELPHIA, PA 19106
215-861-8788

NICHOLAS A. CUMMINS, ESQUIRE
BENNETT BRICKLIN & SALTZBURG, LLP
1601 MARKET ST., 16TH FL
PHILADELPHIA, PA 19103
215-561-4300
Fax: 215-561-6661

/s/ *Thomas Malone*
Thomas Malone, Esquire