IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROGER VANDERKLOK | : |  |
|---|---|---|
| v. | : | |
| UNITED STATES OF AMERICA, TRANSPORTATION SAFETY ADMINISTRATION (TSA), CHARLES KIESER (TSA), CITY OF PHILADELPHIA, CITY OF PHILADELPHIA POLICE DEPARTMENT, RAYMOND PINKNEY (PHILADELPHIA POLICE), DETECTIVE M. WOJCIECHOWKSI (PHILADELPHIA POLICE), KENNETH FLAVILLE (PHILADELPHIA POLICE), JEH JOHNSON (DEPARTMENT OF HOMELAND SECURITY), JOHN S. PISTOLE (TSA) | : | NO. 15-370 |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(b)(6) ON BEHALF OF DEFENDANTS, RAYMOND PINKNEY, KENNETH FLAVILLE, AND MICHAEL WOJCIECHOWSKI[1]**

BENNETT, BRICKLIN & SALTZBURG LLC
Charity C. Hyde/Nicholas A. Cummins
Attorney I.D. No. 82022/203238
hyde@bbs-law.com / cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 561-4300
(215) 561-6661 (Fax)

Date: July 23, 2015

---

[1] As to issues not addressed in this reply brief, moving defendants rely on the arguments set out in the moving papers. These include the issues that (1) claims for pre-trial deprivations of liberty are not actionable under the Fourth Amendment; and (2) plaintiff has failed to allege Detective Wojciechowski's participation in the arrest, and has failed to alleged Sergeant Flaville's participation in the arrest or prosecution.

## I. Probable Cause - The Officers are Entitled to Qualified Immunity.

As set out in the moving papers, all of plaintiff's section 1983 and state law claims rise and fall on the presence of probable cause to arrest and prosecute plaintiff on any one charge. Moreover, as addressed in the moving papers, if it was not clearly established by case law at the time of the arrest that probable cause did not exist under the facts of this arrest, the officers are entitled to qualified immunity from the section 1983 claims, and are immune from the state law claims for failing to meet the willful misconduct exception to the Political Subdivision Tort Claims Act.

### A. *The Facts Known to the Arresting Officer*

While plaintiff takes issue with the accuracy of Agent Kieser's version of events, probable cause is measured by the information *known to the police officers* at the time of the arrest, Shelley v. Wilson, 339 Fed. Appx. 136, 138 (3d Cir. 2009), and probable cause can be established by information provided by a reliable eye witness. Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000). Although not expressly stated, plaintiff's responsive brief suggests that Agent Kieser could not be considered a reliable eye witness because his exact statements to the police officers over the course of the day in question were not word-for-word identical. The minor differences, however, are irrelevant to the probable cause determination, and certainly do not serve to vitiate probable cause.

This is demonstrated by Wilson, *supra*, where the Third Circuit noted that a discrepancy on the order of a two foot height differential between a person identified by an eyewitness and the height of the assailant as described by that eyewitness would be necessary to render an eyewitness identification unreliable. In Wilson, two eyewitnesses to a jewelry store robbery described the robber as a "very tall" man, who was between 6'2" and 6'5" tall, or taller. 212 F.3d at 784. When the victims were shown a photographic array, however, only one of the victims was able to identify the plaintiff as the attacker, and the person identified was only 5'10" or 5'11" tall. Id. at 784-85.

Nonetheless, the Third Circuit found that these discrepancies were not sufficient to render the eyewitness' account so unreliable as to destroy probable cause. If the major physical differences in Wilson were not sufficient to render the eyewitness' statement unreliable for probable cause purposes, the minor differences in Agent Kieser's recitation of plaintiff's statement do not do so.

