**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROGER VANDERKLOK,

              **Plaintiff,**

   **v.**

UNITED STATES OF AMERICA, *et al.,*

           **Defendants.**

**CIVIL ACTION
NO. 15-00370**

PAPPERT, J.                                            October 5, 2015

## MEMORANDUM

Plaintiff Roger Vanderklok ("Vanderklok") attempted to pass through a security checkpoint at Philadelphia International Airport with a carry-on bag containing, among other things, a type of watch encased in a section of plastic pipe.  When the x-ray screening revealed the "anomaly" in the bag, agents of the Transportation Safety Administration ("TSA") detained Vanderklok and called the Philadelphia Police.  Vanderklok was arrested and charged with three crimes.  He was acquitted at trial of all charges filed against him.

Vanderklok then sued the United States of America ("United States"), the TSA, TSA agent Charles Keiser ("Keiser"), the City of Philadelphia ("City"), Philadelphia Police Officers Raymond Pinkney ("Pinkney"), Michael Wojciechowski ("Wojciechowski"), and Kenneth Flaville ("Flaville") (collectively, the "Individual Officers"), Department of Homeland Security Secretary Jeh Johnson ("Johnson") and former TSA Administrator John Pistole ("Pistole").  (ECF No. 1.) The parties have since stipulated to the dismissal of the TSA, Johnson and Pistole from this lawsuit. (ECF No. 41.)  Vanderklok's nine-count complaint alleges violations of his First, Fourth and

1

Fourteenth amendment constitutional rights, state-law tort claims of false arrest, false imprisonment, battery and assault, malicious prosecution, and retaliatory prosecution, and *Monell* claims against the City.[1]  The Individual Officers, City, and United States each filed separate motions to dismiss Vanderklok's claims against them.  (ECF Nos. 26, 27, 28.)  The Court dismissed Vanderklok's claims against the Individual Officers and the City on September 30, 2015, (ECF Nos. 42, 43), ruling that the Individuals Officers had probable cause to arrest Vanderklok and, even had that not been the case, the Individual Officers were entitled to qualified immunity.  With no underlying constitutional claim, the *Monell* claim against the City was similarly dismissed.  (ECF No. 42.)

The Court now turns to the United States' motion to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).[2]  The United States argues that the Court lacks subject-matter jurisdiction over the claims against it because TSA screeners are entitled to sovereign immunity.  It contends that the Federal Tort Claims Act ("FTCA")—which waives sovereign immunity for certain claims against certain types of government personnel—does not apply to TSA screeners, and they are therefore shielded from liability.  Vanderklok claims that TSA screeners fall within the sovereign immunity waiver of the FTCA, and the United States is a proper defendant in this lawsuit.  The Court grants the United States' motion.[3]

## I.

On January 26, 2013, Vanderklok arrived at Philadelphia International Airport for a flight

---

[1]     Vanderklok initially also brought claims against the United States for violations of his First, Fourth and Fourteenth Amendment rights, though the parties have since stipulated to the dismissal of those claims.  (ECF No. 41.)

[2]     The United States also brings its motion pursuant to Rule 12(b)(2) (lack of personal jurisdiction), Rule 12(b)(5) (insufficient service of process) and Rule 12(b)(6) (failure to state a claim upon which relief can be granted). The previously stipulated dismissal of Johnson and Pistole mooted those arguments and the Court now focuses solely on grounds for dismissal under Rule 12(b)(1).

[3]     Having not filed a motion to dismiss, but instead electing to answer the complaint, (ECF No. 25), Keiser is now the sole defendant in this case.

to Miami, Florida where he was scheduled to run a marathon the following day.[4]  (Am. Compl. ¶¶ 2, 25, ECF No. 22.)  Vanderklok proceeded to the TSA security checkpoint and placed his carry-on bag through the x-ray screening device.  (*Id.* at ¶ 25.)  Though Vanderklok walked through the metal detector without incident, a TSA screener asked Vanderklok to step aside for additional examination of his bag.  The amended complaint describes Vanderklok's bag and contents as a carry-on bag containing a heart monitoring watch, some Power Bars,[5] running gear and his laptop computer.  (*Id.* at ¶¶ 2, 25.)  The TSA screener then asked Vanderklok to submit to additional screening because "apparently [the TSA] saw the heart monitoring watch and the Power Bars and thought they looked like the components of an explosive device."  (*Id.* at ¶ 27.)

