**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Roger Vanderklok,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | **NO. 15-370** |
| **v.** | |
| **United States of America, Transportation Safety Administration (TSA), Charles Kieser (TSA), City of Philadelphia, Philadelphia Police Officer Raymond Pinkney, Philadelphia Police Detective M. Wojciechowski, Philadelphia Police Officer Kenneth Flaville, City of Philadelphia, Jeh Johnson (Department of Homeland Security), and John S. Pistole (TSA)** | |
| **Defendants.** | |

**DEFENDANT TSA SUPERVISOR CHARLES KIESER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

ARCHER & GREINER, P.C.

Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Jordan L. Fischer, Esquire
jfischer@archerlaw.com

ONE LIBERTY PLACE
THIRTY-SECOND FLOOR
1650 Market Street
Philadelphia, Pennsylvania 19103-7393
Telephone:     (215) 963-3300
Facsimile:     (215) 963-9999
*Attorneys for TSA Supervisor Charles Kieser*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................................. 2

III.  STANDARD OF REVIEW .................................................................................. 4

IV.  STATEMENT OF FACTS ................................................................................... 5

V.  LEGAL ARGUMENT ........................................................................................ 10

    A.  As A Matter Of Law, Vanderklok's State Tort Claims Brought Against Kieser Are Barred By The Federal Tort Claims Act. ......................................... 10

    B.  Vanderklok's *Bivens* Claims Fail As A Matter Of Law And Supervisor Kieser is Entitled to Qualified Immunity. ............................................... 11

        1.  The Supreme Court has expressly declined to extend *Bivens* to allow claims against federal employees under the First Amendment. ............................................................................ 12

        2.  The existence of probable cause to arrest Vanderklok coupled with the lack of any facts showing that Kieser induced the prosecution negate any retaliatory prosecution claim. .............................. 15

    C.  The Search And Seizure Of Vanderklok At The TSA Security Checkpoint Was Necessary, Reasonable, And Lawful Under The Circumstances. ............... 17

    D.  Vanderklok's Malicious Prosecution Claim Under The Fourth Amendment Must Be Dismissed with Prejudice. ................................. 19

VI.  CONCLUSION ................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ...................................................................19

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575 (3d Cir. 2009) .........................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................11, 12, 13, 14

*Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009)........................12

*Bennett v. Murphy et al.*, 274 F.3d 133 (3d Cir. 2002) ...................................................12

*Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012) .......................................................11, 21

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ...........................................................................................2

*Briscoe v. LaHue*, 460 U.S. 325 (1983)................................................................22

*Bush v. Lucas*, 462 U.S. 367 (1983) ...................................................................13

*Butz v. Economou*, 438 U.S. 478 (1978)...............................................................12

*Davis v. Passman*, 442 U.S. 228 (1979) ...............................................................13

*George v. Rehiel*, 738 F.3d 562 (3d Cir. 2013).........................................13, 14, 15, 17, 18, 19

*Gonzalez v. Sec'y for the Dept. of Homeland §*, 678 F.3d 254, 263 (3d Cir. 2012) .......................4

*Graham v. Connor*, 490 U.S. 386 (1989) ..............................................................19

*Griffin v. Municipality of Kingston*, 453 Fed. App'x 250 (3d Cir. 2011)....................................15

*Groh v. Ramirez*, 540 U.S. 551 (2004) (Kennedy, J., dissenting) ................................................12

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ..........................11

*Hartman v. Moore*, 547 U.S. 250 (2006)................................................13, 14, 15, 16

*Irving v. Chester Water Auth.*, 439 F. App'x 125 (3d Cir. 2011) ...................................................4

*Johnson v. Knorr*, 477 F. 3d 75 (3rd Cir. 2007) .......................................................20

*Montanez v. Thompson*, 603 F.3d 243 (3d Cir. 2010) ...................................................12

*Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817 (3d Cir. 2009) ....................................11

*Pearson v. Callahan*, 555 U.S. 223 (2009) ..................................................................11, 12, 15

*Pellegrino v. United States Transp. Sec. Admin.*, No. 09-5505, 2014 U.S. Dist. LEXIS 52468 (E.D. Pa. Apr. 16, 2014) ..................................................................10

*Pignataro v. Port Auth. of N.Y. & N.J.,* 593 F.3d 265 (3d Cir. 2010) ..............................4

*Pritchett v. Warrender*, 546 Fed. App'x 66 (3d Cir. 2013) ..........................................21

*Rehberg v. Paulk*, 132 S. Ct. 1497 (2012) .................................................................22

*Reichle v. Howards*, ____ U.S.___, 132 S. Ct. 2088 (2012) ................................13, 14, 15, 16, 17

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895 (3d Cir. 1997) ........................................4

*Reynolds v. General Electric Corp.*, 2012 U.S. Dist. LEXIS 65149 (E.D. Pa. Mar. 30, 2012) ..............................................................................................................4

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................12

*Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003) ...........................................20

*Stackhouse v. Lanigan*, No. 11-7554, 2013 WL 6145665 (D.N.J. Nov. 21, 2013) ......................22

*Tanvir v. Lynch*, 128 F. Supp. 3d 756, 770 ...............................................................13

*Trueman v. Lekberg*, No. 97-1018, 1998 U.S. Dist. LEXIS 5368, 1998 WL 181816 (E.D. Pa. Apr. 15, 1998), aff'd, 168 F.3d 479 (3d Cir. 1998), cert. denied, 526 U.S. 1164 (1999) ........................................................................................10

*United States v. Hartwell*, 436 F.3d 174 (3d Cir. 2006) ..............................................17

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ....................................................................11

