IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Roger Vanderklok,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | Docket No. 15-cv-00370 |

### PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff, Roger Vanderklok ("Vanderklok" or "Plaintiff") hereby submits the following Pretrial Memorandum pursuant to Local Rule 16.1 and the Final Amended Scheduling Order of August 3, 2016.

THE MALONE FIRM

Thomas B. Malone, Esquire
tmalone@themalonefirm.com

1650 Arch Street
Suite 2501
Philadelphia, PA 19103
Telephone:(215) 987-5200
*Attorney for Roger Vanderklok*

I. STATEMENENT OF THE CASE AND JURISDICTION

Plaintiff brings this suit seeking money damages for an alleged unlawful seizure, arrest, and prosecution as a result of plaintiff exercising his Constitutional Rights on January 26, 2013, at Philadelphia International Airport ("Airport").

Plaintiff claims that at the direction of the Charles Kieser ("Defendant"), he was subjected to an unreasonable/unlawful seizure at the TSA security checkpoint. Plaintiff further claims that after a search showed that he had nothing illegal or dangerous, he requested to file a complaint with the TSA based on the Defendant's behavior. Vanderklok then alleges that Defendant falsely reported to Philadelphia Police that Vanderklok threatened to bring a bomb into the Airport. Defendant denies the allegations but admits that the video shows his trial testimony to be false.

The only claims remaining to be tried are a *Bivens* claim for malicious prosecution and a *Bivens* claim for retaliation under the First Amendment.

II. STATEMENT OF FACTS

1. Plaintiff Roger Vanderklok, a 56-year old Architect at the time of the events that are the basis of this lawsuit, was detained, handcuffed, and jailed for over 23 hours in retaliation for something Mr. Vanderklok said to him. In short – the defendant made up a story that involved Mr. Vanderklok becoming irate, pointing in his face and saying something that included the word "bomb" (the alleged words changed as time went on).

2. Mr. Vanderklok, a married father of three children, was attempting to travel from Philadelphia to Miami in order to run in a Marathon the following day. In the carry-on bag he packed were, amongst other things, a heart-monitoring watch in a PVC case, and Power Bars. He had no weapons, prohibited liquids, sharp items, or anything at all that was prohibited

by TSA rules. He said good-bye to his wife and told her he would call her when he landed at his destination – which was his custom when he travelled by air.

3. At Philadelphia International's Security Screening checkpoint, he was stopped and detained by TSA screeners and repeatedly questioned about the contents of his bag. He politely answered all their questions and invited the TSA personnel to inspect his bag and its contents. After a thorough check of his bag, TSA personnel were sure that there was nothing improper, dangerous, or illegal in his bag.

4. During the time that they were checking his bag, defendant was rude and accusatory toward Mr. Vanderklok.

5. Mr. Vanderklok did not appreciate the way he was spoken to by the defendant, Mr. Kieser, and told him that and that he wanted to file a complaint and asked for a complaint form.

6. It was after this request/statement that Defendant had an Agent "watch" Mr. Vanderklok while he called Philadelphia Police dispatch, reported a bomb threat and had Mr. Vanderklok arrested. Mr. Vanderklok was detained and paraded through the Airport by a Philadelphia Police Officer to the Airport Police Station where he was jailed for countless hours. Handcuffed behind his back, he was then put into a vehicle and transported to a Philadelphia Police station outside of the Airport where he was jailed again.

7. While Mr. Vanderklok languished in jail cells, without access to a telephone, his wife started to worry. His flight had landed in Miami and she had not heard from her husband. After several attempts to reach him on his cell phone over the course of many hours, Elanor, fearing the worst, started to make calls to file a "Missing Person Report." With Mrs. Vanderklok panicking and Mr. Vanderklok toiling in a jail cell, the Defendant

was telling Philadelphia Police different versions of the same event – but trying to make sure that Mr. Vanderklok's ordeal would continue.

8. According to the Police paperwork, defendant told the first Police Officer, Officer Pinkney, who was notified by dispatch of the "bomb threat," that Mr.Vanderklok had said to him: "[A]nybody can bring a bomb and you wouldn't even know it." Later, he told the Detective that the words were: "I could bring a bomb through here any day of the week and you would never find it."

9. Based solely on the report of Defendant, Mr. Vanderklok was charged with crimes, including "Threatening the Placement of a Bomb," "Terroristic Threats," and "Disorderly Conduct." Bail was set at $40,000.00. He was forced to post bail and inform his employer of the criminal charges pending against him. And he was subsequently under the restrictions of all defendants on bail in Philadelphia (which include travel restrictions).

10. At Mr. Vanderklok's criminal trial, the defendant testified to a third version of the words Mr. Vanderklok allegedly said at the Screening Area. Under oath in Municipal Court, the Defendant testified that his attention was directed to Mr. Vanderklok when Mr. Vanderklok became "irate" and started angrily waving his arms and hands in the air. The Defendant demonstrated this for the Court. The Defendant testified that, whe he saw the irate physical gestures, he approached Mr. Vanderklok, who eventually stated: "Let me tell you something – I'll bring a bomb through here any day that I want … you'll never find it."

11. The Defendant testified to additional facts at the criminal trial. The Defendant testified that "the passenger [Mr. Vanderklok] put his finger in my face." He went on to demonstrate for the court. He testified that Mr. Vanderklok's finger came within six to eight inches of his face. He testified that Mr. Vanderklok moved his finger towards and away from

his face approximately six times.

