**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROGER VANDERKLOK,

                *Plaintiff*,

   v.

UNITED STATES OF AMERICA, *et al.*,

                *Defendants*.

CIVIL ACTION
NO. 15-00370

**PAPPERT, J.**                                       **AUGUST 16, 2016**

## MEMORANDUM

      Roger Vanderklok ("Vanderklok") sued Transportation Safety Administration ("TSA") agent Charles Kieser ("Kieser") alleging various constitutional and state tort law violations stemming from Vanderklok's arrest at the Philadelphia International Airport. When attempting to pass through a TSA security checkpoint, Vanderklok placed his carry-on bag, which contained a digital watch encased in a section of plastic pipe, through the x-ray screening device. After noticing what appeared to be an explosive device inside Vanderklok's bag, TSA agents, including Kieser, conducted additional screening on the bag.

      The parties dispute much of what happened after that. Kieser contends that Vanderklok grew agitated while TSA agents searched his bag. He claims that Vanderklok told him that he could bring a bomb into the airport "and you wouldn't even know it." Kieser then reported the statement to the Philadelphia Police. Vanderklok was arrested and subsequently charged with threatening the placement of a bomb, terroristic threats and disorderly conduct. Vanderklok asserts that he never made that statement, and that Kieser fabricated the story after Vanderklok

1

told Kieser he wished to file a complaint over Kieser's allegedly aggressive and inappropriate conduct during the search of his bag.

Before the Court is Kieser's motion for summary judgment on the three remaining claims against him: First Amendment retaliatory prosecution, Fourth Amendment malicious prosecution and Fourth Amendment unconstitutional search and seizure. Vanderklok does not oppose Kieser's motion with respect to his Fourth Amendment unconstitutional search and seizure count. The Court accordingly grants Kieser's motion with respect to that count only. For the reasons that follow, the Court denies Kieser's motion with respect to Vanderklok's First Amendment retaliatory prosecution and Fourth Amendment malicious prosecution claims.

## I.

On January 26, 2013 Vanderklok arrived at the Philadelphia International Airport for a flight to Miami, Florida to participate in a half-marathon. (Pl.'s Am. Compl. ¶ 25, ECF No. 22.)[1] Vanderklok entered the TSA security checkpoint and placed his carry-on bag through the x-ray screening device. (Def.'s Stmt. of Facts ("Def.'s SMF") ¶ 2; Pl.'s Resp. to Def.'s SMF ("Pl.'s SMF") ¶ 2, ECF No. 75; Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. B, ECF No. 69.) The bag contained a digital heart-monitoring watch and Power Bars encased in a piece of plastic PVC pipe. (Def.'s SMF ¶ 2; Pl.'s SMF ¶ 2; Def.'s Mot., Ex. B.) The TSA screeners conducted an additional search of Vanderklok's bag because they "saw the heart monitoring watch and the Power Bars and thought they looked like the components of an explosive device." (Def.'s SMF ¶ 3; Pl.'s SMF ¶ 3.)

Kieser, a TSA screening supervisor, observed the additional search of Vanderklok's carry-on and approached Vanderklok to ask him about the contents of his bag. (Def.'s SMF

---

[1] The Court previously detailed the underlying events and procedural history in its September 30, 2015 Memorandum, *see Vanderklok v. United States*, 140 F. Supp. 3d 373 (E.D. Pa. 2015), and recounts only those facts necessary to resolve Kieser's motion.

¶¶ 4–5; Pl.'s SMF ¶¶ 4–5.)  Kieser contends that during their conversation, "Vanderklok appeared agitated."  (Def.'s SMF ¶ 6.)  Vanderklok claims that "he was not frustrated or upset" and that "[i]t was [Kieser] who was agitated."  (Pl.'s SMF ¶ 6.)

Kieser then called Philadelphia Police Officer Raymond Pinkney ("Pinkney"), telling him that Vanderklok told Kieser "I could bring a bomb through here any day I want and you'll never find it."[2]  (Def.'s SMF ¶ 7.)  Vanderklok denies that he ever made this statement and that Kieser instead concocted this "untruth" after Vanderklok asked him "for a complaint form so that he could complete it and detail what he believed was inappropriate and aggressive behavior."  (Pl.'s Am. Compl. ¶ 33; Pl.'s SMF ¶ 8; Pl.'s Opp. to Def.'s Mot. ("Pl.'s Opp.") at 2, ECF No. 70.)

