**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Roger Vanderklok,** | **CIVIL ACTION** |
|                     **Plaintiff,** | |
| | **NO. 15-370** |
|    **v.** | |
| **Charles Kieser (TSA), et al.** | |
|                     **Defendants.** | |

**ORDER**

_____

        AND NOW, this _____ day of _____, 2018, upon

consideration of Defendant Charles Kieser's Motion for Reconsideration/Motion for Summary

Judgment, and any opposition thereto, it is hereby ORDERED and DECREED that Defendant

Charles Kieser's Motion is GRANTED.  It is hereby ORDERED and DECREED that all claims

asserted against Defendant Charles Kieser are dismissed with prejudice.


                                                    _____
                                                                                                      J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROGER VANDERKLOK,**<br><br>                              **PLAINTIFF,**<br><br><br>       **V.**<br><br>**CHARLES KIESER (TSA), ET AL.**<br><br><br><br>                       **DEFENDANT.** | **CIVIL ACTION**<br><br><br>**NO. 15-370** |

**DEFENDANT TSA SUPERVISOR CHARLES KIESER'S MEMORANDUM OF
LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OR SUMMARY
JUDGMENT IN THE ALTERNATIVE**

ARCHER & GREINER, P.C.
Three Logan Square
Suite 3500
1717 Arch Street
Philadelphia, Pennsylvania  19103-7393
(215) 963-3300

*Attorneys for TSA Supervisor Charles Kieser*

BY:    Jeffrey M. Scott, Esquire
           jscott@archerlaw.com
           John C. Connell, Esquire
           jconnell@archerlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

I.      PROCEDURAL HISTORY ........................................................................................ 1

II.     STANDARD OF REVIEW ......................................................................................... 3

III.    STATEMENT OF FACTS .......................................................................................... 4

IV.     ARGUMENT ............................................................................................................... 6

        A.      **This Court Should Not Imply A Bivens Remedy For Vanderklok's
                Fourth Amendment Claim Given The New Context Presented By This
                Case And "Special Factors" Counseling Hesitation.** ....................................... 6

                1.      Vanderklok's Fourth Amendment Malicious Prosecution Claim
                        Presents a New Bivens Context ............................................................. 7

                2.      "Special Factors" Counsel Hesitation ................................................... 9

                        a.      Alternative Processes Were Available to Vanderklok .................. 9

                        b.      Other Special Factors Counsel Hesitation ................................ 10

                                i.      National/Airport Security Concerns ............................... 10

                                ii.     Separation-of-Powers Principles, Congressional
                                        Intent .............................................................................. 11

                                iii.    Systemwide Costs Associated With Creation of a
                                        Bivens Remedy ............................................................... 12

                                iv.     Workability/Practical Concerns ..................................... 13

        B.      **Supervisor Kieser Is Entitled To Qualified Immunity On
                Vanderklok's Fourth Amendment Malicious Prosecution Claim
                Because Vanderklok Has Not Set Forth A Cause Of Action Under The
                Fourth Amendment** ...................................................................................... 15

        C.      **Supervisor Kieser Is Entitled To Qualified Immunity On
                Vanderklok's Fourth Amendment Malicious Prosecution Claim
                Because Supervisor Kieser Did Not Violate A Clearly Established
                Constitutional Right** ...................................................................................... 17

V.      CONCLUSION .......................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Albright v. Oliver,
    510 U.S. 266 (1994) (Ginsburg, J., concurring) ................................................16, 18

Am. Eagle Outfitters v. Lyle & Scott Ltd.,
    584 F.3d 575 (3d Cir. 2009)......................................................................................4

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..................................................................................................4

Arar v. Ashcroft,
    585 F.3d 559 (2d Cir. 2009)......................................................................................8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...............................................................................................6, 7

Brodnik v. Lanham,
    Civil Action No. 1:11-0178, 2016 U.S. Dist. LEXIS 100051 (S.D.W.Va. Aug.
    1, 2016) ...................................................................................................................18

Carlson v. Green,
    446 U.S. 14 (1980).............................................................................................7, 14

Chappell v. Wallace,
    462 U.S. 296 (1983)................................................................................................14

Corbett v. Transp. Sec. Admin.,
    968 F.Supp. 2d 1171 (S.D.Fla. 2012) ...................................................................17

Corr. Servs. Corp. v. Malesko,
    534 U.S. 61 (2001)............................................................................................7, 10

Crawford-El v. Britton,
    523 U.S. 574 (1998)................................................................................................13

Davis v. Passman,
    442 U.S. 228 (1979)..................................................................................................7

De La Paz v. Coy,
    786 F.3d 367 (5th Cir. 2015) ...................................................................................8

District of Columbia v. Wesby,
    138 S.Ct. 577 (2018) ........................................................................................... *passim*

Domenech v. City of Philadelphia,
    No. 06-1325, 2009 U.S. Dist. LEXIS 34902 (E.D.Pa. Apr. 23, 2009) ............................ 15, 20

Garcia v. Micewski,
    No. 97-5379, 1998 U.S. Dist. LEXIS 13243, 1998 WL 547246 (E.D.Pa. Aug.
    24, 1998) .................................................................................................................... 20

Halsey v. Pfeiffer,
    750 F.3d 273 (3d Cir. 2014) ...................................................................................... 16

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) .................................................................................................. 17

Harris v. City of Philadelphia,
    No. Civ. A. 97-3666, 1998 U.S. Dist. LEXIS 12640, 1998 WL 481061
    (E.D.Pa. Aug. 14, 1998) ............................................................................................ 16

Hartman v. Moore,
    547 U.S. 250 (2006) ............................................................................................ 14, 16

Hernandez v. United States,
    34 F.Supp. 3d 1168, 1181–82 (D.Colo. 2014) .......................................................... 13

Ickes v. F.A.A.,
    299 F.3d 260 (3d Cir. 2002) ...................................................................................... 12

Johnson v. Knorr,
    477 F.3d 75 (3d Cir. 2007) ........................................................................................ 15

McNeil v. Florence Cty. Solicitor Office,
    No. 4:13-2068-MGL-TER, 2013 U.S. Dist. LEXIS 183449 (D.S.C. Dec. 18,
    2013) ........................................................................................................................ 18