In a footnote, plaintiff's brief states that the Court should disregard the fact that plaintiff had stored the watch in a capped PVC pipe because plaintiff did not plead this fact in his complaint. See Plaintiff's Brief at 2 n. 1. Notably, plaintiff nowhere denies that the watch was stored in the PVC pipe, the PVC pipe is clearly shown in the surveillance attached to plaintiff's amended complaint, see Exhibit B to Defendants' Moving Papers, and plaintiff's complaint admits that the TSA screeners alerted to both the watch and the "case" (pipe) in which it was packed. See Amended Complaint at ¶ 27. The PVC pipe is also referenced in the police documents attached to the amended complaint. See Amended Complaint at Exhibit B. Plaintiff should not be permitted to deprive the officers of their qualified immunity from suit simply by failing to plead a material fact established by video attached to the complaint, while artfully avoiding a denial of this fact.

Plaintiff also contends that Officer Pinkney's initial report does not mention that plaintiff made his statement "loudly." See Plaintiff's Brief at 3. However, the amended complaint specifically pleads, "The TSA Supervisor [Kieser] told the first Police Officer [Pinkney] that Mr. Vanderklok had **angrily** said to him that 'anybody can bring a bomb and you wouldn't even know it.'" See Amended Complaint at ¶ 7 (emphasis added). Thus, plaintiff cannot deny that Officer Pinkney was told plaintiff made the statement in an angry manner.

In sum, the pleadings establish that the following information was reported to the officers by a reliable witness at the time of the arrest: (1) plaintiff was stopped with a heart rate monitor and

2

watch packed into a capped PVC pipe along with bricks of Power Bars in his bag; (2) plaintiff was stopped to investigate this potential explosive; (3) while stopped plaintiff "angrily" stated that "anybody" or "I" could bring a bomb through the checkpoint and it would not be found; (4) the encounter occurred at security checkpoint in an airport; and (5) as confirmed by the surveillance, this encounter took place close by other passengers. Plaintiff's complaint establishes these facts, and these facts establish probable cause for the arrest, or, at a minium, qualified immunity.

### B. *Probable Cause*

To defeat probable cause for disorderly conduct, plaintiff contends that the intent element was not satisfied. Disorderly conduct requires that one act "with the intent to cause public inconvenience, annoyance or alarm," or "recklessly creat[e]" such a risk. 18 Pa. Cons. Stat. Ann. § 5503(a). For probable cause purposes, it is not necessary that the officer have sufficient evidence of the plaintiff's state of mind to prove the *mens rea* element beyond a reasonable doubt; rather, the officer need only have had sufficient information for a reasonable person to believe the state of mind existed. "Absent a confession, the officer considering the probable cause issue in the context of a crime requiring a mens rea on the part of the suspect will always be required to rely on circumstantial evidence regarding the state of his or her mind." Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000). Thus, officers may "make a judgment call regarding [a] plaintiff['s] state of mind." Id.

As discussed in the moving papers, there is seemingly no legitimate reason to make any reference to a bomb in a TSA security checkpoint with other passengers nearby, particularly when undergoing screening for potential possession of an explosive device. At the very least, a person who makes the types of comments attributed to plaintiff by Agent Kieser acts in reckless disregard of the fact that his comments could cause public alarm, if not worse. Certainly, Officer Pinkney

3

possessed sufficient circumstantial evidence of plaintiff's state of mind, given plaintiff's words, their location, their "angry" nature, and his possession of an item which looked like a mock pipe bomb, to reasonably believe the *mens rea* of disorderly conduct was satisfied.

Plaintiff next argues that probable cause for disorderly conduct was not established because plaintiff did not create a "hazardous or physically offensive condition." Plaintiff supports this argument by contending, in part, that no disturbance actually occurred at the checkpoint. As plaintiff's brief concedes, however, words which "cause or **unjustifiably risk** a public disturbance," and "*unruliness* which **can** or does lead to tumult and disorder" are sufficient establish a violation. See Plaintiff's Brief at 11 (bold added), quoting, Gilles v. Davis, 427 F.3d 197, 204 (3d Cir. 2005), and, Com. v. Fedorek, 946 A.2d 93, 100 (Pa. 2008). Thus, it was not necessary for plaintiff's words to have actually caused a disturbance. The question is whether the words themselves, in combination with the surrounding circumstances, posed the risk of creating disturbance. Angry statements regarding the potential possession of a bomb in a TSA screening checkpoint, made within feet of other passengers, and while undergoing heightened screening for potential possession of an explosion certainly engender the risk of causing a public disturbance. Thus, the words themselves constitute a hazardous condition establishing probable cause for an arrest for disorderly conduct.