Kieser was one of the TSA screeners at the scene who interacted with Vanderklok about the search of the bag.  According to the amended complaint, Kieser grew "agitated" with Vanderklok during the course of this discussion for not knowing that the Power Bars were "organic material."  (*Id.* at ¶ 31.)  After the TSA screeners had finished inspecting the bag, Vanderklok, who "did not appreciate the way he was spoken to [by Kieser]," told Kieser that he wanted to file a complaint and asked for a form so that he could document what he believed to be Kieser's inappropriate and aggressive behavior.  (*Id.* at ¶¶ 4, 34.)  Vanderklok alleges that as a result of this request, Kieser called the Philadelphia Police and "made a string of untrue statements claiming Plaintiff made comments that he did not, knowing that it would result in an illegal seizure and arrest of Mr. Vanderklok."  (*Id.* at ¶ 36.)  Vanderklok further alleges that Kieser then directed another TSA screener to "watch" him until the Philadelphia Police arrived.  (*Id.* ¶ 36.)

Pinkney was the first police officer to respond to Kieser's call.  When he arrived, Kieser

---

[4]      The factual background is explained in detail in the Court's September 30, 2015 Memorandum.  (ECF No. 42.)  The Court repeats here only the facts relevant to the United States' motion to dismiss.
[5]      Power Bars are energy bars sold in a sealed wrapper.  They are rectangular, usually packaged individually, and sold in a variety of flavors.  They typically contain flour, sugar, milk, soy protein and a variety of other ingredients.  https://www.powerbar.com/Products/.

told him that Vanderklok had "angrily said to [Kieser] that 'anybody can bring a bomb and you wouldn't even know it.'" (*Id.* at ¶¶ 7, 35.)  Pinkney arrested Vanderklok and subsequent took him to the Philadelphia Police District for additional processing by Wojciechowski.  (*Id.* at ¶¶ 64, 66.)  Flaville later approved the arrest.  (*Id.* at Ex. A.)

Vanderklok was charged with threatening the placement of a bomb, terroristic threats, and disorderly conduct.  (*Id.* at ¶ 8.)  At his criminal trial on April 8, 2013, a Philadelphia Common Pleas Court judge granted a defense motion for judgment of acquittal.  (*Id.* at ¶ 12, Ex. E.)

## II.

Where a pleading does not allege facts sufficient to establish subject-matter jurisdiction, a party can move to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss pursuant to Eleventh Amendment sovereign immunity is properly brought pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  *Blanciak v. Allegheny Ludlum Corporation*, 77 F.3d 690, 693 n. 2 (3d Cir.1996).

Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be facial or factual in form.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000; *Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).  The assertion of Eleventh Amendment sovereign immunity as a defense is properly treated as a facial challenge.  *Urella v. Pennsylvania State Troopers Association*, 2008 WL 1944069, at *3 (E.D.Pa. May 2, 2008).  In a facial attack on jurisdiction, the court treats the complaint's allegations as true and decisions on any motions are purely legal determinations.  *Cudjoe v. Dept't of Veterans Affairs*, 426 F.3d 241, 244 (3d Cir. 2005).

Ordinarily, the plaintiff bears the burden of showing that jurisdiction exists.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).  However, where the defendant's challenge to subject-matter jurisdiction is based on sovereign immunity, "the party

asserting the immunity bears the burden" of showing that immunity applies. *M & M Stone Co. v. Pennsylvania Dep't of Envtl. Prot.*, 2008 WL 4467176, at \*13 (E.D.Pa. Sept. 29, 2008) (citation omitted). In reviewing a facial attack under Rule 12(b)(1), the Court's inquiry is limited to the allegations in the complaint, the documents referenced in or attached to the complaint, and matters in the public record. *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp.2d 555, 557 (D. Del. 2006).