**Statutes**

28 U.S.C. § 2679 ....................................................................................1, 3, 10

28 U.S.C. § 2679(b)(1) ..................................................................................10

**Rules**

Fed. R.Civ.P. 56 ..............................................................................................1

Fed. R.Civ.P. 56(a) ..........................................................................................4

**Other Authorities**

First Amendment ........................................................................................2, 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Roger Vanderklok,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | **NO. 15-370** |
| **v.** | |
| **United States of America, et al.** | |
| **Defendants.** | |

**DEFENDANT TSA SUPERVISOR CHARLES KIESER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

TSA Supervisor Charles Kieser, by and through his counsel of record, brings this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.   INTRODUCTION

Plaintiff, Roger Vanderklok ("Plaintiff" or "Vanderklok") brings this suit seeking money damages for an alleged unlawful search, arrest and prosecution as a result of an incident that took place on January 26, 2013 at the Philadelphia International Airport ("Airport").

Vanderklok claims that, at the direction of TSA Supervisor Charles Kieser ("Kieser"), he was subjected to an unreasonable and elongated search at the TSA security checkpoint. Vanderklok further claims that after the search was completed, he requested to file a complaint with the TSA.  Vanderklok then alleges that Kieser falsely reported to local police that Vanderklok threatened to bring a bomb into the Airport.  Vanderklok brings several causes of action against Kieser grounded in state and federal law.  For the following reasons, Vanderklok's claims should be dismissed with prejudice.

Vanderklok's state law claims of false arrest, false imprisonment, assault & battery, malicious prosecution, and retaliatory prosecution are all barred by the Federal Tort Claims Act.

1

*See* Defendant United States of America's Omnibus Motion to Substitute, ECF Doc. 67 at 3.

Vanderklok's First Amendment claim for retaliatory prosecution fails because *Bivens* does not

extend to claims brought under the First Amendment.[1]  Vanderklok's malicious prosecution

under *Bivens* also fails because, among other reasons, Kieser did not initiate the criminal

prosecution against Vanderklok.  Finally, the administrative search of Vanderklok at the TSA

security checkpoint was reasonable under the totality of the circumstances.

Based on these reasons and those set forth below, all claims asserted against TSA

Supervisor Kieser should be dismissed with prejudice.

## II.    PROCEDURAL HISTORY

Vanderklok filed his initial Complaint on January 23, 2015 and subsequently filed an

Amended Complaint on May 27, 2015.  *See* Amended Complaint ("Am. Complaint"), ECF Doc.

22.  All Defendants, except for Kieser, filed Motions to Dismiss or Motions for Judgment on the

Pleadings in April and June 2015.

On September 30, 2015, this Court issued a Memorandum Opinion ("September

Opinion"), ECF Doc. 43.  In that September Opinion, this Court dismissed Vanderklok's claims

against the City of Philadelphia and the City Defendants.  The Court held that the City

Defendants had probable cause, based on Defendant Kieser's statements, to arrest Vanderklok.

*See* September Opinion, Doc. 43, at 12, 14.  The Court stated that Officer Pinkney "was provided

with enough facts to arrest Vanderklok for disorderly conduct. . . [because] it is sufficient that

[his words] risked causing a disturbance."  *Id.* at 12.

The Court further noted that, "even if the Individual Officers lacked probable cause to

arrest Vanderklok, they would be protected by qualified immunity because they did not violate a

---

[1] In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388
(1971), the United States Supreme Court recognized a private cause of action to recover
monetary damages against a federal agent for violations of constitutional rights.

right that was 'clearly established.'" *Id.* at 15.  This Court rejected Vanderklok's argument that

his alleged statement that "anybody can bring a bomb and you wouldn't even know it" is speech

protected by the First Amendment because "[i]t is not 'apparent' from pre-existing law that

Vanderklok's statement is protected by the First Amendment, . . . indeed, case law in this Circuit

suggests that there are limits on speech that can interpreted as a threat at the airport." *Id.* at 16.

This Court concluded that "[t]he right to make such a statement is not clearly established, and

may even be rightfully restricted." *Id.* at 17 (citation omitted).

This Court issued a second Memorandum Opinion on October 6, 2016 ("October

Opinion"), ECF Doc. 45.   In the October Opinion, this Court dismissed Vanderklok's claims

against the United States of America for lack of subject matter jurisdiction because the Federal

Tort Claims Act (FTCA) does not waive sovereign immunity for TSA screeners.  *Id.* at 2.  This

Court held that because TSA screeners are "federal employees" and not "officer[s] of the United

States," the law enforcement officer provision of the FTCA, which waives sovereign immunity

for intentional torts allegedly committed by federal officers, does not apply.  *Id.* at 6-9.

On June 22, 2016, United States moved to substitute itself as the proper party defendant

for the state law torts brought against Kieser; and certified, under 28 U.S.C. § 2679,  that Kieser

was acting in the course and scope of his employment as a federal employee.  The Government

then moved to dismiss all state law claims because the Federal Tort Claims Act (FTCA) does not

waive sovereign immunity for TSA screeners. *See* Mot. to Substitute, ECF No. 67.  Kieser does

not oppose the Government's motion and joins the arguments set forth therein.