12. Philadelphia International Airport has security cameras placed throughout the Security checkpoints and screening areas. Those cameras were functional and recording on January 26, 2013. The video footage acquired by counsel before the criminal trial clearly shows the actions and movements of Mr. Vanderklok at the Security Checkpoint.

13. Since the charges against Mr. Vanderklok were misdemeanors there was no preliminary hearing. According to his testimony, the Defendant did not watch the video footage before testifying against Mr. Vanderklok in the Municipal Court criminal trial. The video cameras captures the entirety of Mr. Vanderklok's time at the security checkpoint that day. Mr. Vanderklok does not become irate and wave his arms or hands. He does not point his finger in anyone's face. He does not appear irate at any point. The video footage depicts a calm man engaged in quiet conversation with TSA personnel who are searching his bag.

14. The District Attorney's Office had two witnesses present at the trial – the Defendant and Philadelphia Police Officer Raymond Pinckney. They called only Kieser in their case-in-chief. No other evidence was submitted. After hearing the testimony of Kieser, the Honorable Judge Stack granted a Defense Motion for Judgment of Acquittal. The Court concluded that, viewing the State's evidence in its entirety, direct and/or circumstantial, in the light most favorable to the Commonwealth, Mr. Vanderklok could not be found guilty of any of the criminal charges. Mr. Vanderklok denies doing and saying that to which Kieser testified and reported to the Police. The video surveillance footage supports Mr. Vanderklok's denials.

15. Mr. Vanderklok was never interviewed by Police Personnel. When Officer Pinckney arrived, he told the Officer that he wanted to file a complaint against the Defendant.

16. When he was brought to the substation at the Airport and to Southwest

Detectives, Mr. Vanderklok was not interviewed, pre-interviewed, or questioned in any way (beyond his biographical information). He was fingerprinted and photographed. He was not read Miranda warnings or interrogated.

17. Mr. Vanderklok subsequently suffered from panic attacks, anxiety, issues at work, and ED, amongst other things. He was let go from his position and sought other employment.

III. WITNESS
   a. Fact Witnesses
       i. Roger Vanderklok
       ii. Eleanor Vanderklok, Wife of Roger Vanderklok
       iii. Renee Tufts, Philadelphia Airport Security Manager
       iv. Dr. Irving Hirsch, Roger Vanderklok's Urologist
       v. Defendant Charles Kieser
       vi. Philadelphia Police Detective Michael Wojciechowski
       vii. TSA Employee Daniel Moser
       viii. TSA Employee David Jordan
       ix. TSA Employee Don Johnson
   b. Expert Witnesses
       None.

*Plaintiff reserves the right to call witness not identified in this Memorandum in rebuttal to a witness called by the Defendant. Plaintiff further reserves the right to call a witness who becomes known to him after this Pre-Trial Memorandum is*

*executed, if that witness is necessary to Plaintiff's case-in-chief or in response to Defendant's witnesses*

IV. EXHIBIT LIST

| | | |
|---|---|---|
| | P-1 | Philadelphia Airport Video of Incident |
| | P-2 | Transcript of Roger Vanderklok's Criminal Trial |
| | P-3 | Philadelphia Police Department Paperwork Related to Incident |
| | P-4 | Deposition of Roger Vanderklok |
| | P-5 | Deposition of Detective Michael Wojciechowski |
| | P-6 | Deposition of Officer Raymond Pinkney |
| | P-7 | Deposition of Defendant Charles Kieser |
| | P-8 | Plaintiff's Original Complaint |
| | P-9 | Answer to Original Complaint |
| | P-10 | Plaintiff's Amended Complaint |
| | P-11 | Answer to Amended Complaint |
| | P-11 | Defendant's Responses to Plaintiff's Interrogatories |
| | P-12 | Defendant's Answers to Plaintiff's Request for Production of Documents |
| | P-13 | Photograph of Plaintiff's Carry-On Items |
| | P-14 | Interview Record of Charles Kieser by Det. Wojciechowski |
| | P-15 | FTCA Administrative Form dated February 19, 2104 |
| | P-16 | TSA Employee Statement by Daniel Moser |
| | P-17 | TSA Employee Statement by Jasmin Bullock |
| | P-18 | TSA Employee Statement by David M. Jordan |

P-19    Plaintiff's Answers to Defendant's Request for Production of Documents

V.    ESTIMATED LENGTH OF TRIAL – 3 days

Date:   August 12, 2016

/s/ Thomas B. Malone

Thomas B. Malone, Esquire
tmalone@themalonefirm.com

1650 Arch Street
Suite 2501
Philadelphia, PA 19103
Telephone:(215) 987-5200
*Attorney for Roger Vanderklok*

**CERTIFICATE OF SERVICE**

I, Thomas B. Malone, hereby certify that the forgoing Memorandum was electronically filed with the Clerk of Court's Office on August 12, 2016, using the CF/ECF system, which sends notification of the filing of the same to all counsel of record in this matter.

/s/ Thomas B. Malone

Thomas B. Malone, Esquire
tmalone@themalonefirm.com

1650 Arch Street
Suite 2501
Philadelphia, PA 19103
Telephone:(215) 987-5200
*Attorney for Roger Vanderklok*