Pinkney and Philadelphia Police Sergeant Mack[3] responded to Kieser's call, escorted Vanderklok to the Philadelphia Police station at the airport and placed him in a cell.  (Def.'s SMF ¶¶ 19–20, 24; Pl.'s SMF ¶¶ 19–20, 24.)  After Pinkney provided Philadelphia Police Detective Michael Wojciechowski with a verbal statement of the incident, Wojciechowski recommended that the District Attorney charge Vanderklok with disorderly conduct and placement of a bomb.  (Def.'s SMF ¶ 29; Pl.'s SMF ¶ 29.)  The District Attorney approved those charges and added a charge of terroristic threats.  (Def.'s SMF ¶ 28; Pl.'s SMF ¶ 28.)  Vanderklok was then handcuffed and transported to a West Philadelphia police station where he was placed in a cell before posting bond.  (Def.'s SMF ¶¶ 30–21; Pl.'s SMF ¶¶ 30–31.)  At

---

[2]      Pinkney's incident report reflects that Kieser told him that Vanderklok said "anybody can bring a bomb in here and nobody would know."  (Def.'s Mot., Ex. B.)  Philadelphia Police Officer Michael Wojciechowski's subsequent arrest report states that Vanderklok told Kieser: "I could bring a bomb through here any day of the week, and you would never know it."  (*Id.*)  The Court's decision remains the same regardless, and neither Vanderklok nor Kieser contend that the difference between any of the statements is material to the Court's analysis.

[3]      The parties do not identify Sergeant Mack's first name.

3

his criminal trial on April 8, 2013, a Philadelphia Common Pleas Court judge granted a defense motion for judgment of acquittal.  (Def.'s SMF ¶ 32; Pl.'s SMF ¶ 32.)

## II.

Vanderklok filed this lawsuit on January 23, 2015.[4]  (ECF No. 1.)  On May 27, 2015 Vanderklok filed an Amended Complaint alleging various constitutional and tort claims against nine defendants involved in his arrest and prosecution.  Those sued included Kieser, the United States of America, the TSA, the City of Philadelphia, Philadelphia Police Officers Pinkney, Wojciechowski and Kenneth Flaville, Department of Homeland Security Secretary Jeh Johnson and former TSA Administrator John S. Pistole.  The parties stipulated to dismiss all claims against the TSA, Secretary Johnson and Pistole, and all constitutional claims against the United States.  (ECF No. 41.)  The Court granted motions to dismiss all claims against the City of Philadelphia and the three individual police officers, *see Vanderklok*, 140 F. Supp. 3d at 373, all remaining claims against the United States, *see Vanderklok v. United States*, et al., 142 F. Supp. 3d 356 (E.D. Pa. 2015), and all state tort claims against Kieser,[5]  (ECF No. 85).

Kieser, the sole defendant remaining in the case, now seeks summary judgment on Vanderklok's only remaining claims—First Amendment retaliatory prosecution, Fourth Amendment malicious prosecution and Fourth Amendment unconstitutional search and seizure. He argues that Vanderklok's First Amendment retaliatory prosecution claim fails because

---

[4]     By Order dated July 23, 2015, this case was reassigned from Judge William H. Yohn.  (ECF No. 35.)

[5]     On August 5, 2016 the Court granted the United States' motions to substitute itself for Kieser with respect to the state law tort claims and to dismiss those claims against Kieser because he was acting within the scope of his employment at the time of the alleged incident.  (ECF No. 85.)  Further, the Court previously held that qualified immunity protects the individual police officers from liability because they were entitled to rely on Kieser's recitation of the incident to establish probable cause to arrest Vanderklok.  *See Vanderklok*, 140 F. Supp. 3d at 384–85.

*Bivens*[6] does not apply in that context and that Vanderklok's Fourth Amendment malicious

prosecution claim must be dismissed primarily because Kieser did not initiate the prosecution.

Vanderklok opposes the motion, arguing that *Bivens* does extend to First Amendment retaliation

claims.  He also contends that there are sufficient facts in the record to demonstrate that Kieser

initiated the prosecution against him in violation of his Fourth Amendment rights.  (*See*

*generally* Pl.'s Opp.)  The Court heard oral argument on Kieser's motion on August 2, 2016,

(ECF No. 81), and on August 9 entered an Order granting Kieser's motion with respect to

Vanderklok's Fourth Amendment unconstitutional search and seizure claim and denying it with

respect to his First Amendment retaliatory prosecution and Fourth Amendment malicious

prosecution claims.  (ECF No. 89.)  This Memorandum explains the Court's decision.

## III.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the

evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where

there is insufficient record evidence for a reasonable factfinder to find for the plaintiff.  *Id.* at

252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Id.*

---

[6]       In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court of the United States recognized a private cause of action to recover money damages against an individual acting under color of federal law for violations of constitutional rights.  "*Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials."  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004).

When ruling on a motion for summary judgment, the Court may only rely on admissible evidence.  *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999).  A Court must view the facts and draw all reasonable inferences in favor of the nonmoving party.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## IV.

Kieser argues that he is entitled to judgment as a matter of law on Vanderklok's First Amendment retaliation claim because: (1) such a cause of action does not exist under *Bivens*; and (2) even if it does, he has qualified immunity because the cause of action was not "clearly established" at the time of the incident.  (Def.'s Mot. at 12–17; Oral Arg. 42:9–44:4, ECF No. 81.)