Merkle v. Upper Dublin School District, 211 F.3d 782 (3d Cir. 2000) ................................ *passim*

Merrero v. Micewski,
    No. 96-8534, 1998 U.S. Dist. LEXIS 10989, 1998 WL 414724 (E.D.Pa. July
    22, 1998) .................................................................................................................... 21

Meshal v. Higgenbotham,
    804 F.3d 417 (D.C.Cir. 2015) .................................................................................... 8

Minneci v. Pollard,
    565 U.S. 118 (2012) ............................................................................................. 7, 10

Minneci v. Pollard,
    565 U.S. 118 (2012)................................................................................9

Mullenix v. Luna,
    136 S.Ct. 305 (2015)............................................................................17

O'Connor v. City of Philadelphia,
    No. 05-2879, 2006 U.S. Dist. LEXIS 34455, 2006 WL 1490134 (E.D.Pa. May
    26, 2006), aff'd, 233 F. App'x 161 (3d Cir. 2007) ..............................20

Osborne v. Georgiades,
    Civil Action No. RDB-14-182, 2017 U.S. Dist. LEXIS 146253 (D.Md. Sep.
    11, 2017) .............................................................................................18

Pearson v. Callahan,
    555 U.S. 223 (2009)............................................................................17

Pellegrino v. United States Transp. Sec. Admin.,
    No. 09-5505, 2014 U.S. Dist. LEXIS 111942 (E.D.Pa. Aug. 11, 2014) ................................16

Qazizadeh v. Pinnacle Health System,
    214 F.Supp.3d 292, 295 (M.D.Pa. 2016) .............................................3

Rehberg v. Paulk,
    611 F.3d 828 (11th Cir. 2010) aff'd, 132 S.Ct. 1497 (2012)................16

Schweikr v. Chilicky,
    487 U.S. 412 (1988)........................................................................10, 12

Estate of Smith v. Marasco,
    318 F.3d 497 (3d Cir. 2003)................................................................15

Snider v. Seung Lee,
    584 F.3d 193 (4th Cir. 2009) ..............................................................18

St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.,
    472 F.Supp.2d 630 (M.D.Pa. 2007)......................................................3

Stango v. Rodden,
    No. Civ. A. 00-CV-5709, 2001 U.S. Dist. LEXIS 15728, 2001 WL 1175131
    (E.D.Pa. Aug. 21, 2001)..................................................................16, 20

Vanderklok v. United States,
    868 F.3d 189 (3d Cir. 2017)........................................................... passim

Weaver v. Beveridge,
    No. 1:09-CV-2357, 2012 U.S. Dist. LEXIS 187745 (M.D.Pa. Sep. 12, 2012) ......................20

Wilkie v. Robbins,
    551 U.S. 537 (2007)............................................................................................9, 10, 15

Wilson v. Libby,
    498 F.Supp.2d. 74 (D.D.C. 2007), aff'd, 535 F.3d 697 (D.C.Cir. 2008)....................................9

Wood v. Kesler,
    323 F.3d 872 (11th Cir. 2003) ...............................................................................17

Ziglar v. Abbasi,
    137 S. Ct. 1843 (2017), reversed ........................................................................ passim

**Federal Statutes**

28 U.S.C. § 2679.............................................................................................................1

28 U.S.C. § 2680(h)........................................................................................................3

42 U.S.C. § 1983...........................................................................................................10

49 U.S.C. § 44903(a) .....................................................................................................13

49 U.S.C. § 46110(c) ......................................................................................................12

Federal Tort Claims Act (FTCA).......................................................................................1

**Rules**

Fed. R. Civ. P. 54(b) .......................................................................................................3

Fed. R. Civ. P. 56(a) .......................................................................................................4

## I.      PROCEDURAL HISTORY

Plaintiff, Roger Vanderklok, filed his initial Complaint on January 23, 2015 and subsequently filed an Amended Complaint on May 27, 2015.  (See Amended Complaint ("Am. Complaint"), ECF Doc. 22.)  All Defendants, except for Charles Kieser, a Supervisory Transportation Security Officer employed by the Transportation Security Administration ("TSA"), a component of the United States Department of Homeland Security, filed Motions to Dismiss or Motions for Judgment on the Pleadings in April and June 2015.  On September 30, 2015, this Court issued a Memorandum Opinion ("September Opinion"). (ECF Doc. 43.)  In that September Opinion, this Court dismissed Vanderklok's claims against the City of Philadelphia and the City Defendants.  On June 22, 2016, the United States Government moved to substitute itself as the proper party defendant for the state law torts brought against Kieser, and certified, under 28 U.S.C. § 2679, that Kieser was acting in the course and scope of his employment as a federal employee.  The Government then moved to dismiss all state law claims because the Federal Tort Claims Act (FTCA) does not waive sovereign immunity for TSA screeners. (See Mot. to Substitute, ECF Doc. 67.)  Vanderklok agreed it was "appropriate to substitute the United States as a proper party for [Kieser]." (ECF Doc. 85.)  Kieser did not oppose the Government's motion and joined the arguments set forth therein.

On June 27, 2016, Defendant Kieser moved for summary judgment, arguing that Bivens has never been extended to claims for retaliatory prosecution under the First Amendment. (ECF No. 69.)  Kieser further argued that he was entitled to qualified immunity because he did not violate a clearly established constitutional right under the First Amendment.  Kieser also moved for summary judgment for dismissal of the Fourth Amendment malicious prosecution claim. This Court entered an Order dated August 9, 2016 and issued a Memorandum Opinion on August 16, 2016 denying Kieser's Motion for Summary Judgment as to Vanderklok's First

1

Amendment retaliatory prosecution and Fourth Amendment malicious prosecution claims. (ECF DOCS. 89, 94.)  On September 6, 2016, Defendant Kieser filed an interlocutory appeal to the Third Circuit.