Plaintiff attacks probable cause for both the terroristic threats and threatening the placement of weapons of mass destruction charges by attacking the intent requirement of those statutes. See Plaintiff's Brief at 16-17. Terroristic threats requires a threat to engage in a crime of violence with the "intent to terrorize another," or a threat to cause terror or serious public inconvenience "with reckless disregard of the risk of causing such terror or inconvenience." 18 Pa. Cons. Stat. Ann. §§ 2706(1)(1, 3). Threatening the placement of a bomb requires an "intentional[] ... threat[]" to place

4

a bomb. 18 Pa. Cons. Stat. Ann. § 2706(a); 18 Pa. Cons. Stat. Ann. § 2715(a)(4). As discussed above, given the circumstances surrounding the statement, a reasonable police officer could conclude that plaintiff was making threats (either direct or implicit) and doing so both intentionally, and in reckless disregard of the risk that those threats would cause serious inconvenience or terror, both in those who overheard the comments and in the TSA screeners themselves. Thus, the officers had sufficient information to find probable cause on the *mens rea* elements of these offenses.

To the extent plaintiff contends that his statements were not a "threat," that issue is more fully addressed in the moving papers, and moving defendants stand by those arguments. To the extent plaintiff contends that the fact of his acquittal has any bearing on his claims, this argument is incorrect, as the question here is whether there was probable cause, and not whether the prosecution later developed sufficient evidence to prove guilt beyond a reasonable doubt. To the extent plaintiff contends his complaint pleads that he never said the word "bomb," this issue is irrelevant, as probable cause is measured by the information known to the officers, and there is no dispute that the officers were *told* by Agent Kieser that plaintiff made the statements at issue.

Since probable cause as to any one charge defeats all claims against the officers, or entitles them to qualified immunity to the extent there were charges for which probable cause was lacking, all claims should be dismissed. This is equally true as to plaintiff's claim that he engaged in protected speech. As set out in the moving papers, probable cause to arrest or prosecute entitles the officers to, at least, qualified immunity on any first amendment or retaliatory prosecution claims.

C.  *Qualified Immunity and Willful Misconduct*

Plaintiff's brief makes no effort to identify any case law which clearly establishes the unlawfulness of the officers' conduct under the facts of this case, or under analogous facts. Plaintiff

5

only argues that an arrest not based upon probable cause is a violation of one's Fourth Amendment rights; however, the *general* establishment of a right is not the question. Plaintiff must show that the unlawfulness of the officers conduct under these facts should have been apparent, based on existing case law. Plaintiff fails to point to any case law suggesting that the use of similar statements in an airport security checkpoint do not rise to the level of probable cause. Indeed, given the Seventh Circuit's decision in Mustafa v. City of Chicago, 442 F.3d 544 (7th Cir. 2006), any officer would have good reason to believe that plaintiff's conduct was actionable.

Qualified immunity only applies if the illegality of the conduct is so obvious based on existing law, that *no reasonable officer* could have believed their conduct was permissible. Here the police officers made a reasonable judgment based on the information available to them, and it cannot be said that only their conduct was so in variance with established law as to demonstrate that they knowingly violated plaintiff's rights. In the qualified immunity context, arguable decisions require immunity. As such, the officers are entitled to qualified immunity. Moreover, if the officers are entitled to qualified immunity, it also follows that they could not have engaged in the "willful misconduct" necessary to pursue the state law claims against them under the Tort Claims Act.

## II. *Malicious Prosecution - The Officers Did Not Initiate Criminal Proceedings*

Since prosecutors select and pursue charges, police officers are not considered to have "initiated criminal proceedings" for malicious prosecution purposes unless they have conveyed false information to the prosecutor, omitted material information, or interfered with the prosecutor's informed discretion. Francis v. Harmon, 2014 WL 617138 at *3 (E.D. Pa. Feb. 18, 2014). There is no allegation here that the police documents were untruthful or omitted material facts.