## III.

Sovereign immunity protects the federal government and its agencies from civil liability. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of sovereign immunity, and permits an avenue for tort claims for the wrongful conduct of federal employees. *See* 28 U.S.C. § 2671 *et seq.* The statute grants federal courts exclusive jurisdiction to hear claims against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

Section 2680(h) of the FTCA limits the scope of the § 1346(b)(1) waiver and retains sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."[6] *Id.* at § 2680(h). This clause is known as the "intentional torts exception" to the waiver of sovereign immunity provided by § 1346(b)(1). The intentional torts exception, however, also states: "*Provided*, That, with regard to acts or omissions of

---

[6]     Vanderklok's state-law tort claims against the United States are each explicitly listed in § 1680(h) except for retaliatory prosecution. "The United States Supreme Court has construed broadly the meaning of 'arising out of' in section 2680(h)." *Prybyszewski v. City of Philadelphia*, 1990 WL 2800, at \*3 (E.D.Pa. Jan. 16, 1990) (citing *United States v. Shearer*, 473 U.S. 52 (1985); *Kosak v. United States*, 465 U.S. 848 (1984)); *see Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 96 (3d Cir. 1995) (finding no waiver of sovereign immunity where the tort at issue is essentially similar to one of the explicitly-listed torts in § 2680(h)). Thus, § 2680(h), which bars any actions arising out of, *inter alia*, malicious prosecution, would also bar Vanderklok's claim for retaliatory prosecution.

investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising out . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" *Id.* This carve-out, commonly known as the "law enforcement proviso," states that a law enforcement officer within the meaning of § 2680(h) is subject to the FTCA waiver and does *not* have immunity for any of the intentional torts listed in that statute.

The issue before the Court is whether or not a TSA screener is a "law enforcement officer of the United States Government" pursuant to § 2680(h). The answer to that question determines the applicability of sovereign immunity, and thus whether the Court has subject-matter jurisdiction over the claims against the United States. If TSA screeners are law enforcement officers within the meaning of that statute, they are not protected by the intentional tort exception and the Court has jurisdiction over the claims; if TSA screeners are *not* law enforcement officers, they are protected by the intentional tort exception and the Court must dismiss the claims against the United States for lack of subject-matter jurisdiction.

Section 1280(h) defines an investigative or law enforcement officer as "any *officer* of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h) (emphasis added). Based on a plain reading of the statute, the threshold question is whether a TSA screener is an "officer of the United States" within the meaning of § 2680(h).

**A.**

Several courts which have addressed this issue have analyzed whether a TSA screener is a "law enforcement officer" by first asking whether the screener can execute searches, seize evidence, or make arrests. *See Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 701 (11th Cir. 2014) *cert. denied*, 135 S. Ct. 1559, 191 L. Ed. 2d 639 (2015) (collecting cases). Since TSA

screeners clearly cannot seize evidence or make arrests, *see Walcott v. United States*, 2013 WL 5708044, at *3 (E.D.N.Y. Oct. 18, 2013), the focal point of these decisions has been on whether TSA screeners can "execute searches" within the meaning of the statute. *See Corbett*, 568 F. App'x at 701.

In *Corbett*, however, the Eleventh Circuit Court of Appeals held that it did not need to first "resolve this thorny 'search' issue." The court instead stated that "TSA screeners are not subject to the law enforcement proviso for a simpler reason—they are not 'officers of the United States Government,' as required by § 2680(h)'s statutory language." *Id.* While the Third Circuit Court of Appeals has not ruled on this specific issue, the Court finds the *Corbett* reasoning persuasive based on a plain reading of the relevant statutes and related case law within this Circuit.

The FTCA distinguishes between a "federal employee" and an "officer of the United States." *Id.* Specifically, it waives the government's immunity for tort claims based on the acts or omissions of "any *employee* of the Government . . . ." 28 U.S.C. § 1346(b)(1). Similarly, the intentional tort exception refers to "an act or omission of an *employee* of the Government." *Id.* § 2680(a). By contrast, the law enforcement proviso specifically references a "law enforcement *officer* of the United States government." *Id.* at §2680(h) (emphasis added). Importantly, it defines "law enforcement officer" as an "*officer* who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* (emphasis added). Congress' use of "employee" in some instances and "officer" in others "is not insignificant and shows that the law enforcement proviso applies only when the person whose conduct is at issue is an 'officer of the United States.'" *Corbett*, 568 F. App'x at 701.