Defendant Kieser is now the sole defendant remaining in this case.  All discovery in this

matter has been completed and this case is ripe for summary judgment.  For the reasons set forth

below, the Court should grant Defendant Kieser's motion for summary judgment.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a).  *Reynolds v. General Electric Corp.*, 2012 U.S. Dist. LEXIS 65149, 3-4 (E.D. Pa. Mar. 30, 2012).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.,* 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, when that obligation is met, the burden shifts to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  "[A]s a general proposition, 'conclusory self-serving affidavits are insufficient to withstand a motion for summary judgment.'"  *Gonzalez v. Sec'y for the Dept. of Homeland*, 678 F.3d 254, 263 (3d Cir. 2012) (*quoting Kirleis v. Dickie, McCarney, & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).  This rule has been extended to self-serving deposition testimony. *Irving v. Chester Water Auth*., 439 F. App'x 125, 127 (3d Cir. 2011).

**IV.     STATEMENT OF FACTS**

1.     On January 26, 2013, Vanderklok arrived at the Philadelphia International Airport ("Airport") at approximately 8:00 a.m. intending to fly to Miami, Florida to participate in a half-marathon. *See* Am. Complaint, ECF Doc. 22, at ¶25.

2.     Vanderklok entered the TSA Security Screening checkpoint area with his carry-on luggage, containing "running gear, his laptop, a heart-monitoring water and some Power Bars." Am. Complaint at ¶25.  His carry-on luggage included a PVC pipe containing his fitness watch and his heart-rate monitor strap. *See* Roger Vanderklok Deposition ("Vanderklok Dep.") at 66:5-7; 68:6-8, attached hereto as Exhibit A; Deposition of Detective Wojciechowski ("Wojciechowski Dep.") at 26-29 and Exhibit Woj.-2, bates stamped CoP 000015, attached hereto as Exhibit B.



**Photograph of PVC Pipe and Contents**

3.     The TSA Agents believed that the items in Vanderklok's bag resembled an explosive device. Am. Complaint at ¶27.  The TSA Agents performed a second security

screening of his carry-on bag due to the suspicious nature of its contents.  *See* Vanderklok Dep. at 84.

4.   Kieser moved from his desk to the screening area to observe the second screening of Vanderklok's bag at approximately 8:16 a.m.  *See* Criminal Trial Transcript dated April 8, 2013 ("Criminal Transcript"), attached as Exhibit C, at 17:16-17; Vanderklok Dep. at 144:2-5; Am. Complaint at Exhibit B.

5.   At approximately 8:19 a.m., Kieser approached Vanderklok at the exit of the security screening area to ask him questions regarding the contents of his carry-on bag.  Am. Complaint at ¶29; Vanderklok Dep. at 109:10-20; 156:10-18.

6.   While speaking with Kieser, Vanderklok appeared agitated.  *See* Criminal Transcript at 21:1-22:7.

7.   During this conversation, Kieser informed Pinkney that Vanderklok said "I could bring a bomb through here any day I want and you'll never find it."  Criminal Transcript at 21:24-25.

8.   TSA Officials returned his bag and the contents of his bag to Vanderklok. Thereafter, Vanderklok notified Kieser that he wished to file a complaint with the TSA. Vanderklok Dep. at 109:10-23; 110:1-7. Based on Vanderklok's alleged statement, Kieser notified the City of Philadelphia Police Department.  Criminal Transcript at 29:14-30:18.

9.   At  approximately 8:22 a.m., Vanderklok left the secured TSA screening checkpoint to gather his belongings. Vanderklok  Dep. at 110:11-14; 162:2-12.

10.   Kieser never told Vanderklok that he was under arrest or that he was not free to leave the checkpoint area.  Vanderklok Dep. at 120:8-10.

11. Vanderklok believed that he was free to leave at this point. Vanderklok Dep. at 119:22-120:7; 122:21-1; 124:7-12.

12. Vanderklok never had any further communication or contact with Kieser until April 8, 2013, the date of Vanderklok's criminal trial.  Vanderklok Dep. at 110:22-24; 111:1-6.

13. The TSA is responsible for the security of the planes and the passengers within the Philadelphia International Airport.  The Philadelphia Police Department is responsible for the general security of the airport itself.  Wojciechowski Dep. at 128:14-18.

14. At approximately 8:25 a.m., Philadelphia Officer Raymond Pinkney received a radio call at police headquarters to report to the TSA checkpoint due to "threats."  *See* Raymond Pinkney Deposition ("Pinkney Dep."), attached hereto as Exhibit D, at 14:8-18; 17:6-22; 17:23-18:3.  Two minutes later, Pinkney and his supervisor, Philadelphia Police Department Sergeant Mack arrived at the TSA Screening area. *See id.* at 17:23-18:3; Vanderklok Dep. at 111:7-15.

15. When Officer Pinkney and Sergeant Mack arrived outside the TSA security checkpoint, Vanderklok had all of his possessions and was organizing his duffle bag. *See* Vanderklok Dep. at 111:16-112:1; Pinkney Dep. at 69:10-70:2.

16. Officer Pinkney interviewed TSA Supervisor Kieser and Vanderklok.  Pinkney Dep. at 23:11-20.

17. During Pinkney's investigation, Kieser gave Officer Pinkney the following information: "He told me that Vanderklok, they checked his bag, that he – they checked his bag, he had a PVC pipe that contained a watch, basically PVC that was inside – the watch that was inside. He was telling me also that the passenger became -- was becoming frustrated, okay, and basically he made a statement with the word bomb in it."  Pinkney Dep. at 20:8-21.

18. Vanderklok informed Pinkney that he wanted to file a Complaint with the TSA. Pinkney Dep. at 24:2-4.  Vanderklok neither admitted nor denied that he said the word "bomb" during Officer Pinkney's investigation, although he was given the opportunity.  Pinkney Dep. at 23:11-25:9.

19. At 8:47 a.m., Sergeant Mack instructed Officer Pinkney to escort Vanderklok to the Philadelphia Police sub-station ("Station") located within the Airport.  *See* Pinkney Dep. at 27-29; 37:11-15;174-7-24; 175:1-6;Vanderklok Dep. at 114:14-22.