In *Paton v. La Prade*, 524 F.2d 862, 869 (3d Cir. 1975), the Third Circuit Court of Appeals for the first time addressed whether, "if the facts adduced at trial establish that [plaintiff's] first amendment rights have been infringed [by a federal officer], there is a cause of action for damages implied from the Constitution to redress that infringement."  The court held that there was such a right: "[w]ere there no cause of action for federal infringement of first amendment rights, an aggrieved individual could seek damages for violations of his first amendment rights by state officials, 42 U.S.C. § 1983, but not by federal officials. There is no reason to allow federal officials to act with impunity in this context and to bar state officials." *Id.* at 870.  Accordingly, it held "the extension of the Bivens rule to violations of first amendment rights to be both justifiable and logical."  *Id.*

6

The Court reiterated that holding six years later in *Milton v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981), stating that if a plaintiff alleging a First Amendment retaliation *Bivens* claim "were able to prove an infringement of his first amendment right of access to the courts, he would successfully state a cause of action for damages arising under the constitution." *Id.* (citing *Paton*, 524 F.2d at 869–70). The court recognized that *Paton* stood for the proposition that "a federal cause of action for damages may be implied directly from the first amendment" even though the Supreme Court of the United States had, until that point, not directly decided the issue. *Id.* at 374 n.5.

In *Hartman v. Moore*, 547 U.S. 250, 256 (2006), the Supreme Court addressed the viability of William Moore's *Bivens* First Amendment retaliation claim. In that case, Moore filed a *Bivens* action against a federal prosecutor and postal inspectors, arguing that they had "engineered his criminal prosecution in retaliation for criticism of the Postal Service [in violation of] the First Amendment." Defendants filed a motion for summary judgment, arguing that they were entitled to qualified immunity because they had probable cause to criminally charge Moore. After the district court denied the motion and the Court of Appeals for the District of Columbia Circuit affirmed, defendants appealed to the United States Supreme Court, arguing that the "absence of probable cause should be an essential element" of Moore's First Amendment retaliation claim. *Id.* at 257.

The Supreme Court began its analysis by recognizing that "[o]fficial reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, [ ] and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Id.* at 256 (citations and internal quotation marks omitted).

Accordingly, it stated that "[w]hen the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." *Id.* (citation omitted).

After discussing what a "*Bivens* plaintiff must prove" in a First Amendment retaliation claim, *id.* at 261, the Supreme Court reversed the Circuit Court, holding that Moore failed to demonstrate an essential element—the absence of probable cause. *Id.* at 265–66.  Such a requirement was necessary to establish "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury." *Id.* at 261.   The Court added that "if [Moore] can show that the prosecutor had no probable cause, the claim of retaliation will have some vitality." *Id.* at 265.  The Supreme Court accordingly reversed and remanded for further proceedings consistent with that opinion.  *Id.* at 266.

In *George v. Rehiel*, 738 F.3d 562, 567 (3d Cir. 2013), TSA officers detained Nicholas George, who passed through security at the Philadelphia Airport with Arabic-English flashcards. Although some of the cards had basic vocabulary such as "nice," "sad," and "cheap," others had words like "bomb," "terrorist," "explosion," "kill," "an attack," and "to target."  *Id.* at 567. George also possessed a book critical of United States foreign policy.  *Id.*  Three TSA officials— two screeners and a screener supervisor—detained George for additional screening and interrogation.  *Id.* at 568.  George alleged that the TSA officials subjected him to aggressive interrogation before turning him over to a Philadelphia police officer and two Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force officials for further interrogation.  *Id.*  George was eventually released without arrest.  *Id.*

George sued the three TSA officials, the Joint Task Force officials and the Philadelphia police officer for violations of his First and Fourth Amendment rights.  *Id.* at 568–69.  He claimed that the defendants violated: (1) his Fourth Amendment rights by subjecting him to an

unreasonable search and seizure; and (2) his rights under the First Amendment by retaliating against him for possessing Arabic-language flashcards and a book critical of the United States. *Id.* at 568–69.  The district court denied defendant's motion to dismiss, explaining that "the amended complaint alleges claims for relief that are 'plausible on [their] face.'"  *Id.* at 569 (citations omitted).  The Third Circuit reversed, holding that the federal officials acted reasonably in detaining George for further investigation and did not violate his Fourth Amendment rights.  Further, it held that since the officers' search and questioning was reasonable, it was "hard-pressed to find that it could result in a First Amendment retaliation claim on this record."  *Id.* at 586 (citing *Hartman*, 547 U.S. at 250).

Notably, the Third Circuit (like the Supreme Court in *Hartman*) never questioned the applicability of *Bivens* to First Amendment retaliation claims.  To the contrary, it recognized that although the Supreme Court has not explicitly extended *Bivens* to all First Amendment claims, "it does appear that the [Supreme] Court has held that there is a *Bivens* cause of action for First Amendment retaliation claims."  *George*, 738 F.3d at 585 n.24 (discussing *Hartman*, 547 U.S. at 250).  Relying on *Hartman*, the Third Circuit stated that "we will proceed on the assumption that there is a *Bivens* cause of action for First Amendment retaliation claims."  738 F.3d at 585 n.24; *see also Bistrian v. Levi*, 696 F.3d 352, 376 n.9 (3d Cir. 2012) ("Our Court, however, relying on *Bivens*, has held that 'a federal cause of action for damages may be implied directly from the [F]irst [A]mendment.'") (quoting *Milhouse*, 652 F.2d at 374; *Paton*, 524 F.2d at 869–70).