The Third Circuit, relying upon the "special factors" analysis in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), reversed the trial court, declining to extend the judicially created Bivens remedy to Vanderklok's First Amendment claim.  Further, as explained below, the Third Circuit's reasoning made it clear that the same "special factors" should also weigh decisively against the extension of a Bivens remedy to Vanderklok's related Fourth Amendment malicious prosecution claim.  The Third Circuit ruled that it could not reach the Fourth Amendment claim in that appeal, however, and remanded to the district court.  Vanderklok v. United States, 868 F.3d 189 (3d Cir. 2017) ("Vanderklok III").

On January 23, 2018, the Court conducted a status conference to determine what impact the ruling in Vanderklok III should have on Vanderklok's Fourth Amendment claim. (ECF Doc. 105.)  The Court, upon request of Defendant Kieser, agreed to allow briefing on whether Vanderklok's Fourth Amendment claim should be dismissed based on the decisions in Vanderklok III, Abbasi, and District of Columbia v. Wesby, 138 S. Ct. 577, 589-591 (2018) (holding in the Fourth Amendment context that to be so "clearly established" as to defeat qualified immunity, "existing precedent must place the lawfulness" of an officer's specific conduct "beyond debate.").

Defendant Kieser now files this Motion for Reconsideration/Summary Judgment and requests that this Court dismiss Vanderklok's Fourth Amendment Bivens claim.  Regardless of the procedural vehicle for doing so (and both are available), Defendant submits that the "special factors" analysis under Abbasi requires this Court to grant summary judgment in favor of

Defendant Kieser.  Summary judgment in favor of Defendant Kieser is warranted because Vanderklok's Fourth Amendment malicious prosecution claim under <u>Bivens</u> cannot be recognized in the context of airport security, especially as it pertains to TSA supervisors, like Defendant Kieser.  <u>See</u> <u>Vanderklok III</u>, 868 F.3d at 203 (noting that Kieser was not an investigative or law enforcement agent as defined by 28 U.S.C. § 2680(h)).  Alternatively, if this Court determines that the <u>Bivens</u> claim can proceed (which it should not), Defendant Kieser is entitled to judgment as a matter of law under the qualified immunity doctrine.  For these reasons, and those that follow, summary judgment should be granted in favor of Defendant Kieser and the remaining claim should be dismissed with prejudice.

## II.    STANDARD OF REVIEW

This Court has permitted Defendant Kieser to seek a final judgment in his favor, whether by reconsideration or summary judgment.  (ECF Doc. 108.)  There is no question that the Supreme Court's decision in <u>Abbasi</u> and the Third Circuit's decision in <u>Vanderklok III</u> operate as an intervening change in the law.  Arguably, allowing the Court's previous order on the Fourth Amendment malicious prosecution claim to stand would constitute a clear error of law which must be reversed in order to prevent manifest injustice.

When justice so requires, Rule 54(b) of the Federal Rules of Civil Procedure allows any order that does not end the action to "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  <u>Qazizadeh v. Pinnacle Health System</u>, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (<u>quoting</u> <u>St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.</u>, 472 F. Supp. 2d 630, 632 (M.D. Pa. 2007)).  Indeed, reconsideration "may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the need to correct a clear error of law or fact or to prevent manifest

3

injustice." Qazizadeh, 214 F. Supp. 3d at 295 (citation and internal quotation marks omitted).

Accordingly, reconsideration, and entry of judgment in favor of Kieser, are clearly warranted in

this case based on the intervening change in controlling law regarding the expansion of Bivens

claims in new contexts as set forth in Abbasi and Vanderklok III, as well as, in the alternative,

the qualified immunity doctrine articulated in the recent case of Wesby.[1]

## III.    STATEMENT OF FACTS

For purposes of this Motion only, Defendant Kieser adopts the facts set forth in

Vanderklok III, 868 F.3d at 194-95.

In January 2013, Vanderklok, a gentleman in his late fifties, arrived at the Philadelphia

International Airport, intending to travel to Miami to participate in a half-marathon.  He entered

the passenger screening area, where his carry-on bag was x-rayed by TSA personnel. The x-ray

images revealing his heart monitor and watch, stored in a short length of PVC pipe, triggered

secondary screening of his bag. Vanderklok was directed to the secondary screening area, where

TSA screeners manually examined his bag and its contents.  At this point in the story, the parties'

versions of events diverge dramatically. Kieser, a TSA supervisor and the last remaining

defendant in this case, left his supervisory station and came to the secondary screening area to

---

[1] Alternatively, if the summary judgment standard were to apply, the same result would obtain,
and Kieser would be entitled to judgment as a matter of law on Vanderklok's Fourth Amendment
malicious prosecution claim.  Summary judgment is appropriate when there is no genuine
dispute as to any material fact and the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there is a genuine issue of material
fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  Here, Kieser's argument for
why he is entitled to judgment does not depend on any controverted facts; as shown below, this
Motion simply incorporates the factual recitation upon which the Third Circuit based its
decision.  Thus, the essential legal analysis of why Kieser is entitled to judgment as a matter of
law will be identical, whether considered under a reconsideration standard or summary judgment
standard.

observe the line agent's examination of Vanderklok's bag.  Vanderklok maintains that at all times he was patient and not agitated during the secondary screening but that Kieser was agitated and argumentative throughout.

Kieser asserts essentially the opposite: that Vanderklok was belligerent during the secondary search. According to Kieser, Vanderklok said, "I could bring a bomb through here any day I want and you'll never find it."  Vanderklok denies making that or any similar statement. He says that Kieser fabricated the statement after Vanderklok asked for a complaint form and stated his intention to report Kieser's behavior. There were no other known witnesses to Vanderklok's alleged statement. Once the secondary screening was complete, Vanderklok's bag and all of its original contents, other than the PVC pipe, were returned. Vanderklok then exited the security checkpoint area and began to rearrange his bag.