Citing Lennon v. Sharon Hill Borough, 2014 WL 1395038 (E.D. Pa. Ap. 10, 2014) and

Montgomery v. DeSimone, 159 F.3d 120 (3d Cir. 1998), plaintiff contends that officers can initiate criminal proceedings merely by completing paper work that leads to charges. In Lennon, however, the District Court cited the very rule set out in Francis, *supra*, and the plaintiff there alleged that the defendants made false statements in their affidavit of probable cause to obtain false charges. Lennon, 2014 WL 1395038 at **1-2, 5. In DeSimone, the court did not address the circumstances under which an officer initiates criminal proceedings. The questions were whether a later guilty verdict that was reversed on appeal precluded a malicious prosecution claim, and whether the officer otherwise had probable cause to arrest. DeSimone, 159 F.3d at 125. Indeed, the quote plaintiff attributes to DeSimone nowhere appears in the opinion. Moreover, the allegation in DeSimone was also that the police officer fabricated the facts creating probable cause. Id. at 122-23. Thus, even if DeSimone were relevant to the issue, it would not support plaintiff's position.

Next, plaintiff argues that Detective Wojciechowski "shopped around to get a prosecutor that would approve their charges" by looking for the "right ADA." The amended complaint does not attribute this statement to the Detective Wojciechowski, but merely alleges he was present when it was made. The amended complaint also does not allege that Detective Wojciechowski acted on this statement, and, in fact, "shopped" for an ADA. Last, and most importantly, plaintiff does not allege that Detective Wojciechowski in any way interfered with the discretion of the ADA that selected and pursued the charges, or plead any facts supporting such a claim. Given that all of the information in the police documents was truthful, there is no reason to conclude that any hypothetical shopping had any outcome on prosecutor's decision to prosecute plaintiff. Last, even if the alleged prosecutor shopping could create an actionable malicious prosecution claim, that claim would not stand against Officer Pinkney or Sergeant Flaville, neither of whom are alleged to have taken part in the shopping.

7

**BENNETT, BRICKLIN & SALTZBURG LLC**

                                BY: _/s/ Nicholas A. Cummins_
                                    Charity C. Hyde/Nicholas A. Cummins
                                    Attorney I.D. No. 82022/203238
                                    hyde@bbs-law.com / cummins@bbs-law.com
                                    Attorneys for Defendants, City of Philadelphia,
                                    Raymond Pinkney, Detective M. Wojciechowski, and
Date:   July 23, 2015               Kenneth Flaville

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER VANDERKLOK | : |
| | : |
| v. | : NO. 15-370 |
| | : |
| UNITED STATES OF AMERICA, et al. | : |

## CERTIFICATE OF SERVICE

I, Nicholas Cummins, do hereby certify that on this date, a true and correct copy of the Reply Brief in Support of Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) on behalf of Defendant, Raymond Pinkney, was electronically filed and is available for viewing and downloading from the ECF system and has been served this date upon all interested counsel.

Thomas B. Malone, Esquire
The Malone Firm, LLC
1650 Arch Street, Suite 1903
Philadelphia, PA 19103

Anne B. Taylor, Esquire
U.S. Attorney's Office
401 Market Street, 4th Floor
Camden, NJ 08101

Jeffrey M. Scott
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103

BENNETT, BRICKLIN & SALTZBURG LLC

BY: /s/ Nicholas A. Cummins
Charity C. Hyde/Nicholas A. Cummins
Attorney I.D. No. 82022/203238
hyde@bbs-law.com / cummins@bbs-law.com
1601 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 561-4300 / (215) 561-6661 (Fax)
Attorneys for Defendants, City of Philadelphia,
Raymond Pinkney, Detective M. Wojciechowski,
and Kenneth Flaville

Date: July 23, 2015