The statutory scheme regarding airport security similarly differentiates between federal TSA employees and law enforcement officers. Airport security "screening . . . shall be carried

7

out by a Federal Government employee." 49 U.S. § 44901(a). Congress separately granted the TSA Administrator with authority, in his or her discretion, to "designate an employee of the [TSA] or other Federal agency to serve *as a law enforcement officer*." *Id.* § 114(p)(1) (emphasis added). Upon such a designation, the officer may carry a firearm, make arrests, and seek and execute warrants for arrest or seizure of evidence. *Id.* § 114(p)(2)(A)-(C). "The TSA Administrator thus must affirmatively act to make a TSA employee an 'officer.' Merely being a TSA employee does not make one an 'officer of the United States Government." *Corbett*, 568 F. App'x at 701.

"These provisions show that, within TSA, there are: (1) federal employees, who conduct airport security screening; and (2) law enforcement officers, who perform various law enforcement functions." *Id.* Since the TSA has not granted this law enforcement authority to TSA screening personnel, TSA screeners are "the first type—federal employees conducting airport security screening." *Id.*; *see Pellegrino v. U.S. Transp. Sec. Admin.*, 2014 WL 1489939, at *4 (E.D.Pa. Apr. 16, 2014) *amended on reconsideration*, 2014 WL 3952936 (E.D.Pa. Aug. 12, 2014) (citing TSA Management Directive No. 1100.88-1) (noting that law enforcement authority has, in contrast, been delegated to Criminal Investigators, Federal Air Marshals, and Transportation Security Specialists.")

In *Matsko v. U.S.*, 372 F.3d 556, 560 (3d Cir. 2004), the Third Circuit was confronted with the issue of whether an inspector for the Mine Safety and Health Administration ("MSHA") was an "officer" within the meaning of § 2680(h). *Id.* The plaintiff alleged that the inspector assaulted him at the MHSA office during a meeting. *Id.* at 557. He argued that the law enforcement proviso applied to the inspector because the exception applies to all actions undertaken by investigative officers—not just torts that occur during the course of a search, seizure, or arrest. *Id.* at 560. The Third Circuit avoided that question altogether by holding that

the law enforcement proviso was not applicable. *Id.* Specifically, the court categorically held that employees of administrative agencies do not come within the law enforcement proviso, "no matter what investigative conduct they are involved in[.]" *Id.* As a result, the Third Circuit affirmed the district court's holding that there was no waiver of sovereign immunity pursuant to § 2680(h) because the inspector was not an officer within the meaning of the statute. *Id.*

Courts in various jurisdictions cited *Matsko* in concluding that TSA screeners are not "officers" within the meaning of the law enforcement proviso. *See Pellegrino*, 2014 WL 1489939, at *7 ("Guided by the legislative history of the provision, the Third Circuit's implication in *Matsko*, as well as the reasoning of other district courts, the Court holds that [the TSA screeners] are not 'investigative or law enforcement officers' under 28 U.S.C. § 2680(h)."); *Hernandez v. United States*, 34 F. Supp.3d 1168, 1181 (D. Colo. 2014) ("As other district courts have concluded, and I agree, TSA screeners are not 'investigative or law enforcement officer[s]' within the meaning of § 2680(h)."); *Weinraub v. United States*, 927 F. Supp.2d 258, 263 (E.D.N.C. 2012) (citing *Matsko* in holding that TSA screeners are not "officers" within the meaning of the law enforcement proviso); *Coulter v. U.S. Dep't of Homeland Sec.,* 2008 WL 4416454, at *9 (D.N.J. Sept. 24, 2008) (same).[7]

Given Congress' definitive usage of "employee" and "officer" in the FTCA and the federal statutes governing airport security, and in light of the Third Circuit's decision in *Matsko*, TSA screeners are federal employees—not "officers" within the meaning of § 2680(h). The law enforcement proviso excluding "officers of the United States" from the intentional tort exception therefore does not apply, and this Court lacks subject-matter jurisdiction over Vanderklok's