20. Vanderklok voluntarily went to the Station, un-handcuffed, along with Philadelphia Police Department law enforcement officers.  Pinkney Dep. at 29:6-13; 37:11-15.

21. Vanderklok did not believe that he was under arrest.  Vanderklok Dep. at 119:22-120:7.

22. Kieser did not accompany Vanderklok to the Station.  Pinkney Dep. at 37:3-10.

23. Vanderklok was placed into a glass cell for approximately three hours.  Vanderklok Dep. at 126:9-20.

24. Detective Wojciechowski was notified of the incident and reported to the Station. Wojciechowski Dep. at 13:23-14:6.

25. Since 2002, Detective Wojciechowski has been the sole detective responsible for investigations at the Philadelphia International Airport.  Wojciechowski Deposition at 14:1-20.

26. Detective Wojciechowski is also the Philadelphia Police Department's "Terrorism Liaison Officer."  In that role, Detective Wojciechowski has received training on explosive devices. Wojciechowski Dep. at 29:21-30:11.  As such, Detective Wojciechowski has specialized training and knowledge in bomb-making and devices used, such as plastic PVC pipes fashioned into a "pipe-bomb." *Id.*

27. Detective Wojciechowski took the following action during his investigation: (1) interviewed Officer Pinkney and Kieser as part of his investigation (Wojciechowski Dep. at 72:15-23; Pinkney Dep., at 47:24- 48:7); (2) conducted a "preliminary interview" of Vanderklok (Wojciechowski Dep. at 85:5-22); (3) photographed the items found in Vanderklok's carry-on bag (Wojciechowski Dep. at 26:5-14); and (4) shared his findings with DACU (*Id.* at 42:9-18).

28. At the conclusion of his investigation, Detective Wojciechowski recommended that the District Attorney charge Vanderklok with disorderly conduct and placement of a bomb. The assigned Assistant District Attorney from District Attorney's Charging Unit ("DACU") added the charge of terroristic threats. Wojciechowski Dep. at 42:9-18;57:12-24; 156-157; and Exhibit Woj03, bates stamped as CoP 000002.

29. In the City of Philadelphia, the assigned detective does not have any authority to charge a person suspected of a criminal offense. The assigned detective makes a recommendation to the DACU. The assigned assistant district attorney determines whether or not to charge the individual based on the information provided by the detective.  Wojciechowski Dep. at 19:4-20:2.  The DACU has the discretion to accept, reject, or change the charges recommended by the detective.  *Id.* at 20:6-21:2.

30. After the District Attorney's Office approved the charges, Vanderklok was handcuffed and transported to the local police district in West Philadelphia, at approximately 12:00 p.m.  *See* Vanderklok Dep. at 30:23-31:2; 104:10-13; 106:9-15.

31. After arraignment, Vanderklok posted bail in the amount of $4,000.00 and subsequently defended a criminal trial. Vanderklok Dep. at 35:5-10; Am. Complaint at ¶68.

32.  On April 8, 2013, Vanderklok's motion for judgment of acquittal was granted by the Philadelphia Common Pleas Court.  Am. Complaint at ¶12.

## V.    LEGAL ARGUMENT

### A.    <u>As A Matter Of Law, Vanderklok's State Tort Claims Brought Against Kieser Are Barred By The Federal Tort Claims Act</u>.

On June 22, 2016, United States moved to substitute itself as the proper party defendant for the state law torts brought against Kieser.  The United States also filed a certification that Kieser was acting in the course and scope of his employment as a federal employee on the date of this incident  *See* Mot. to Substitute, ECF No. 67.  As such, Vanderklok's state law tort claims asserted against Kieser are barred by the Federal Tort Claims Act, 28 U.S.C. § 2679 ("FTCA").

It is well settled that the FTCA provides the exclusive remedy for torts committed by employees of the United States acting within the scope of their employment.  *See* 28 U.S.C. § 2679(b)(1); *see also Trueman v. Lekberg*, No. 97-1018, 1998 U.S. Dist. LEXIS 5368, *15, 1998 WL 181816 (E.D. Pa. Apr. 15, 1998), aff'd, 168 F.3d 479 (3d Cir. 1998), cert. denied, 526 U.S. 1164 (1999) (dismissing the plaintiff's state claims of false imprisonment, false arrest, and malicious prosecution against the individual defendants).

Under the FTCA, the United States has only waived sovereign immunity for law enforcement officers, under the law enforcement exception of Section 2680(h).  However, "[b]ecause TSA screeners are not encompassed in the law enforcement proviso of § 2680(h), the waiver of sovereign immunity in the FTCA does not apply to [plaintiff's] false arrest, false imprisonment, malicious prosecution, and related civil [] claims."  *Pellegrino v. United States Transp. Sec. Admin.*, No. 09-5505, 2014 U.S. Dist. LEXIS 52468, at *19-20 (E.D. Pa. Apr. 16, 2014) (holding that "[t]his Court is thus without jurisdiction to entertain those claims, and dismisses them accordingly"); *see also* October Opinion, ECF Doc. 45, at 7-10.

10

Here, Kieser was at all times acting within the scope of his employment as a TSA officer. As a TSA officer, he does not fall within the waiver of immunity under the law enforcement provision of the FTCA.  As such, and consistent with the Government's Motion, the state law tort claims against Kieser should be dismissed.