Other circuits have similarly allowed First Amendment retaliation claims to proceed pursuant to *Bivens*.  *See, e.g.*, *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (affirming district court's denial of defendant's motion for summary judgment on First Amendment retaliation claim under *Bivens* "because the facts and reasonable inferences allege that

[defendant] violated [plaintiff's] constitutional right to be free from retaliation for exercising his

right to expression"); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 675 (2d Cir. 2013) (stating that the

Supreme Court in *Hartman* "reiterated the general availability of a *Bivens* action to sue federal

officials for First Amendment retaliation");[7] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967 (9th

Cir. 2009) ("This court, however, has held that *Bivens* authorizes First Amendment damages

claims.").  The Fourth Circuit Court of Appeals similarly recognized a First Amendment

retaliation claim under *Bivens* in *Tobey v. Jones*, 706 F.3d 379, 382 (4th Cir. 2013).  In that case,

plaintiff Aaron Tobey sued TSA officials, among others, claiming that they retaliated against

him in violation of his First Amendment rights.  Tobey alleged that TSA agents detained him and

called the police when he removed his shirt, revealing the text of the Fourth Amendment which

he had previously written on his chest.  *Id.* at 384.  Tobey alleged that throughout the interaction

with TSA officials he did not become agitated or threatening but "calmly [stated] that he wished

to express his view that TSA's enhanced screening procedures were unconstitutional."  *Id.*  The

district court denied the TSA agents' motion to dismiss, holding that there was a question of

whether they radioed for police assistance because of the constitutionally protected message

Tobey sought to convey.  *Id.* at 385.

The Fourth Circuit affirmed that decision, holding that "Mr. Tobey's complaint most

certainly sets forth a valid First Amendment retaliation claim."  *Id.* at 387.  The Fourth Circuit

not only recognized the existence of a First Amendment retaliation claim under *Bivens*, but also

held that the TSA agents were not entitled to qualified immunity because "it is crystal clear that

the First Amendment protects peaceful nondisruptive speech in an airport, and that such speech

---

[7]       *But see Tanvir v. Lynch*, 128 F. Supp. 3d 756, 770 (S.D.N.Y. 2015) (holding that *Bivens* does not recognize
First Amendment retaliation claim and that "*Hartman* is better read as assuming—not deciding—the question of
*Bivens'* availability in the First Amendment retaliation context").

cannot be suppressed solely because the government disagrees with it." *Id.* at 391; *see also infra*
Section IV.C.

Our court has also acknowledged a *Bivens* First Amendment retaliation claim. In
*Pellegrino v. U.S. Transp. Sec. Admin.,* No. 09-cv-5505, 2014 WL 1489939, at *4 (E.D. Pa. Apr.
16, 2014), *amended on reconsideration*, 2014 WL 3952936 (E.D. Pa. Aug. 12, 2014), the court
was confronted with facts strikingly similar to this case. Plaintiff Nadine Pellegrino sued two
TSA officers for First Amendment retaliatory prosecution and Fourth Amendment malicious
prosecution. Pellegrino's lawsuit arose from an incident in which she argued with TSA
screeners and was subsequently arrested and charged with a variety of criminal violations,
including making terroristic threats. *Id.* at *3. She claimed that the TSA screeners reported her
to the Philadelphia police and fabricated the nature of her interaction with them in retaliation for
her request to file a complaint with their supervisors. *Id.* at *2, *17. Defendants filed a motion
for summary judgment and argued, like Kieser does here, that the court "should not 'extend' the
*Bivens* remedy to the unique context of this case." *Id.* at *10. The court rejected that argument
and distinguished between First Amendment free speech or free exercise *Bivens* claims—which
the Supreme Court "has thus far declined to recognize," *id.* (citing *Ashcroft v. Iqbal*, 556 U.S.
662, 675 (2009); *Bush v. Lucas*, 462 U.S. 367, 368 (1983))—and First Amendment retaliation
claims, which "the Supreme Court in *Hartman* explicitly recognized." *Id.* (citing *Tobey*, 706
F.3d at 386). The court accordingly refused to "dismiss Plaintiff's First Amendment claim on
this ground." *Id.*

When presented with the issue of whether a First Amendment retaliation claim can be
asserted pursuant to *Bivens*, the Supreme Court of the United States, Third Circuit Court of

Appeals, other circuit courts and our court have all operated on the assumption that a plaintiff can in fact assert such a cause of action. This Court will do the same.

### A.

"Even if a plaintiff alleges a violation of a Constitutional right, *Bivens* remedies are context-specific and their reach does not automatically extend into all contexts and against all defendants." *Id.* The court in *Pellegrino* accordingly addressed whether the existence of another cause of action or any "special factors" weighed in favor of declining to infer a First Amendment retaliation claim under *Bivens*. *Id.* ("[I]f there exists an alternative mechanism providing for an effective substitute to a *Bivens* claim, [ ] or 'special factors counseling hesitation in the absence of affirmative action by Congress,' [ ] a *Bivens* rights of action should not be inferred.") (citations omitted).