As Vanderklok exited the screening area, Kieser called an airport police officer to report Vanderklok's alleged statement about a bomb. Officer Pinkney of the Philadelphia Police Department approached Vanderklok outside the screening area approximately five minutes after Vanderklok had requested the complaint form.  Based on Kieser's claim that Vanderklok had made a bomb threat, Pinkney and another officer took Vanderklok into custody, placing him in a holding cell at the airport police station.  Detective Wojciechowski, also of the Philadelphia Police Department, was assigned to further investigate.  He spoke with Kieser, who repeated that Vanderklok made a bomb threat and was "irate" and "loud" during the secondary screening. After a brief investigation, Wojciechowski recommended that Vanderklok be charged with disorderly conduct and threatening placement of a bomb.  The District Attorney approved those charges and eventually added a third charge for making terroristic threats.  Vanderklok was

handcuffed and transported to a nearby police station where he was held until making a first

appearance and posting bond.

Vanderklok was tried in the Philadelphia Court of Common Pleas on April 8, 2013. After

the Commonwealth's case-in-chief, Vanderklok made a motion for judgment of acquittal on all

counts, which was granted.

## IV.    ARGUMENT

### A.    This Court Should Not Imply A <u>Bivens</u> Remedy For Vanderklok's Fourth Amendment Claim Given The New Context Presented By This Case And "Special Factors" Counseling Hesitation.

On June 19, 2017, the United States Supreme Court decided <u>Abbasi</u>, 137 S. Ct. 1843,

holding that the Circuit Court had erroneously allowed certain <u>Bivens</u> claims to move forward

and remanding other <u>Bivens</u> claims for further analysis consistent with its opinion.  Recognizing

that "expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity," <u>Abbasi</u>,137 S. Ct. at

1857 (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)), the Court articulated a two-part

framework for determining whether an implied cause of action under <u>Bivens</u> is available.  First, a

court must determine whether the claim presents a new <u>Bivens</u> context, meaning "[i]f the case is

different in a meaningful way from <u>Bivens</u> cases decided by [the Supreme] Court, then the

context is new."  <u>Id.</u> at 1859.  Second, a court must carefully examine whether "special factors"

counsel hesitation in implying a <u>Bivens</u> remedy.  <u>Id.</u> at 1859-60.

Applying the two-part framework in <u>Abbasi</u>, Vanderklok's Fourth Amendment malicious

prosecution claim, as set forth in more detail below, should be dismissed because his claim seeks

to extend a <u>Bivens</u> remedy to a new context (airport and national security) and "special factors"

counsel against implying a <u>Bivens</u> remedy.  For these reasons, Vanderklok's Fourth Amendment

malicious prosecution claim should be dismissed with prejudice.

**1.**     **Vanderklok's Fourth Amendment Malicious Prosecution**
**Claim Presents a New <u>Bivens</u> Context**

For thirty-five years and counting, the Supreme Court has in every case where the issue

was before it "refused to extend <u>Bivens</u> liability to any new context or new category of

defendants." <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001); <u>see also</u> <u>Minneci v. Pollard</u>,

565 US 118, 124-25 (2012) (summarizing the Supreme Court's three-decade history declining to

extend <u>Bivens</u>) (collecting cases); <u>Iqbal</u>, 556 U.S. at 675 ("[I]mplied causes of action" under

<u>Bivens</u> are "disfavored").  "[O]ver the course of nearly four decades, the Supreme Court has

repeatedly refused to recognize <u>Bivens</u> actions in any new contexts."  <u>Vanderklok III</u>, 868 F.3d

at 198.  The expansion of <u>Bivens</u> has come at the appellate and trial levels, and the Supreme

Court's more recent <u>Bivens</u> decisions have increasingly sought to cabin this remedy.

"The [Supreme] Court has explained that its recognition of a cause of action under a

constitutional amendment does not mean that such an action can vindicate every violation of the

rights afforded by that particular amendment."  <u>Vanderklok III</u>, 868 F.3d at 199.  As the Supreme

Court reiterated in <u>Abbasi</u>:

> [a] case might differ in a meaningful way because of the rank of the officers
> involved; the constitutional right at issue; the generality or specificity of the
> official action; the extent of judicial guidance as to how an officer should respond
> to the problem or emergency to be confronted; the statutory or other legal
> mandate under which the officer was operating; the risk of disruptive intrusion by
> the Judiciary into the functioning of other branches; or the presence of potential
> special factors that previous <u>Bivens</u> cases did not consider.

137 S. Ct. at 1860.

It is therefore necessary to identify, from the outset, the particular "context" and category

of defendant within Plaintiffs' proposed <u>Bivens</u> claims.  <u>Arar v. Ashcroft</u>, 585 F.3d 559, 572 (2d

Cir. 2009) (context is not defined at a "high level of generality" but rather as "it is commonly

used in law: to reflect a potentially recurring scenario that has similar legal and factual

7

components"); <u>see also</u> <u>Meshal v. Higgenbotham</u>, 804 F.3d 417, 423 (D.C. Cir. 2015) ("[E]ven if

the plaintiff alleges the same type of constitutional violation, it does not automatically invoke the

same context for <u>Bivens</u> purposes."); <u>De La Paz v. Coy</u>, 786 F.3d 367 (5th Cir. 2015) (rejecting

plaintiffs' proposed "analogy between the Fourth Amendment violations they allegedly endured

and the facts in <u>Bivens</u>" as part of a larger effort to "equate civil immigration enforcement

actions with federal criminal law enforcement" for <u>Bivens</u> purposes).

 Plaintiff claims that Kieser, a TSA supervisory screener maliciously prosecuted him by

contacting local law enforcement authorities and  allegedly fabricating evidence.  Although the

Supreme Court in <u>Bivens</u> itself recognized that a damages remedy might be available "upon a

violation of the Fourth Amendment by federal officials," <u>Bivens</u>, 403 U.S. at 389, the Court did

not authorize—nor has it ever authorized—any such remedy for alleged injustices arising from a

local prosecution against a TSA supervisory screener, who has neither the powers of arrest nor

powers of prosecution and who disclosed information to local law enforcement about a

passenger seeking to board a commercial flight.  The fact that courts have allowed a Fourth

Amendment false arrest claims in the past is not determinative of whether <u>Bivens</u> should apply to

every context in which such a claim might arise.  <u>See De La Paz</u> , 786 F.3d at 372-73 (noting

"this court never decided . . . whether border patrol agents can be <u>Bivens</u> defendants," although

such claims have been brought – and other aspects ruled on by the Fifth Circuit – in the past).