---

[7]        Contrary to these decisions, the Arizona district court has held that a TSA screener was a law enforcement officer within the meaning of § 2680(h). *Armato v. Doe*, U.S. Dist. LEXIS 190080 (D. Ariz. May 15, 2012). In *Armato*, the court concluded that because "airport screenings are searches" within the meaning of the Fourth Amendment, there is no question that they are conducting a "search" within the meaning of § 2680(h). This Court recognized the *Armato* decision in *Pellegrino*, 2014 WL 1489939, at *5, but declined to follow it, instead ruling that the "search" in § 2680(h) is narrower than the Fourth Amendment search that TSA screeners perform.

claims against the United States.  *See Blanciak*, 77 F.3d at 693 n. 2 (3d Cir.1996) (sovereign immunity deprives federal courts of subject-matter jurisdiction).

### B.

Prior to the Eleventh Circuit's decision in *Corbett*, several courts analyzed the "search issue" first and held that TSA screeners are not "officers of the United States" because they perform consensual, pre-boarding administrative searches for certain prohibited items; they do not perform traditional law enforcement functions such as making arrests and executing searches for violations of federal law.  *See, e.g., Pellegrino*, 2014 WL 1489939, at *5–8 (E.D.Pa. Apr. 16, 2014) (concluding that the phrase "searches . . . for violations of Federal law" is ambiguous and determining that an analysis of the FTCA's legislative history "strongly suggests that the law enforcement proviso was enacted as a response to specific egregious behavior during raids conducted by federal law enforcement officers, and was not intended to be expansive enough to cover airport security screeners" (omission in original));  *Hernandez*, 34 F.Supp.3d at 1182 (TSA screeners are not law enforcement officers because the functions named in the law enforcement proviso are "understood to be traditional law enforcement functions . . . commonly performed by FBI agents, Bureau of Prison Officers, postal inspectors, and INS agents," whereas TSA screeners only screen passengers for items "which are prohibited on airplanes, but not illegal to possess");  *Walcott*, 2013 WL 5708044, at *3 (concluding that "the meaning of 'empowered by law to execute searches . . . for violations of Federal law' under § 2680(h) is narrower than the meaning of a 'search' under the Fourth Amendment");  *Weinraub*, 927 F.Supp.2d at 263 (concluding that "it would be unreasonable to interpret 'to execute searches' to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (i.e., seizure of evidence and arrest) that Congress used to define 'investigative or law

10

enforcement officers'"); *Coulter*, 2008 WL 4416454, at *7-9 (D.N.J. Sept. 24, 2008) (TSA screeners are not law enforcement officers because, *inter alia*, the statute authorizing airport security screening "does not include language referencing the power of an airport security screener to perform searches"); *Welch v. Huntleigh USA Corp.*, 2005 WL 1864296, at *5 (D.Or. Aug. 4, 2005) (independent contractors performing screening for TSA were not law enforcement officers because "[s]creeners do not have the authority to detain individuals and must call law enforcement officers to search, seize, and arrest individuals if illegal items are found").

These opinions all analyze the "thorny 'search' issue" to determine if the TSA agent is an "officer" or "employee." Unlike these decisions, and consistent with the Third Circuit in *Matsko* and, more recently, the Eleventh Circuit in *Corbett*, a plain reading of the law enforcement proviso calls for the "officer" and "search" analyses to be done separately, and in that order—*i.e.*, only if the Court determines that the TSA screener is an "officer" can it proceed to the question of whether he is executing "searches" within the meaning of the § 2680(h). Since TSA screeners are not "officers" within the meaning of the law enforcement proviso, it is unnecessary to analyze the breadth or significance of TSA screeners' search powers. The Court, however, ultimately reaches the same conclusion as the courts that have determined that TSA screeners do not "execute searches" within the meaning of § 2680(h). Either way, Vanderklok's intentional tort claims against the United States are barred by sovereign immunity.

An appropriate Order follows.

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.