**B.**      **Vanderklok's *Bivens* Claims Fail As A Matter Of Law And Supervisor Kieser is Entitled to Qualified Immunity.**

Under *Bivens*, "implied causes of action are disfavored"; and, as such, the Supreme Court "has been reluctant to extend *Bivens* liability to any new context or new category of defendants." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (*quoting Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)(stating that a *Bivens* action "is not an automatic entitlement" and, in most instances, is "unjustified"); *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012).

The Third Circuit has recognized that "the sufficiency of a plaintiff's allegations in a *Bivens* action is inextricably intertwined with and directly implicated by the defense of qualified immunity."  *Bistrian*, 696 F.3d at 366 (citation omitted).  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*citing Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*; *see also Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 823 (3d Cir. 2009) (non precedential) (*quoting Pearson*, 555 U.S. at 231).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a

mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (*citing Butz v. Economou*, 438 U.S. 478, 507 (1978)); *see also Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (*citing Pearson*, 555 U.S. at 231).

In *Saucier v. Katz*, the Court set forth a two-step analysis for evaluating claims of qualified immunity.  533 U.S. 194 (2001), *overruled*, *Pearson*, 555 U.S. at 223;[2] *see also Bennett v. Murphy et al.*, 274 F.3d 133, 136 (3d Cir. 2002).  To defeat the protection of qualified immunity, a plaintiff must show (1) "a constitutional violation" and (2) "whether the constitutional right was clearly established."  *Bennett*, 274 F.3d at 136-37.  When determining whether a right is "clearly established," courts must determine

> in the factual scenario established by the plaintiff, would a reasonable state actor
> have understood that his actions were prohibited?  The focus in this step is solely
> upon the law.  If it would not have been clear to a reasonable state actor *what the
> law required* under the facts alleged, he is entitled to qualified immunity.

*Id.* (emphasis in original).  If a plaintiff is unable to show facts sufficient to meet both of these elements, any *Bivens* claim will fail and must be dismissed.  *Pearson*, 555 U.S. at 242.

       1.    **The Supreme Court has expressly declined to extend *Bivens* to allow claims against federal employees under the First Amendment**.

Vanderklok asserts a First Amendment retaliation claim against Kieser, alleging that Kieser retaliated against Vanderklok for his request to file a complaint against the TSA.  *See* Am. Complaint at ¶36.  In *Iqbal*, the Supreme Court acknowledged that

> [f]or while we have allowed a *Bivens* action to redress a violation of the equal
> protection component of the Due Process Clause of the Fifth Amendment, we
> have not found an implied damages remedy under the Free Exercise Clause.
> Indeed, we have declined to extend *Bivens* to a claim sounding in the First
> Amendment.

---

[2] The *Pearson* Court did not overrule the doctrine of qualified immunity.  Instead, the Supreme Court overruled the mandatory two-step qualified immunity analysis and district courts are now permitted to address, in any order, either step, depending upon the facts and circumstances of each case. *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).

*Iqbal*, 556 U.S. at 675 (*citing Davis v. Passman*, 442 U.S. 228 (1979) and *Bush v. Lucas*, 462 U.S. 367 (1983)).  *See also Reichle v. Howards*, ____ U.S.___, 132 S. Ct. 2088, 2093 (2012) (holding that the Supreme Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause).

Here, Vanderklok's First Amendment claim under *Bivens* must be dismissed. Vanderklok's First Amendment claim arose on January 26, 2013.  At this time, and even today, there was no right of action under *Bivens* for a retaliatory arrest in the First Amendment context. Consistent with the above-cited authority, *Bivens* has never been extended to create a private action for damages against federal employees under the First Amendment.  *Iqbal*, 556 U.S. at 675.  Therefore, Kieser could not have violated a clearly established constitutional right. For this reason, Kieser is entitled to qualified immunity on this claim and Vanderklok's First Amendment claim must be dismissed.

To the extent that Plaintiff argues that *Hartman v. Moore*, 547 U.S. 250 (2006) and *George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) recognized a *Bivens'* claim in the First Amendment context, that argument must be rejected.

The Supreme Court granted certiorari in *Hartman* to determine whether plaintiffs in retaliatory-prosecution suits bear the burden of showing a lack of probable cause.  "The petitioners in *Hartman* did not seek review—nor did the Supreme Court grant review—on the predicate question of whether *Bivens* was available for First Amendment retaliation. It was against that background that Justice Souter, in an introductory paragraph of his opinion, observed that "[w]hen the vengeful [prosecutor] is [a] federal [officer], he is subject to an action for damages on the authority of *Bivens*," and cited *Bivens* without further analysis."  *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 770 n.12 (S.D.N.Y. 2015).  As the district court observed in *Tanvir*:

> *Hartman* is better read as assuming—not deciding—the question of *Bivens'* availability in the First Amendment retaliation context. *See, e.g., Wood v. Moss*, 134 S. Ct. 2056, 2066, 188 L. Ed. 2d 1039 (2014) (observing eight years after *Hartman* was decided that "we have several times assumed without deciding that *Bivens* extends to First Amendment claims"). Indeed, *Iqbal* explicitly noted that "[t]he legal issue decided in *Hartman* concerned the elements a plaintiff 'must plead and prove in order to win' a First Amendment retaliation claim." *Iqbal*, 556 U.S. at 673 (*quoting Hartman*, 547 U.S. at 257 n.5). And while the Court has cited *Hartman* on five occasions—including significant discussions in *Iqbal* and *Reichle*—not once has it suggested *Hartman* decided the availability of a *Bivens* remedy for First Amendment retaliation.

*Id.* at 770.