The court held that the lack of an alternative "process for protecting [plaintiff's] interest" weighed in favor of recognizing a First Amendment retaliation claim under *Bivens*: "[any] alternative mechanisms are insufficient to supplant the Plaintiff's recognized *Bivens* remedies under the First and Fourth Amendments." *Id.* at *11. Particularly relevant to the court's analysis was that the Federal Tort Claims Act ("FTCA") barred Pellegrino's state-law claims, and that Pellegrino was unable to pursue a 42 U.S.C. § 1983 claim against a federal official.

Similarly here, granting Kieser's motion on the First Amendment claim would effectively insulate from liability a federal official who falsely accused a citizen of a crime merely because that citizen wished to file a complaint against the official. The FTCA forecloses Vanderklok's state tort claims against the United States and qualified immunity protects the individual police officers. Vanderklok's *Bivens* claims against Kieser, the sole remaining defendant and the source of the allegedly false accusation that led to Vanderklok's arrest, are the only claims

remaining.  Vanderklok's inability to pursue a remedy against any other defendant for Kieser's

alleged retaliation, or pursue a claim against Kieser under any statutory scheme, weighs in favor

of permitting his First Amendment retaliation claim to proceed.  *See id.* ("The lack of an

'elaborate, comprehensive scheme' providing remedies also weighs in favor of allowing a *Bivens*

suit in this context.").

The court in *Pellegrino* also considered whether "subjecting [TSA personnel] to possible

civil suits would dissuade them from performing their duties properly."  *Id.* at *12.  The court

stated that for the same reasons that other officers are given qualified rather than absolute

immunity, "the critical nature of the work performed by [TSA screeners] does not persuade the

Court to wholly preclude *Bivens* liability against them."  *Id.* (citing *Harlow v. Fitzgerald*, 457

U.S. 800, 809 (1982)).  The court continued: "[T]he right of a person being screened at an airport

to be free of retaliatory actions for speaking out is not diminished by the heightened security

interest at airport checkpoints."  *Id.* (citing *Tobey*, 706 F.3d at 393).  This "special factor"

accordingly also weighs in favor of recognizing Vanderklok's First Amendment retaliation claim

against Kieser.[8]

## B.

Vanderklok's First Amendment retaliation claim is premised on Kieser's retaliation in

response to a request to file a complaint with Kieser's supervisor.  Specifically, Vanderklok

contends that the First Amendment protects his request to file a complaint against Kieser and that

Kieser retaliated by: "(1) calling the police; and/or (2) fabricating the statement concerning the

bomb; and/or (3) communicating that lie repeatedly, including in writing in the Investigative

Interview Record with the Philadelphia Police."  (Pl.'s Opp. at 9.)  Taking all facts in the light

---

[8]      Such a holding does not minimize a TSA agent's ability to assert a qualified immunity defense, which does
not foreclose Vanderklok's claims against Kieser since, as discussed *infra* Section IV.C, Kieser allegedly violated a
clearly established constitutional right.

most favorable to Vanderklok, he is able to sustain a claim against Kieser for retaliation in response to protected speech.

A plaintiff claiming retaliation under the First Amendment must demonstrate: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). The record does not foreclose Vanderklok's ability to satisfy all three requirements at trial.

The First Amendment protects Vanderklok's request to file a complaint with Kieser's supervisor.  In *Pellegrino*, the court stated that it is "well-established law that Pellegrino was within her rights to report the [TSA screeners] to [their] supervisors for conduct she perceived to be inappropriate without facing retaliatory action."  2014 WL 1489939, at *17 ("[N]o less well established is the principle that government officials . . . may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity.") (citation and internal quotation marks omitted); *see Tobey*, 706 F.3d at 391 ("A bedrock First Amendment principle is that citizens have a right to voice dissent from government policies.").  Further, there are sufficient facts in the record to demonstrate that Kieser's retaliatory action "was sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296 (citation omitted); *see, e.g.*, *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) ("A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' and that threshold is very low: as we [have stated] . . . a cause of action is supplied by all but truly de minimis violations.") (citation omitted); *Montgomery v. Killingsworth*, No. 13-cv-256, 2015 WL 289934, at *9 (E.D. Pa. Jan. 22, 2015) (denying

defendant's motion for summary judgment and holding that handcuffing plaintiff in response to protected speech was sufficient to deter a person of ordinary firmness).

Lastly, there is a direct causal link between Vanderklok's constitutionally protected speech and Kieser's retaliatory conduct.  In order to establish the requisite causal connection, Vanderklok must prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).  If he can meet that burden, Kieser may defeat Vanderklok's First Amendment retaliation claim "by showing that [he] would have taken the same action even if the plaintiff had not engaged in the protected activity."[9]  *DeFlaminis*, 480 F.3d at 267 (3d Cir. 2007) (citation omitted); *see Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 793 (3d Cir. 2000) ("[T]he School Defendants may defeat Merkle's claim by establishing that it would have taken the same adverse action against Merkle even in the absence of her protected speech.").