Although <u>Bivens</u> involved an alleged violation of the Fourth Amendment, "<u>Bivens</u> actions are

not recognized Amendment by Amendment in a wholesale fashion.  Rather, they are context

specific."  <u>Wilson v. Libby</u>, 498 F. Supp. 2d 74, 86 (D.D.C. 2007), <u>aff'd</u>, 535 F.3d 697 (D.C. Cir.

2008).

Bivens was a Fourth Amendment *search and seizure* claim against traditional law enforcement officials.  Vanderklok's claim is a Fourth Amendment *malicious prosecution claim* against a TSA supervisory screener who (1) is not a law enforcement official and, (2) did not decide to arrest or prosecute Vanderklok.  The mere fact that the claims in Bivens arose under the Fourth Amendment is not dispositive of whether a Bivens cause of action should be recognized.  Given the new context (airport security) and new category of defendant (TSA screener without arrest or general law enforcement powers) presented here, this Court should apply the Abassi "special factors" analysis to determine whether a Bivens cause of action should be recognized and extended to Vanderklok's Fourth Amendment malicious prosecution claim. See Abbasi, 137 S. Ct. at 1864 ("even a modest extension is still an extension").

### 2.    "Special Factors" Counsel Hesitation

### a.    Alternative Processes Were Available to Vanderklok

The first step in determining whether a court should consider extending a Bivens remedy to particular context is to analyze whether there is any "'alternative, existing process' capable of protecting the constitutional interests at stake." Minneci, 565 U.S. at 125 (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)).  The criminal-justice system, by virtue of its procedural safeguards and remedies, provided Vanderklok with the opportunity to challenge his arrest and alleged unlawful prosecution.  He stood trial, confronted his accusers and prosecutor and was ultimately acquitted by the state court trial judge.  Thus, he was afforded a "means to be heard" and "some procedure to defend and make good on his position."  Wilkie, 551 U.S. at 552.  This alternative remedy counsels against extending Bivens into a new context against a new category of defendant.

In addition, Vanderklok brought state-law tort claims and claims under 42 U.S.C. §1983 against the City of Philadelphia and three of its police officers for false arrest, false

imprisonment, assault and battery, and malicious prosecution arising from his arrest and

subsequent criminal prosecution.  Vanderklok also brought state-law tort claims against

Supervisor Kieser.  Cf. Minneci, 565 U.S at 129-30 (refusing to imply a Bivens remedy against a

private prison contractor where state-law tort remedies were available and explaining that the

"state-law remedies and a potential Bivens remedy need not be congruent").  It is of no

consequence that Vanderklok was unsuccessful in these claims.  See Malesko, 534 U.S. at 69

("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of

powers foreclosed judicial imposition of a new substantive liability"); cf. Schweiker v. Chilicky,

487 U.S. 412, 425 (1988) (holding that a statute can preclude a Bivens remedy even if it does not

provide a plaintiff with any monetary compensation).

Accordingly, on this basis alone, the Court should dismiss all remaining claims against

TSA Supervisor Kieser with prejudice.

### b.  Other Special Factors Counsel Hesitation

Even if these alternative processes are not per se sufficient to preclude expansion of

Bivens, these processes in conjunction with the unique context of TSA security screening

amount to "special factors counseling hesitation" in creating a new Bivens remedy.  Wilkie, 551

U.S. at 550.

### i.  National/Airport Security Concerns

Because the non-law enforcement, national security role of TSA employees like Kieser

presents special factors counseling hesitation against an implied right of action under Bivens, this

Court should dismiss Vanderklok's remaining claim.

"The hesitancy to imply a Bivens remedy in a case with national security implications

must be particularly 'pronounced when the judicial inquiry comes in the context of a claim

seeking money damages rather than a claim seeking injunctive or other equitable relief.'"

Vanderklok III, 868 F.3d at 207 (quoting Abbasi, 137 S. Ct. at 1861).  As the Supreme Court

reasoned: "[n]ational-security policy is the prerogative of the Congress and President[,]" and

imposing damages liability would likely interfere with that prerogative by "caus[ing] an official

to second-guess difficult but necessary decisions concerning national-security policy."  Abbasi,

137 S. Ct. at 1861.

       In this case, Vanderklok seeks an implied right of action under Bivens for damages

against a TSA agent. "TSA employees like Kieser are tasked with assisting in a critical aspect of

national security — securing our nation's airports and air traffic. The threat of damages liability

could indeed increase the probability that a TSA agent would hesitate in making split-second

decisions about suspicious passengers." Vanderklok III, 868 F.3d at 207.  This reason alone

counsels against extending a Bivens remedy against TSA Supervisor Kieser or any TSA agent,

for a Fourth Amendment malicious prosecution claim.  See id. at 206 ("A special factor

counseling hesitation in implying a Bivens action here is that Vanderklok's *claims* can be seen as

implicating "the Government's whole response to the September 11 attacks, thus of necessity

requiring an inquiry into sensitive issues of national security.") (emphasis supplied).

                              ii.      **Separation-of-Powers Principles, Congressional Intent**

       Yet another factor strongly, if not conclusively, weighing against extension of a Bivens

remedy in this case is that "'Congress is in a far better position than a court to evaluate the

impact of a new species of litigation' against those who act on the public's behalf." Vanderklok

III, 868 F.3d at 208 (citations omitted).  In creating the TSA, Congress restricted judicial review

to affirming, amending, modifying, or setting aside orders of the agency.  49 U.S.C. § 46110(c).

When courts do review such orders, the findings of fact made by the TSA are conclusive, if

supported by substantial evidence.  49 U.S.C. § 46110(c); Ickes v. F.A.A., 299 F.3d 260, 264 (3d

Cir. 2002).  Further, "remedies in the airport security context are circumscribed as a direct result

11

of Congressional decisions." Vanderklok III, 868 F.3d at 207; Abbasi, 137 S. Ct. at 1862

("Congress' failure to provide a damages remedy might be more than mere oversight, and that

congressional silence might be more than 'inadvertent.'" (quoting Schweiker v. Chilicky, 487

U.S. 412, 423 (1988)).  It is Congress which decides the "scope of tort liability for the

government" and provides an administrative mechanism by which to adjudicate certain TSA

complaints.  Vanderklok III, 868 F.3d at 208.  Courts should not create new remedies "when it

appears that the available ones are limited by Congressional design."  Id. at 208.  Congressional

limitation on both the remedies available in the airport security context and the scope of judicial

review of TSA orders is thus another special factor that counsels against creating an implied

right of action under Bivens in this case.