In *George,* the Third Circuit specifically noted that the Supreme Court has twice refused to extend *Bivens* implied causes of action to First Amendment claims and just assumed a cause of action for First Amendment retaliation. The Third Circuit noted in a footnote:

> We are mindful of the fact that the Supreme Court has twice in recent years noted that it has not extended *Bivens* implied causes of action to First Amendment claims. See *Reichle v. Howards*, U.S. , 132 S. Ct. 2088, 2093 n.4, 182 L. Ed. 2d 985 (2012) ("We have never held that *Bivens* extends to First Amendment claims."), and *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability to any new context or new category of defendants. . . . Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment. Petitioners do not press this argument, however, so we assume, without deciding, that respondent's First Amendment claim is actionable under *Bivens*."). Nonetheless, despite the cautionary notes sounded by the Court, it does appear that the Court has held that there is a *Bivens* cause of action for First Amendment retaliation claims.

*George*, 738 F.3d at 585 n.24. It is clear, even as of December 24, 2013, the Supreme Court and the Third Circuit have not recognized a clearly established right to be free from a retaliatory arrest in the First Amendment context. Because there was no right of action under *Bivens* for a retaliatory arrest in the First Amendment context on January 26, 2013, any and all First Amendment claims asserted against Kieser must be dismissed as a matter of law. *Iqbal*, 556 U.S. at 675.

14

Even if Vanderklok could show that he had a "clearly established right," there are no facts giving rise to a constitutional violation and therefore all First Amendment claims asserted against Kieser should be dismissed under the qualified immunity doctrine. *Pearson*, 555 U.S. at 242.

>       2.       **The existence of probable cause to arrest Vanderklok coupled with the lack of any facts showing that Kieser induced the prosecution negate any retaliatory prosecution claim.**[3]

In a retaliatory prosecution claim, assuming one existed under *Bivens* in January 2013, a plaintiff "must show that the non-prosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging. *Hartman,* 547 U.S. at 262 (2006). The Supreme Court noted that probable cause is just one-factor in determining whether or not the prosecution was initiated in retaliation for some protected activity. *Hartman*, 547 U.S. at 260-61; *George*, 738 F.3d at 586 ("The TSA Officials' suspicion was an obvious alternative explanation for their conduct, which negates any inference of retaliation."); *Griffin v. Municipality of Kingston*, 453 Fed. App'x 250, 254 (3d Cir. 2011). Arguably, determining whether the "key defendant" induced the prosecutor to bring charges in the first instance, is equally as important as the "probable cause," in determining whether there was indeed a "retaliatory prosecution."

The "key defendant is the person who allegedly prompted the prosecutor's decision. The intervening decision of the third-party prosecutor widens the causal gap between the defendant's animus and the plaintiff's injury." *Reichle*, 132 S. Ct. at 2095. In this case, it would be more proper to label Detective Wojciechowski as the key defendant. It was Detective Wojciechowski

---

[3] Vanderklock's Amended Complaint [ECF Doc. 22] appears to only asserts malicious and retaliatory prosecution claims against Kieser under Pennsylvania Law. *See* Sixth and Seventh Claims. These claims are barred by the FTCA. However, out of an abundance of caution, Kieser will address these claims as if he had pled them under *Bivens*.

who had the power to recommend charges and to induce the local district attorney to bring criminal charges.  Similar to *Hartman* and *Reichle*, the causal connection between Detective Wojceichowski and the District Attorney's decision to prosecute Vanderklok and any alleged retaliatory act by Kieser is too tenuous.

And, when one factors in presumption of regularity accorded to prosecutorial decisionmaking, absent direct evidence of inducement by the "key defendant" to prosecute, Vanderklok's retaliatory prosecution must fail as a matter of law.  *Reichle*, 132 S. Ct. at 2096 (citation omitted).

There is not one scintilla of evidence that Kieser induced the prosecutor to bring any charges.  Even if Vanderklok can show that Kieser had some personal animus toward him, that fact alone, cannot defeat summary judgment on this claim. As the *Hartman* Court noted:

> Herein lies the distinct problem of causation in cases like this one. Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise. Moreover, to the factual difficulty of divining the influence of an investigator or other law enforcement officer upon the prosecutor's mind, there is an added legal obstacle in the long-standing presumption of regularity accorded to prosecutorial decision-making. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-490, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999); *United States v. Armstrong*, 517 U.S. 456, 464-466, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). And this presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal, *see Wayte v. United States*, 470 U.S. 598, 607-608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985).

547 U.S. at 263.  Vanderklok has no evidence that Kieser initiated and induced the District Attorney to initiate his criminal prosecution.  Therefore, Vanderklok's retaliatory prosecution claim fails as a matter of law.

Further, members of the Philadelphia Police Department determined that there was sufficient probable cause to arrest Vanderklok based on Kieser's statements.  *See* September Opinion, ECF Doc. 42.  This finding of  probable cause negates any violation of the Constitution.

*Reichle*, 132 S.Ct. at 2093. Even if this Court finds, under the current status of the case, that probable cause is an issue for the jury, there are no facts showing any amount of "inducement" by Kieser on the District Attorney's decision to prosecute Vanderklok. Thus, viewing the facts in the light most favorable to Plaintiff, Vanderklok cannot show that Kieser violated a clearly established constitutional right. As such, Vanderklok's First Amendment claims must be dismissed with prejudice.

      C.     **The Search And Seizure Of Vanderklok At The TSA Security Checkpoint Was Necessary, Reasonable, And Lawful Under The Circumstances.**

Plaintiff brings a claim for unlawful search and seizure under the Fourth Amendment. Plaintiff's unlawful search claims fail because the search of Vanderklok's possessions was reasonable under the totality of the circumstances. Therefore, any claim that Vanderklok was the subject of an unreasonable search by Kieser or any TSA Official must be dismissed with prejudice.