Vanderklok satisfies this requirement since Kieser's call to Pinkney and alleged false report occurred within minutes of the request to file a complaint.  (Def.'s SMF ¶¶ 5, 14.) Further, assuming Vanderklok did not make any statement about bringing a bomb into the airport, Kieser cannot articulate any other legitimate, undisputed reason he would have reported Vanderklok to the police.  Rather, Kieser's entire defense is premised on a controverted issue of fact: whether Vanderklok made a statement about bringing a bomb through security.  Such a factual dispute requires credibility determinations and is accordingly best decided by a jury.  *See Pellegrino*, 2014 WL 1489939, at *17 n.11 ("In the instant case, however, factual disputes exist

---

[9]       In *Hartman*, 547 U.S. at 265–66, the Supreme Court held that the absence of probable cause is also an element of a First Amendment retaliation claim.  For the reasons articulated in Section V.B *supra*, Kieser did not have probable cause to believe that Vanderklok committed any crime.

as to whether TSA Officials had a non-retaliatory motive for their actions.  These disputes, which require credibility determinations, must be decided by a jury.").

## C.

Kieser argues that even if there are sufficient facts in the record to support a retaliation claim, he is entitled to qualified immunity because at the time of the incident it was not "clearly established" that *Bivens* applied to First Amendment retaliation claims.  (Oral Arg. 43:6–44:4.) He contends that "what has to be clearly established [was] that he's violating [Vanderklok's] rights under *Bivens*" because "*Bivens* is what controls the federal officers."  (Oral Arg. 43:12–18.)

The qualified immunity analysis, however, is not premised on the existence of a clearly established cause of action, but instead on a violation of a clearly established constitutional right. In order to overcome Kieser's qualified immunity defense, Vanderklok must show that Kieser's alleged conduct "(1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  In order to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 635 (1987).  This "does not mean that a prior case must have articulated a constitutional rule in exactly the same circumstances present here."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").  The ultimate question is whether the defendant "had 'fair warning' that his conduct deprived his victim of a constitutional right."  *Id.* at 739–40; s*ee Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) ("The relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

In *Sharratt v. Murtha*, 437 F. App'x 167, 170–71 (3d Cir. 2011), the Third Circuit discussed the uncertainty surrounding whether a *Bivens* cause of action existed separately from whether defendant violated a clearly established constitutional right.  *Id.*  In that case, plaintiff brought a *Bivens* claim contending that defendants violated his Sixth Amendment right to a fair trial and presumption of innocence.  *Id.* at 169.  The court stated that it "doubt[ed] that a purported violation of Sixth Amendment rights could be remedied under *Bivens*."  *Id.* at 170.  The uncertainty surrounding the existence of a Sixth Amendment *Bivens* claim, however, was not relevant to the court's qualified immunity analysis.  *Id.* at 170–71.  The court held that the defendant was entitled to qualified immunity because the plaintiff had failed to demonstrate a violation of his Sixth Amendment right—not because the plaintiff's *Bivens* claim was not "clearly established."  *Id.*

Similarly, the court in *Pellegrino* did not analyze whether the First Amendment retaliation *Bivens* claim was clearly established at the time the TSA screeners called the Philadelphia police officers.  Rather, it evaluated whether the screeners violated plaintiff's "clearly established" constitutional rights "to be free from prosecution for malicious/retaliatory motive" under the First and Fourth Amendments.  *Pellegrino*, 2014 WL 1489939, at *16–17; *see also Solomon*, 795 F.3d at 787–88 (holding that Deputy U.S. Marshals not entitled to qualified immunity on First Amendment retaliation claim because "[i]t is well-settled that 'as a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of his constitutionally protected speech'") (citations omitted); *Tobey*, 706 F.3d at 391 (holding that TSA officials not entitled to qualified immunity from First

Amendment retaliation claim because "[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right").

In response to an argument similar to Kieser's, the Eleventh Circuit Court of Appeals stated that the qualified immunity precedent "makes clear that a right may be clearly established irrespective of whether courts have specifically deemed the cause of action as being available under a particular legal theory." *Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009). In *Bryant*, plaintiffs brought claims against county officials pursuant to Sections 1983 and 1981 for race-based employment discrimination and retaliation. *Id.* at 1288–94. The district court denied defendants' motion for summary judgment finding, among other things, that they were not entitled to qualified immunity because Title VII clearly establishes the unlawfulness of race-based retaliation. *Id.* at 1309. Defendants argued on appeal that the district court erred when it found "that the right to be free from discriminatory retaliation was clearly established under Title VII and [ ] failing to consider whether the right also was clearly established under § 1981." *Id.* The Eleventh Circuit rejected that argument, stating that "[t]he question is not whether a reasonable officer would know that a discriminatory retaliation claim was available under Title VII or § 1981; rather, the salient question is whether the state of the law at the time provided officials fair warning that their discriminatory retaliatory conduct was unlawful." *Id.* (citing *Hope*, 536 U.S. at 741).