> ### iii.      Systemwide Costs Associated With Creation of a Bivens Remedy

As the Abbasi Court instructs, "the decision to recognize a damages remedy requires an

assessment of its impact on governmental operations systemwide."  Abbasi, 137 S. Ct. at 1858.

The systemwide costs include "the burdens on Government employees who are sued personally,

as well as the projected costs and consequences to the Government itself . . . ."  Id.  These

burdens and costs are particularly high in the airport security context based, in part, on the sheer

volume of potential suits arising from the creation of a new Bivens remedy – on an average day,

TSA agents screen approximately two million passengers and six million items of carry-on and

checked luggage.  Transportation Security Administration, *TSA by the Numbers*,

https://www.tsa.gov/sites/default/files/resources/tsabythenumbers_factsheet_508.pdf.  On an

average day, TSA agents will discover five loaded firearms in carry-on luggage.  Transportation

Security Administration, *TSA releases 2015 statistics*,

https://www.tsa.gov/news/releases/2016/01/21/tsa-releases-2015-statistics; see also Hernandez v.

United States, 34 F. Supp. 3d 1168, 1181–82 (D. Colo. 2014) (expressing doubt that Congress intended to "permit lawsuits arising from the TSA's millions of daily screenings") (citing H. Res. No. 156, 113th Congr. (2013)).  Moreover, Vanderklok's Bivens claim for "malicious prosecution" requires a subjective state of mind, which can make a case more difficult to administer and increase the likelihood that a frivolous claim survives early dispositive motions. See Crawford-El v. Britton, 523 U.S. 574, 584–85 (1998).

### iv.      Workability/Practical Concerns

Another special factor counselling hesitation here is the apparent difficulty in creating a workable cause of action.  See Abbasi, 137 S. Ct. at 1864-65 (discussing as a special factor the lack of clarity as to the applicable legal standard in an Eighth Amendment claim against a prison warden).  Regardless of the allegations, it is for Congress to create a civil remedy in the context of airport security, not the courts. The Third Circuit in this case recognized these "practical concerns" with respect to the First Amendment retaliation claim:

> Finally, there is a practical concern with establishing a court-crafted remedy in the circumstances presented here.  TSA employees typically are not law enforcement officers and do not act as such.  As previously discussed, only those TSA employees specifically designated by the Under Secretary with the responsibilities of an officer, in accordance with 49 U.S.C. §44903(a), operate like police officers. As a result, line TSA employees are not trained on issues of probable cause, reasonable suspicion, and other constitutional doctrines that govern law enforcement officers.  See 49 C.F.R. §1542.213 (delineating mandatory training). Instead, they are instructed to carry out administrative searches and contact local law enforcement if they encounter situations requiring action beyond their limited though important responsibilities.  Cf. 49 C.F.R. §1542.215 (providing for "[u]niformed law enforcement personnel in the number and manner adequate to support" passenger screenings). Since a First Amendment retaliatory prosecution claim hinges, in part, on whether the allegedly offending government employee had probable cause to take some enforcement action, Hartman, 547 U.S. at 259-66, a Bivens claim is poorly suited to address wrongs by line TSA employees. Indeed, the inherent uncertainty surrounding the probable cause standard is itself a factor counseling hesitation. See [Abbasi], 137 S. Ct. at 1864-65 (distinguishing the case from Carlson, in part, because the constitutional standard was unclear, thus affording less judicial guidance for defendants).

13

<u>Vanderklok III</u>, 868 F.3d at 208-209.  This analysis applies to Vanderklok's Fourth Amendment claim for malicious prosecution as the facts giving rise to Vanderklok's First Amendment retaliation claim are identical to the facts which purportedly give rise to his Fourth Amendment malicious prosecution claim.

Moreover, like the First Amendment retaliatory prosecution claim, the Fourth Amendment malicious prosecution claim hinges directly on whether the government employee initiated the criminal proceeding and had probable cause to arrest Vanderklok.[2]  As the Third Circuit explained, TSA agents are not law enforcement officers and are not trained on the constitutional doctrines governing law enforcement officers. Thus, the specific tasks designated to TSA agents by Congress coupled with the "inherent uncertainty surrounding the probable cause standard is another factor counseling hesitation against creating a judicial remedy" under <u>Bivens</u> in the context of airport security. <u>Vanderklok III</u>, 868 F.3d at 209.

"Ultimately, the role of the TSA in securing public safety is so significant that this Court [should] not create a damages remedy in this context.  The dangers associated with aircraft security are real and of high consequence."  <u>Vanderklok III</u>, 868 F.3d at 209 (citing <u>Chappell v. Wallace,</u> 462 U.S. 296, 304 (1983) as "refusing to imply a <u>Bivens</u> action where 'the need for unhesitating and decisive action ... would be undermined by a judicially created remedy'"). Moreover, as the Third Circuit reasoned: "when it comes to creating judicial remedies, there must be a balancing of priorities, and '[t]he proper balance is one for the Congress, not the Judiciary, to undertake.'"  <u>Id.</u> at 209 (quoting <u>Abbasi</u>, 137 S. Ct. at 1863).  In the context of airport security screening, "there is reason to 'fear that a general <u>Bivens</u> cure would be worse than the disease.'"  <u>Id.</u> (quoting <u>Wilkie</u>, 551 U.S. at 561).

---

[2]  <u>See</u> discussion of the elements of a Fourth Amendment malicious prosecution claim, <u>infra</u>.

Indeed, another particularly salient practical concern is that the threat of personal money damages may interfere with and discourage TSA officers from reaching out to local law enforcement, thereby interfering with national security and their specifically enumerated duties as prescribed by Congress. All of the special factors enunciated above preclude this Court from implying a <u>Bivens</u> cause of action for Fourth Amendment malicious prosecution. Thus, the remaining claim should be dismissed with prejudice.