Preventing terrorist attacks on airplanes is of paramount importance. Airport checkpoints operate as an effective means to protect and serve the public interest. For these reasons, airport security screenings are permissible under the administrative search doctrine of the Fourth Amendment. *George,* 738 F.3d 562, 573-74 (3d Cir. 2013) (*citing United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006), cert. denied, 549 U.S. 945 (2006)).

In *George*, the passenger had anti-American propaganda and Arabic flash-cards that contained the words "to wound", "to kill",  and "to kidnap" – among others. *George*, 738 F.3d. at 562. These items are arguably less dangerous than what appeared to be a "pipe bomb," but the Third Circuit believed that even these written materials provided the TSA Screening Official reason to increase the level of scrutiny and conduct a more probing investigation. *George*, 738 F.3d at 579. This level of scrutiny not only included a closer examination of George's

belongings but his brief detention of approximately fifteen (15) minutes. *Id.* And, when "Officer Rehiel of the Philadelphia Police Department placed George in handcuffs and took him away the administrative search ended." *George*, 738 F.3d at 578. Similar to the circumstances in *George*, there are no facts showing that Kieser conducted an unlawful search of Vanderklok or his belongings.

In the case at bar, Vanderklok undisputedly entered the Philadelphia Airport carrying a hand-crafted plastic pipe that contained an electronic timing device. *See* Vanderklok Dep. at 37:24-38:6; 66:18-24; Wojciechowski Dep. at 27:23-28:14. Devices identical to the plastic pipe being carried by Vanderklok have been used by terrorists as explosive devices in the past. *See* Wojciechowski Dep. at 29-31. The plastic pipe, along with the timing device, raised the threat level, creating the need to conduct a more intensive administrative search of Vanderklok's belongings. The search of Vanderklok's items was lawful and justified.

The search and detention of Vanderklok by the other TSA Screening Officials was reasonable based on the totality of the circumstances. First, Vanderklok brought a PVC pipe, which looked like a "pipe bomb," into the Philadelphia Airport security checkpoint. Vanderklok Dep. at 66:5-7; Wojciechowski Dep. at 27:23-28:14; Am. Complaint, ECF Doc. 22, at ¶27. During the entire screening process (which took approximately 15 to 20 minutes), Vanderklok was never restrained, detained, or handcuffed by Kieser. Vanderklok Dep. at 104:10-13; 120:8-10. And, after the TSA agents inspected the content of Vanderklok's bag (PVC pipe, PowerBars™, watch, and heart rate-monitor), his belongings were returned to him, undisturbed. Vanderklok Dep. at 100:1-4; 176:5-23. At that point, Vanderklok believed that he was not under arrest and was free to travel to proceed to his departure gate. Vanderklok Dep. at 119:22-

120:7. When Vanderklok received all of his belongings, the administrative search by the TSA officials ended, just like it did in *George*.

There are just no facts to support any claim that Vanderklok was subjected to an unlawful administrative search by any TSA Official. Thus, Vanderklok's claim for unlawful search and seizure under the Fourth Amendment must be dismissed with prejudice.

**D.      Vanderklok's Malicious Prosecution Claim Under The Fourth Amendment Must Be Dismissed with Prejudice.**

Plaintiff's malicious prosecution claim fails because (1) Kieser did not initiate the prosecution against Vanderklok; (2) there was probable cause to arrest Vanderklok; and (3) there are no facts showing that Kieser acted with any malice.[4] For these reasons, and those set forth below, this claim should be dismissed with prejudice.

It is well-established that Plaintiff's federal malicious prosecution claim is to be analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation omitted) (finding that when "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment must be the guide for analyzing these claims").

To prove malicious prosecution, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty

---

[4] As noted above (*see* footnote 3, *supra*), Vanderklok's Amended Complaint [ECF Doc. 22] appears to only asserts a malicious prosecution claim against Kieser under Pennsylvania Law. As such, this claim is barred by the FTCA. However, Kieser will address this claim, out of an abundance of caution, as though the claim was pled under *Bivens.*

consistent with the concept of seizure as a consequence of a legal proceeding.  *Johnson v. Knorr*, 477 F. 3d 75, 82 (3rd Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Vanderklok is unable to meet his burden under a malicious prosecution claim.

First, after Kieser notified the Philadelphia Police Department of the incident, he did not further detain, arrest, or recommend any criminal charges be lodged against Vanderklok.  After more than twenty (20) minutes of "back and forth" between Vanderklok and Philadelphia Police Officer Pinkney,  Sergeant Mack instructed Pinkney to escort Vanderklok to the police sub-station for further questioning.  *See* Pinkney Dep., at 27-29; 37:11-15;174-7-24; 175:1-6. Detective Wojciechowski conducted his own investigation and made an independent determination that there was sufficient probable cause to recommend criminal charges against Vanderklok.  *See* Wojciechowski Dep., at 42:6-18; 51:12-24.

Based on Detective Wojciechowski's independent investigation and recommendation, the District Attorney's Office charged Vanderklok.  The District Attorney's Office even added a criminal charge against Vanderklok that was not recommended by Detective Wojciechowski. Wojciechowski Dep. at 42:9-18;57:12-24; 156-157.  And, Plaintiff admits that Kieser did not initiate the prosecution against him.  *See* Plaintiff's Response to the Motion to Dismiss, ECF Doc. 31, at 20 ("Defendants Pinkney, Flaville, and Wojciechowski initiated the criminal proceedings against Plaintiff.").