Similarly here, the relevant question is whether the law at the time provided fair warning to Kieser, a TSA employee acting within the scope of his employment,[10] that falsely accusing someone of a crime for wishing to make a complaint was unlawful. To answer that question in

---

[10]     On June 22, 2016 the United States certified that Kieser "was acting within the scope of his employment as an employee of the United States at the time of the conduct alleged in the Complaint." (United States' Mot. to Substitute, Ex. A, ECF No. 67.)

the negative would be an expansion of the doctrine of qualified immunity that is unwarranted and unsupported on the facts of this case, viewing those facts in Vanderklok's favor as the non-moving party.  *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (stating that qualified immunity is intended to give "ample room for mistaken judgments by protecting all but the plainly incompetent *or those who knowingly violate the law*") (emphasis added).  Since "the law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out," Kieser is not entitled to qualified immunity.  *Hartman*, 547 U.S. at 256; *see Halsey v. Pfeiffer*, 750 F.3d 273, 296 (3d Cir. 2014) ("Indeed, it has been an axiomatic principle of our justice system that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.") (citations and internal quotation marks omitted).

## V.

To prevail on a Fourth Amendment malicious prosecution claim, Vanderklok must demonstrate that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding."  *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  Kieser claims that Vanderklok is unable to satisfy the first, third and fourth elements of a Fourth Amendment malicious prosecution claim.  Specifically, he contends that Vanderklok's Fourth Amendment claim fails because: "(1) Kieser did not initiate the prosecution against Vanderklok; (2) there was

probable cause to arrest Vanderklok; and (3) there are not facts showing that Kieser acted with any malice."  (Def.'s Mot. at 19.)

### A.

Kieser argues that "Detective Wojciechowski conducted his own investigation and made an independent determination that there was sufficient probable cause to recommend criminal charges against Vanderklok."  (*Id.* at 20.)  Accordingly, he contends that Vanderklok cannot satisfy the first element of a malicious prosecution claim because his arrest and prosecution "were based on the independent decisions of Philadelphia Police Department supervisors, detectives, and the Philadelphia District Attorney's Office."  (*Id.*)

In *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014), plaintiff filed a lawsuit against, among others, two police officers alleging that they fabricated an oral confession that led to the prosecutor filing charges against him, maliciously prosecuted him, and coerced him into signing the fabricated confession.  *Id.* at 278–79.  The district court entered summary judgment on Halsey's Fourth Amendment malicious prosecution claim, reasoning that the prosecutor "used independent judgment in deciding to prosecute."  *Id.* at 296.  On appeal, the Third Circuit reversed, stating that "[i]t is settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions."  *Id.* at 297 (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004)).  It continued: "If the officers influenced *or* participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution."  *Id.* (emphasis added) (citation omitted).  The Third Circuit noted that the prosecutor charged plaintiff "precisely because he thought [plaintiff] had confessed."  *Id.* at 299.

Vanderklok similarly would not have been prosecuted but for Kieser's alleged fabrication. Although Kieser argues that Detective Wojciechowski conducted an independent investigation and that he, along with the District Attorney's Office, made the decision to charge Vanderklok, those decisions cannot be divorced from Kieser's purportedly false allegation. Without any eye witnesses corroborating Kieser's version of events or any other evidence suggesting that Vanderklok made a statement about bringing a bomb into the airport, Wojciechowski and the prosecutor could not have based their decision on anything other than Kieser's version of events.

Similar to the prosecutor's decision in *Halsey*, Detective Wojciechowski and the District Attorney's Office decided to criminally charge Vanderklok "precisely because" of Kieser's allegation that Vanderklok made a statement about bringing a bomb through security. Since such a fabrication could have "influenced" the decision to prosecute, a reasonable jury could conclude that Vanderklok satisfies this element of a malicious prosecution claim. *See id.* at 299 (stating that prosecutor's testimony "shows that [defendants'] fabrication potentially influenced his decision" and holding that plaintiff's malicious prosecution claim "should have survived a causation inquiry on the motions for summary judgment"); *Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities.") (internal quotation marks omitted).[11]

---

[11]     This reasoning applies with equal force to Vanderklok's First Amendment claim that Kieser "induced" the prosecution against him. In *Hartman*, 547 U.S. at 262, the Supreme Court stated that the defendant in a First Amendment retaliation claim will usually "be a nonprosecutor . . . who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute."

**B.**

Kieser also contends that Vanderklok cannot maintain a malicious prosecution claim because he cannot demonstrate that he was arrested without probable cause: "[b]ecause the Court has already ruled that the [police officers] had probable cause to arrest Vanderklok, Vanderklok should be precluded from arguing that there was no probable cause." (Def.'s Supp. Br. at *1, ECF No. 87.)  In support of that argument, Kieser relies upon *Hartman*, in which the Supreme Court held that "[t]o bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, the evidence of a lack of probable cause is necessary to address the longstanding presumption of prosecutorial regularity." *Pellegrino*, 2014 WL 1489939, at *13 (citing *Hartman*, 547 U.S. at 263).