**B.**     **Supervisor Kieser Is Entitled To Qualified Immunity On Vanderklok's Fourth Amendment Malicious Prosecution Claim Because Vanderklok Has Not Set Forth A Cause Of Action Under The Fourth Amendment**

To prove a Fourth Amendment malicious prosecution claim, a plaintiff must establish the following: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)). In cases where a plaintiff has sued a police officer for malicious prosecution, he bears a particular burden of showing that the police officer "initiated" the criminal proceedings being challenged. <u>See</u> <u>Stango v. Rodden</u>, No. Civ. A. 00-CV-5709, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001) (<u>quoting</u> <u>Harris v. City of Philadelphia</u>, No. Civ. A. 97-3666, 1998 WL 481061 (E.D. Pa. Aug. 14, 1998) (<u>citing</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 279 n.7 (1994) (Ginsburg, J., concurring)). This is because, in the typical case, "a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual." <u>Id.</u>

In a malicious prosecution case under the Fourth Amendment, the Plaintiff has the burden of showing that the "the nonprosecuting official . . . induced the prosecutor to bring charges that

15

would not have been initiated without his urging." <u>Pellegrino v. United States Transp. Sec. Admin.</u>, No. 09-5505, 2014 U.S. Dist. LEXIS 111942, at *10 (E.D. Pa. Aug. 11, 2014) (dismissing malicious prosecution claim because Plaintiff failed to present evidence that the defendant influenced the prosecutor's decision to charge Plaintiff.); <u>Hartman v. Moore</u>, 547 U.S. 250, 262 (2006); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 296-97 (3d Cir. 2014)("if the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution."); <u>see also</u> <u>Rehberg v. Paulk</u>, 611 F.3d 828, 850 (11th Cir. 2010) <u>aff'd</u>, 132 S. Ct. 1497 (2012) (a plaintiff "must show [defendant's] retaliation against [plaintiff] successfully induced the prosecution and was the but-for cause of the prosecution"); <u>Merkle v. Upper Dublin School District</u>, 211 F.3d 782, 791-94 (3d Cir. 2000) (defendant's influence included relying on his personal relationship with the chief of police to express his desire for the plaintiff's prosecution, persisting despite the Chief's query "are you sure you want to do this?" and affirming shortly before the preliminary hearing that he wanted the plaintiff prosecuted.)[3]

Supervisor Kieser is entitled to judgment because he did not violate Vanderklok's clearly established constitutional right. In this case, Supervisor Kieser was merely a witness. Unlike a police officer, Supervisor Kieser was not trained on issues of probable cause. Likewise, Supervisor Kieser had no ability to arrest Vanderklok nor the ability to initiate any criminal proceedings. <u>Vanderklok III</u>, 868 F.3d at 208-09 (TSA employees are not trained on issues of

---

[3] The District Court relied on <u>Merkle</u>, to find that Kieser, as the complainant, was required to have probable cause to report the commission of a crime. But <u>Merkle</u>, assuming it is correct, is distinguishable inasmuch as it did not concern a Fourth Amendment malicious prosecution claim under <u>Bivens</u> in the unique context of airport security, where TSA screeners are "required" to report information non-compliant with TSA regulations. <u>Merkle</u> is also off-point because the school superintendent directly requested and procured the arrest and prosecution of <u>Merkle</u> and its vitality post-<u>Hartman</u> is questionable at best.

16

probable cause, reasonable suspicion, and other constitutional doctrines that govern law

enforcement officers.  <u>See</u> 49 C.F.R. §1542.213 (delineating mandatory training).  Based on

these reasons, there is no viable cause of action against Supervisor Kieser under the  Fourth

Amendment.[4]

### C.  Supervisor Kieser Is Entitled To Qualified Immunity On Vanderklok's Fourth Amendment Malicious Prosecution Claim Because Supervisor Kieser Did Not Violate A Clearly Established Constitutional Right

Even if, *arguendo*, Vanderklok could assert a viable <u>Bivens</u> cause of action for Fourth

Amendment malicious prosecution—which he cannot—his claim must nevertheless be dismissed

with prejudice because Kieser is entitled to qualified immunity.  The doctrine of qualified

immunity protects government officials "from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (citing <u>Harlow v.

Fitzgerald</u>, 457 U.S. 800 (1982)).  In the Fourth Amendment context, "clearly established inquiry

must focus on the "specificity requirement of the rule." <u>Wesby</u>, 138 S. Ct. at 590 ("We have

stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment

context'") (quoting <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)).  In <u>Wesby</u>, the Supreme

Court emphasized that the clearly established standard

> requires that the legal principle clearly prohibit the officer's conduct in the
> particular circumstances before him. The rule's contours must be so well defined
> that it is clear to a reasonable officer that his conduct was unlawful in the situation
> he confronted. This requires a high "degree of specificity." We have repeatedly
> stressed that courts must not define clearly established law at a high level of

[4] At most, Plaintiff's claim is based on an alleged retaliation for Vanderklok's claim that he wanted to file a Complaint against Supervisor Kieser.  There is no cause of  action for alleged retaliation under the Fourth Amendment. <u>Corbett v. Transp. Sec. Admin.</u>, 968 F. Supp. 2d 1171, 1182 (S.D. Fla. 2012) (citing <u>Wood v. Kesler</u>, 323 F.3d 872, 883 (11th Cir. 2003) (no retaliation claim under the Fourth Amendment separate and distinct from Wood's malicious prosecution claim)).  Vanderklok's First Amendment retaliatory prosecution claim was dismissed by the Third Circuit in <u>Vanderklok III</u>.

generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established. In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause.

We have stressed that the specificity of the rule is especially important in the Fourth Amendment context. Probable cause turn[s] on the assessment of probabilities *in particular factual contexts*" and cannot be "reduced to a neat set of legal rules. It is incapable of precise definition or quantification into percentages. Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered. [Abbasi, 137 S. Ct. at 1866] Thus, we have stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment. While there does not have to be "a case directly on point," existing precedent must place the lawfulness of the particular arrest "beyond debate." Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. But a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause.