In sum, Sergeant Mack made the decision to arrest Vanderklok.  Detective Wojciechowski, along with the District Attorney's office, made the decision to file charges against Vanderklok.  *See* Detective Wojciechowski at 42:6-18.  Vanderklok's arrest and prosecution were based on the independent decisions of Philadelphia Police Department supervisors, detectives, and the Philadelphia District Attorney's Office.  *See* Wojciechowski

Dep. at 42:9-18;57:12-24; 156-157.  For these reasons alone, Vanderklok's malicious prosecution claim must fail.

Second, the arrest of Vanderklok was based on probable cause. *See* September Opinion, ECF Doc. 43.  A malicious prosecution claim cannot proceed unless a plaintiff "come[s] forward with evidence of the absence of probable cause."  *Pritchett v. Warrender*, 546 Fed. App'x 66, 67 (3d Cir. 2013).

Further, "a malicious prosecution claim require[s] more than a false statement to prevail." *Pritchett*, 546 Fed. App'x, at 68.  In *Pritchett*, the Third Circuit affirmed the dismissal of the plaintiff's claims in a motion for judgment as a matter of law, finding that the plaintiff had failed to meet his burden to show that the defendant acted with malice.  546 Fed. App'x, at 68.  In *Pritchett*, plaintiff brought a malicious prosecution claim against a police detective.  Pritchett relied on a false statement that the police detective had made in an affidavit of probable cause to support evidence of malice.  *Id.* at 67.  The District Court rejected this argument, finding that the plaintiff had not come forward with legally sufficient evidence of malice.  *Id.*  The Third Circuit affirmed the dismissal of the plaintiff's claim, agreeing that the plaintiff needed more than a false statement in order to meet his burden under the malice requirement.  *Id.* at 67-68.  There are no facts which demonstrate that that Kieser acted with sufficient malice to give rise to a claim of malicious prosecution.

The only fact even remotely showing "malice" on the part of any TSA employee came from Vanderklok.  Vanderklok alleges that an unnamed TSA employee – who Vanderklok expressly states was *not* Kieser – said that someone "wants to make an example of" him.  *See* Vanderklok Dep. at 197:11 – 198:10.  This fact cannot be imputed to Kieser. *See Bistrian*, 696 F.3d at 366 (affirming that "vicarious liability is inapplicable to *Bivens*" suits).

Vanderklok's only admissible evidence of malice is Kieser's alleged false statement that Vanderklok uttered the word "bomb."  This is a disputed fact – **but an immaterial disputed fact**, based on the following reasons.

There is no evidence, nor could any inference be drawn, that Kieser knew that based on his notification to local police that Philadelphia Police Sergeant Mack would order Officer Pinkney to arrest Vanderklok.  There is no evidence in the record, nor could any inference be drawn, that Kieser knew that that Detective Wojciechowski would be called to even investigate this matter further.  There is no evidence, nor could any inference be drawn, that Kieser knew that Detective Wojciechowski would make an independent finding of probable cause and recommend charges be lodged against Vanderklok. And there is no evidence, nor could any inference be drawn, that Kieser knew that the District Attorney's Office would charge Vanderklok with any crimes. For these reasons, Vanderklok's malicious prosecution claim fails.[5]

Kieser's interaction with Vanderklok did not amount to an unreasonable search or seizure under the Fourth Amendment.  Nor did Vanderklok allege any facts showing that Kieser acted with malice or initiated the prosecution.  Thus, even when taking the facts in the light most favorable to Vanderklok, his Fourth Amendment claims must fail as a matter of law and summary judgment is appropriate.

## VI.   CONCLUSION

For the reasons set forth above, and viewing the facts in the light most favorable to Plaintiff Roger Vanderklok, there are no genuine issues of material fact and Plaintiff Roger

---

[5] To the extent that Plaintiff argues that Kieser is liable for testifying "falsely" at Vanderklok's criminal trial, Kieser is absolutely immune from any claim based on his testimony.  *Stackhouse v. Lanigan*, No. 11-7554, 2013 WL 6145665, at *6 (D.N.J. Nov. 21, 2013); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-06 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983).

Vanderklok's claims fail as a matter of law. As such, Defendant Charles Kieser's motion for summary judgment should be granted.

Date: June 27, 2016

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation

By:    /s/ Jeffrey M. Scott
Jeffrey M. Scott, Esquire
Jordan L. Fischer, Esquire

23

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified a copy of Defendant Kieser's Answer to Plaintiff's Amended Complaint was filed on the ECF's Court's Filing System and is available for downloading and reviewing by all counsel of record.

**NICHOLAS A. CUMMINS**
BENNETT BRICKLIN & SALTZBURG, LLP
1601 MARKET ST., 16TH FL
PHILADELPHIA, PA 19103
215-561-4300
215-561-6661 (fax)
cummins@bbs-law.com

**THOMAS B. MALONE**
THE MALONE FIRM LLC
1650 ARCH ST SUITE 1903
PHILADELPHIA, PA 19103
215-627-0700
TMALONE@THEMALONEFIRM.COM

**ANNE B. TAYLOR**
United States Attorney's Office
401 Market Street 4th Floor
PO Box 2098
Camden, NJ 08101
856-757-5031
anne.taylor@usdoj.gov

Date: June 27, 2016

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation

By:  _/s/ Jeffrey M. Scott_
Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Jordan L. Fischer, Esquire
jfischer@archerlaw.com

ONE LIBERTY PLACE
THIRTY-SECOND FLOOR
1650 Market Street
Philadelphia, Pennsylvania  19103-7393
Telephone:     (215) 963-3300
Facsimile:      (215) 963-9999
*Attorneys for TSA Supervisor Charles Kieser*

114365153v12

24