The Court's previous holding that the police officers' had probable cause to arrest Vanderklok, however, does not mean that Kieser—who allegedly concocted Vanderklok's purported threat—can benefit from the Court's decision.  Indeed, it would make little sense to shield a defendant from a malicious prosecution claim because the facts he fabricated gave *others* probable cause to arrest and file criminal charges.  That is consistent with the Third Circuit's holding in *Merkle.*

In that case, Merkle sued her former employer, a township school district, its superintendent, and others after she was arrested and prosecuted for the "unlawful removal of school supplies."  *Merkle*, 211 F.3d at 785.  Specifically, she brought malicious prosecution and First Amendment retaliation claims alleging that a teacher, at the superintendent's urging, informed a police officer that she had admitted to stealing crayons from the school.  *Id.* at 786– 88.  Although Merkle agreed that she took the crayons (which she believed to be permissible), the parties disputed whether she ever admitted to anyone that she was "stealing" them.  *Id.* at

22

787.  Merkle claimed that the superintendent "violated her constitutional rights by initiating and pursuing her prosecution even though [she] knew that [Merkle] had committed no crime."[12]  *Id.* at 791.

After determining that the police officer had probable cause to arrest Merkle based on the statements provided to him by the teacher and superintendent, the Third Circuit analyzed "whether the presence of probable cause for Detective Hahn to make the arrest also imputes probable cause [on] behalf of the School Defendants to the criminal prosecution."  *Id.* at 794. The court held that it did not, stating that "[a]lthough the police may have acted on the reasonable belief that they had probable cause to arrest Merkle, whether the School Defendants had probable cause to pursue Merkle's prosecution is an independent inquiry."  *Id.*  Since it is "possible that the District and [superintendent] were in possession of additional information, not provided to Detective Hahn, that would negate any probable cause," the court held that it "must consider the facts known to the District and its superintendent to determine whether they had probable cause to prosecute."  *Id.* at 794–95.

Similarly, the Court must consider whether Kieser, based on the facts known to him, had probable cause to initiate the charges against Vanderklok.  The basis of Kieser's call to Pinkney was Vanderklok's alleged statement that "I could bring a bomb through here any day I want and you'll never find it."  (Def.'s SMF ¶ 5; *but see* Pl.'s SMF ¶ 5.)  Assuming that Vanderklok did not make any statement about carrying a bomb through security, and given that Kieser was aware that Vanderklok did not in fact have an explosive device in his carry-on at the time he called Pinkney, there are no other facts in the record to establish probable cause to pursue Vanderklok's

---

[12]      Merkle alleged malicious prosecution under Pennsylvania common law.  The elements of a that claim are identical to the first four elements of a Fourth Amendment malicious prosecution claim.  *See Merkle*, 211 F.3d at 791.  The Third Circuit's discussion of the probable cause element in *Merkle* is accordingly applicable to Vanderklok's Fourth Amendment malicious prosecution claim.

prosecution.  *See id.* at 795 ("[W]e conclude that a jury could find that [the superintendent], and through him the School District, acted maliciously in pressing unfounded criminal charges against Merkle.").

## C.

Kieser further argues that "[t]here are no facts which demonstrate that [ ] Kieser acted with sufficient malice to give rise to a claim of malicious prosecution."  (Def.'s Mot. at 21.) "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."  *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988), *abrogated on other grounds*, *Albright v. Oliver*, 510 U.S. 266 (1994).  A jury could reasonably conclude that Kieser acted with "ill will" by falsely reporting to the police that Vanderklok stated he could bring a bomb through airport security undetected.  Particularly given the seriousness with which law enforcement treats threats to airport security, a jury could find that Kieser was well aware that such a report would lead to Vanderklok's arrest and prosecution.

Further, "[m]alice may be inferred from the absence of probable cause."  *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993), *abrogated on other grounds*, *Albright*, 510 U.S. at 266; *see also Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 419 (E.D. Pa. 2014) (finding "malice may be inferred because a genuine factual dispute exists as to whether [police officer] had probable cause to initiate prosecution of [plaintiff]").  As discussed *infra* Section V.B, a disputed issue of material fact remains regarding whether Kieser had probable cause to initiate prosecution of Vanderklok.  There are accordingly sufficient facts for a jury to conclude that Kieser initiated the criminal prosecution with malice.  *See, e.g.*, *Telepo v. Palmer Township*, 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999) ("A person can be liable for malicious prosecution if he

fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the

prosecutor, omits material information from the reports, or otherwise interferes with the

prosecutor's ability to exercise independent judgment in deciding whether to prosecute.");

*Ankele v. Hambrick*, No. 02-cv-4004, 2003 WL 21396862, at \*1 n.4 (E.D. Pa. May 12, 2003)

("Deliberately concealing or deliberately failing to disclose exculpatory evidence, like

'maliciously tendering false information,' can . . . form the basis for an inference that a defendant

police officer acted with malice in initiating and maintaining a prosecution.") (quoting *Sanders v.*

*English*, 950 F.2d 1152, 1163 (5th Cir. 1992)).


BY THE COURT:


**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.