Wesby, 138 S. Ct. at 590.

Whether there is a federal constitutional right to be free from malicious prosecution is not settled.  See Osborne v. Georgiades, Civil Action No. RDB-14-182, 2017 U.S. Dist. LEXIS 146253, at *12 (D. Md. Sep. 11, 2017) ("'[I]t is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution'")(quoting Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009) (citing, inter alia, Albright v. Oliver, 510 U.S. 266, 279-80 n.5 (1994) (Ginsburg, J., concurring)); Brodnik v. Lanham, Civil Action No. 1:11-0178, 2016 U.S. Dist. LEXIS 100051, at *14 n.2 (S.D. W. Va. Aug. 1, 2016) (citing Snider, 584 F.3d at 199); McNeil v. Florence Cty. Solicitor Office, No. 4:13-2068-MGL-TER, 2013 U.S. Dist. LEXIS 183449, at *8 (D.S.C. Dec. 18, 2013) ("The Supreme Court acknowledged in Wallace v. Kato, 549 U.S. 384, 390 n.2 (2007), that the high court 'has never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983,' and then declined to pursue the issue in Wallace").

There is a dearth of case law which provides liability against a TSA Agent in the context of airport security for a Fourth Amendment malicious prosecution claim.[5] Here, whether the constitutional right Vanderklok asserts is clearly established for the purposes of qualified immunity begins with defining the role and job duties of TSA Supervisor Kieser.  TSA employees like Kieser are tasked with assisting in a critical aspect of national security — securing our nation's airports and air traffic. Unlike local and federal law enforcement officers, TSA agents, like Supervisor Kieser, do not have the powers of arrest or prosecution.  TSA agents are instructed to carry out administrative searches and contact local law enforcement if they encounter situations requiring action beyond their limited though important responsibilities. Cf. 49 C.F.R. §1542.215; Vanderklok III, 868 F.3d at 208-09.  TSA employees are not trained on issues of probable cause, reasonable suspicion, and other constitutional doctrines that govern law enforcement officers.  See 49 C.F.R. §1542.213 (delineating  mandatory training).  In light of these (Congressionally delineated) duties of TSA employees as well as the specific contours of the facts of this case, TSA Supervisor Kieser is entitled to judgment under the qualified immunity doctrine.

In the context of airport security, and the duties of a TSA agent, there was no requirement that TSA Supervisor Kieser have probable cause before calling local law enforcement to investigate a potential security threat.  In January 2013 there was no "settled law," "controlling authority" or "a robust consensus of cases of persuasive authority" that would have placed TSA Supervisor Kieser on notice that he violated Vanderklok's Fourth Amendment rights.  Wesby,

---

[5] .No circuit court precedent clearly establishes a passenger's Fourth Amendment right against malicious prosecution in the context of undergoing screening at a TSA security screening checkpoint nor provides guidance on a TSA screener's right to report information to local law enforcement authorities.  This case presents an additional consideration, a TSA screener (who lacks the powers to seize or arrest) disclosing information to local law enforcement

138 S. Ct. at 589-90.  Further, there was no legal principle that clearly prohibited TSA Supervisor Kieser's conduct in the particular circumstances before him.  <u>Wesby</u>, 138 S. Ct. at 590.  Supervisor Kieser was only acting as a witness, with no powers of arrest or prosecution. Supervisor Kieser would not have known that contacting local law enforcement - (his Congressional mandate) - would have violated a constitutional right.  Nor would Supervisor Kieser have known that contacting local law enforcement would make him akin to a trained police officer with arrest powers for a federal malicious prosecution claim.

District courts within the Third Circuit have consistently held that a plaintiff can only proceed against a **<u>police officer</u>** under a malicious prosecution theory.  <u>Weaver v. Beveridge</u>, No. 1:09-CV-2357, 2012 U.S. Dist. LEXIS 187745, at *23 (M.D. Pa. Sep. 12, 2012) (<u>quoting</u> <u>Domenech v. City of Philadelphia</u>, No. 06-1325, 2009 U.S. Dist. LEXIS 34902, 2009 WL 1109316, *8 (E.D. Pa. April 23, 2009)) (internal quotation marks omitted and emphasis added); <u>see also</u> <u>O'Connor v. City of Philadelphia</u>, No. 05-2879, 2006 U.S. Dist. LEXIS 34455, 2006 WL 1490134, at *7 (E.D. Pa. May 26, 2006), <u>aff'd</u>, 233 F. App'x 161 (3d Cir. 2007).

Because Supervisor Kieser (1) is not a police officer; (2) does not have the authority to arrest; and (3) does not have the authority to initiate a prosecution, Supervisor Kieser's report to local police could not have violated a clearly established constitutional right under <u>Wesby</u>. Based on these reasons, TSA Supervisor Kieser is entitled to qualified immunity and summary judgment.

## V.      CONCLUSION

For the reasons set forth above, and viewing the facts in the light most favorable to Plaintiff Roger Vanderklok, all claims asserted against Defendant Charles Kieser should be dismissed with prejudice.

Date: March 12, 2018

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation

By: ___*/s/ Jeffrey M. Scott*___
       Jeffrey M. Scott, Esquire
       John C. Connell, Esquire

Three Logan Square
Suite 3500
1717 Arch Street
Philadelphia, Pennsylvania 19103-7393
*Attorneys for TSA Supervisor Charles Kieser*

**<u>Certificate of Service</u>**

I, Jeffrey M. Scott, Esquire, hereby certify that on this 12th day of March, 2018, I caused

to be served Defendant TSA Supervisor Charles Kieser's Memorandum of Law in Support of

His Motion For Reconsideration Or Summary Judgment in The Alternative via electronic copy

and served via ECF on the following:

> THOMAS B. MALONE
> THE MALONE FIRM LLC
> 1650 ARCH ST SUITE 1903
> PHILADELPHIA, PA 19103
> 215-627-0700
> TMALONE@THEMALONEFIRM.COM
> FOR PLAINTIFF-APPELLEE

> > */s/ Jeffrey M. Scott*
> > Jeffrey M. Scott, Esquire

214194428v1